## SERVICES AGREEMENT

AGREEMENT, dated as of August 21, 1998, by and between Hudson's Bay Company, a Canadian corporation, with offices at 401 Bay Street, Toronto, Ontario, Canada M5H 2YR ("HBC") and Gloria Vanderbilt Apparel Corp., a Delaware corporation, with offices at 50 Hartz Way, Secaucus, New Jersey 07094 ("GVAC").

### WITNESSETH:

WHEREAS, GVAC is engaged in the business of designing, sourcing and marketing apparel goods bearing the "Gloria Vanderbilt" trademarks; and

WHEREAS, HBC desires to engage GVAC to provide HBC with information and assistance in the design, production and marketing of certain "Gloria Vanderbilt" apparel goods (the "Licensed Products") to be produced for sale in HBC's subsidiary's Zellers retail stores in Canada pursuant to a certain license dated as of August 21, 1998 between HBC, as Licensee, and Gloria Vanderbilt Trademark B.V. ("GVT"), as Licensor (the "License Agreement"), and GVAC desires to provide such information and assistance, all on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants and agreements contained herein, the parties hereby agree as follows:

1. Information and Assistance

   GVAC shall furnish HBC with such know-how and other promotional materials and information as GVAC in good faith, has knowledge of, and, acting reasonably, deems of significant importance to the design, production and marketing of Licensed Products but shall not provide to HBC instruction in the use or implementation of such know-how. Such materials and information are as follows:

   (a) Information and assistance which GVAC, acting reasonably, deems significantly important with respect to the production of Licensed Products, such as patterns, sewing specifications and methods or

techniques of production and quality control, if and when requested in writing by HBC, subject to HBC's payment of GVAC's out-of-pocket cost;

(b) Information and assistance which GVAC, acting reasonably, deems significantly important with respect to advertising and sales promotion, including copies or samples of advertisements, labels, hang-tags and packaging, if and when requested in writing by HBC, subject to HBC's payment of GVAC's out-of-pocket cost; and

(c) Samples, if available, including swatches and color assortments, of the products marketed by GVAC in the U.S.A., if and when requested by HBC, subject to HBC's payment of GVAC's out-of-pocket cost.

Other than as set forth above and the "Fees" (as set forth below), or as otherwise agreed between the parties, there shall be no additional compensation for such materials, information and know-how. The foregoing materials and information may be forwarded to HBC from time to time upon request by HBC provided that GVAC, acting reasonably, deems such information and materials significantly important and necessary, to HBC in connection with the Licensed Agreement. GVAC does not warrant that know-how or other information provided pursuant to this Section 1 are or will be free from claims by third parties.

2. Assignment

HBC shall not at any time, without the prior written consent of GVAC, assign, transfer or in any manner convey the rights, obligations or benefits of this Agreement to any other party, and such consent shall be granted or denied in GVAC's sole discretion. In the event that there should occur a change of control [all or substantially all of HBC's] of HBC (including, but not limited to, a merger, consolidation, or sale of assets) GVAC shall have the right to terminate this Agreement, at its sole option, upon thirty (30) days written notice effective upon receipt thereof. The transfer of ownership pursuant to a public offering of the stock of HBC shall not, for purposes of this Section, constitute a change of control of HBC. Nothing herein shall prohibit a transfer of this Agreement in connection with a change of control of HBC, where such control has been transferred to a non-retailer equity investor [or investors] in HBC. Further, nothing herein shall prohibit HBC from assigning this Agreement to a parent or subsidiary of HBC, provided HBC remains fully liable hereunder, and the Licensed Products continue to be sold exclusively in Zellers retail stores.

3. <u>Term of Agreement</u>

Unless sooner terminated as provided herein, the initial term of this Agreement (the "Initial Term") shall be for a period of approximately three and one-half (3 ½) years commencing on the date hereof and ending on December 31, 2001. HBC shall have the right to renew this Agreement for an additional term of three (3) years (commencing on January 1, 2002 and ending on December 31, 2004) (the "Renewal Term") by giving notice to GVAC of its desire to so renew not less than four (4) months prior to January 1, 2002, provided that at such time, HBC's has also given notice to GVT of its desire to renew the License Agreement, HBC is eligible to renew the License Agreement, and HBC is not otherwise in default under this Agreement. Notwithstanding the foregoing, this Agreement shall be co-terminus with the License Agreement and shall automatically terminate upon the termination of the License Agreement.

4. <u>Fees</u>

4.1 In consideration of the information and assistance to be provided by GVAC hereunder, HBC shall pay to GVAC a guaranteed minimum fee for each Year (as defined in Schedule B) in the amounts set forth on Schedule B (the "Minimum Fee"), which, once paid, shall not be returnable. The Minimum Fee for each Year shall be payable on the dates set forth on Schedule B.

4.2 (a) In consideration of the information and assistance to be provided by GVAC hereunder, GVAC shall be entitled to receive a fee on all Retail Sales (as that term is defined below) of Licensed Products at the rate of one and one-quarter (1 ¼ %) percent of the Retail Sales of Licensed Products (the "Sales Fee") in accordance with the schedule in Section 4.2(c). For greater certainty, the Sales Fee shall be payable to the extent that it exceeds the Minimum Fee payable hereunder.

(b) For purposes of this Agreement the term "Retail Sales" means the retail invoice price (net of discounts and mark-downs) charged for Licensed Products sold by or for HBC or any individual or entity that, directly or indirectly, controls, is controlled by, or under common control with, HBC (an "Affiliate"). In computing Retail Sales, deductions shall be permitted solely for credits, refunds, returns, and taxes.

(c) Sales Fees shall be accounted for and paid quarterly for each calendar quarter during each Year of the Term and shall be computed on the basis of Retail Sales during such quarter. Sales Fees will be payable no later than ten (10) days after the end of the quarter in which the Retail Sales were made. The computation shall be made in Canadian dollars and then converted to U.S. Dollars on the basis that $1.00 (Can.) = $1.00 (U.S).

4.3   All payments under this Agreement shall be made in the U.S., in U.S. currency or by good check in U.S. dollars to GVAC at 50 Hartz Way, Secaucus, New Jersey 07094, Attention: Itzhak Weinstock.

4.4   All late payments shall bear interest at two (2%) percent per annum in excess of the prime rate charged by The Chase Manhattan Bank, N.A. to its preferred customers from time to time on the amount unpaid (or, if a lesser amount, the maximum interest rate allowed by law), computed from the date such payment was due to and including the date of payment.

5.   Sales Reports and Recordkeeping: Right to Inspect

5.1   On or before the tenth (10th) day following the end of every calendar quarter during the Term, HBC shall submit a report relating to the activity of the immediately preceding quarter which shall include the Retail Sales by Licensed Product category, and any other information that may be required under any other provision of this Agreement or as may be reasonably requested by GVAC as back-up, together with a check for Sales Fees due thereon. Such statement shall be furnished to GVAC in duplicate whether or not any Licensed Products have been sold during the preceding quarter, and shall be signed by a duly authorized officer of HBC certified by him or her as being accurate. Subject to Section 5.2, receipt or acceptance by GVAC of any of the reports furnished or of any sums paid, shall not preclude GVAC from questioning its correctness at any time thereafter.

5.2   HBC and each of its Affiliates who sell Licensed Products shall prepare and maintain complete and accurate records, in accordance with generally accepted accounting principles consistently applied, covering all transactions relating to the license hereby granted. GVAC and its duly authorized representatives, on reasonable notice, shall have the right, from time to time, during normal business hours and on a confidential basis, to examine said records and all other accounts, documents, materials and inventory in the possession or under the control of HBC and any such Affiliate with respect to the subject matter of this Agreement, and shall have free and full access thereto for said purposes and for the purpose of making copies and extracts therefrom at GVAC's expense. GVAC agrees to keep such records and documents confidential except as may be necessary for examination by GVAC's representatives and for purposes of litigation. In the event any of said examinations result in a deviation of actual Sales Fee versus reported Sales Fees, of five (5%) percent or more, HBC agrees not only to pay any Sales Fee due within twenty (20) days, together with interest as provided under Section ~~8.4~~ 4.4, but further agrees to pay the reasonable costs of such examination.

All records shall be kept available for at least two (2) years after the expiration or termination of this Agreement.

5.3     No later than sixty (60) days after the end of each Year, HBC shall deliver to GVAC a statement certified by an officer of HBC, showing Retail Sales, and Sales Fees due and paid by HBC for the preceding Year (an "Annual Report"). If the Annual Report discloses that the amount of Sales Fees paid to GVAC during the period to which said Annual Report relates is less than the amount required to be paid to GVAC pursuant to the terms of this Agreement, HBC shall pay said deficiency to GVAC, together with interest as provided under Section 4.4, concurrently with the delivery of such Annual Report.

5.4     Each Licensed Product shall be assigned a style number unique from all other products sold by HBC, including other Licensed Products. The style number assigned to each Licensed Product shall be identical to the style number utilized to identify that particular Licensed Product in all of HBC's or any Affiliate's records. All documents evidencing the sale of Licensed Products* shall state the style number of such products. *(other than the sales reports required under this Section 5)

5.5     All sales of Licensed Products shall be recorded by HBC to easily trace the source of the reported sales.

6.     Termination

6.1     In the event HBC or an Affiliate shall default in the performance of any of the terms and conditions on the part of HBC to be performed hereunder, and if such default involves the payment of money or the failure to submit reports and the same shall not be cured within twenty (20) days after notice to HBC, or if such default involves performance other than the payment of money or the failure to submit reports and HBC has not cured the same within thirty (30) days after notice to HBC, GVAC shall have the right to terminate this Agreement. The preceding sentence notwithstanding, if any such default which involves the payment of money or the failure to submit reports occurs three (3) times during any Year, regardless of whether such prior defaults were cured, GVAC shall have the right to terminate this Agreement effective upon receipt of notice.

6.2     If HBC defaults in the performance of any of its obligations under the License Agreement and the License Agreement is terminated, GVAC may, at its option, terminate this Agreement and any other agreement between GVAC (or any of its Affiliates) and HBC (or any of its Affiliates) within thirty (30) days after such default, effective upon receipt of notice thereof.

6.3  In the event HBC shall not have been granted the rights under Section 1.1 of the License Agreement with respect to the Licensed Products set forth in Subsection (k) of Schedule B of the License Agreement, on or before January 1, 2000, HBC may, at its option, up until January 31, 2000, terminate this Agreement, effective upon receipt of notice to GVAC.

7.  Representations and Warranties
    of GVAC and HBC

7.1  HBC is a corporation duly organized, validly existing and in good standing under the laws of Canada. HBC has the full power, authority and legal right to execute and deliver, and to perform fully and in accordance with all of the terms of, this Agreement. The performance by HBC of all of its obligations and covenants hereunder does not and will not violate any provisions of any law or regulation, agreement or other instrument to which HBC is a party or by which HBC may be bound. This Agreement constitutes a legal, valid and binding obligation of HBC, enforceable against HBC in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally.

7.2  GVAC is a corporation duly organized, validly existing and in good standing under the laws of Delaware. GVAC has the full power, authority and legal right to execute and deliver, and to perform fully and in accordance with all of the terms of this Agreement. The performance by GVAC of all of its obligations and covenants hereunder does not and will not violate any provisions of any law or regulation, agreement or other instrument to which a GVAC is a party or by which GVAC may be bound. This Agreement constitutes a legal, valid and binding obligation of GVAC, enforceable against GVAC in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally.

8.  Product Procurement

In the event that HBC desires to source manufacturers and vendors of denim bottoms to be offered for sale in its Zellers Stores under the "Gloria Vanderbilt" name, then HBC will first negotiate in good faith with GVAC for 30 days with respect to the terms and conditions for the manufacture and supply of "Gloria Vanderbilt" denim bottoms. In the event that no agreement can be reached during such 30 day period

with respect to the manufacture and supply of "Gloria Vanderbilt" denim bottoms by GVAC, then HBC shall be permitted, without recourse, to source other manufacturers and suppliers of "Gloria Vanderbilt" denim bottoms for and to HBC.

9. <u>Miscellaneous</u>

9.1   All notices and other communications hereunder shall be in writing and shall be deemed given when (a) delivered personally or delivery by telecopy (accompanied by a contemporaneous telecopier confirmation) to the parties on a business day during normal business hours at the addresses or telecopier numbers set forth below (or at such other address or telecopier number for a party as shall be specified by like notice) or (b) three (3) days after being mailed by registered or certified mail (return receipt requested) to the parties at the addresses (or at such other address for the party as shall be specified by like notice) set forth in Schedule B.

9.2   Nothing herein contained shall be construed to place the parties in relationship of partners or joint venturers and HBC and any of its Affiliates shall have no power to obligate or bind GVAC in any manner whatsoever.

9.3   (a)   GVAC assumes no liability to HBC, its Affiliates or third parties with respect to the performance or characteristics of the Licensed Products, and HBC and its Affiliates agree to defend, indemnify and hold harmless (including, reasonable attorneys' fees and disbursements) GVAC, its officers, directors, shareholders, employees and authorized representatives from and against any and all losses, claims, demands, law suits, judgments, damages, costs and expenses incurred through claims of third persons against GVAC involving the manufacture, sale, marketing or advertising of Licensed Products, including, without limitation, product liability claims (a "HBC Covered Claim") (unless such Licensed Products are procured directly from GVAC, in which case GVAC agrees to indemnify HBC with respect to product liability claims in accordance with its customary practices).  GVAC shall notify HBC promptly after it receives any notice of any HBC Covered Claim.  Without limiting the generality of the foregoing, HBC shall obtain and maintain throughout the term of this Agreement, at its own expense, comprehensive general liability insurance (the "Insurance"), including, but not limited to, product liability insurance with an insurance carrier at least in the amount of $5,000,000 (Can.) per occurrence and $25,000,000 (Can.) in the aggregate naming GVAC, as an additional insured, against any loss, claims, suits, damages, costs or expenses arising out of any alleged defects in the Licensed Products, and for coverage against all forms of liability for death or injury to any individual, and

for loss of damage to property. The Insurance shall provide for primary coverage and not contributory coverage, notwithstanding any other insurance which GVAC may obtain or maintain. As proof of such insurance, a fully paid certificate of insurance, naming GVAC as an additional insured party, will be furnished to GVAC by HBC before any Licensed Product is sold or shipped. Any proposed change in certificates of insurance shall be furnished to GVAC, and shall be permitted provided such change complies with this Section. GVAC shall be entitled to a copy of the then prevailing certificate of insurance, which shall be furnished to GVAC by HBC. Compliance by HBC with the insurance requirements of this Agreement shall not relieve HBC of its duty to indemnify GVAC hereunder.

(b) Notwithstanding the foregoing, GVAC agrees to defend, indemnify and hold harmless (including, reasonable attorneys' fees and disbursements) HBC and its Affiliates, their officers, directors, shareholders, employees and authorized representatives, from and against any and all losses, claims, liabilities, demands, law suits, judgments, damages, costs and expenses arising out of HBC's and/or its Affiliates' use of any advertisements, labels, hang-tags, packaging materials or the like, as authorized under the License Agreement and in a manner approved by GVT; or HBC's and/or its Affiliates' use of any designs, patterns, or specifications supplied or furnished to HBC and/or its Affiliates by GVAC for use in connection with the manufacture of Licensed Products, provided such designs, patterns, or specifications are used by HBC strictly in accordance with such designs, patterns, or specifications, without modification or alteration (a "GVAC Covered Claim"). HBC shall notify GVAC promptly after it receives notice of any GVAC Covered Claim. GVAC shall defend any such action at its cost and expense, and with counsel of its own choice, who shall be reasonably acceptable to HBC.

9.4   None of the terms of this Agreement shall be deemed to be waived or modified, nor shall this Agreement be renewed, extended, terminated or discharged except by an express agreement in writing signed by a person authorized by the party against whom enforcement of such waiver, modification, etc. is sought. There are no representations, promises, warranties, covenants or undertakings other than those contained in this Agreement, which represents the entire understanding of the parties. In the event of a dispute between the parties, neither party shall at any time claim detrimental reliance based on negotiations between the parties with respect to the assumption or alteration of any right or obligation where a final written disposition of the dispute has not been executed by the party against whom enforcement is sought.

9.5   If any of HBC's covenants contained in this Agreement are breached (or threatened to be breached) by HBC or any of its Affiliates then, and in any such event, without limiting any other rights and remedies available for such breach, it being agreed that monetary damages cannot fully compensate any such

breach, GVAC shall have the right, to seek temporary or permanent injunctive or mandatory relief in a court of competent jurisdiction in order to prohibit the continuation of any existing, or the realization of any threatened, breach of any of such covenants.

9.6   Except as otherwise expressly provided herein, each right, power and remedy herein specifically given to the parties hereto or otherwise existing shall be cumulative and shall be in addition to every other right, power, and remedy herein specifically given or now or hereafter existing at law, in equity or otherwise; and each right, power and remedy, shall not be construed to be a waiver of the right to exercise at the same time or thereafter any other right, power or remedy. Except as otherwise expressly provided herein, no delay or omission by a party hereto in the exercise of any right or power or in the pursuant of any remedy, shall impair any such right, power, or remedy or be construed to be a waiver of any default on the part of a party or to be in acquiescence therein. No waiver by a party hereto of any breach or default by the other party under this Agreement shall be deemed a waiver of any other previous breach or default or any thereafter occurring.

9.7   The representations, warranties and covenants made herein shall survive the execution and delivery of this Agreement. The termination or expiration of this Agreement for any reason whatsoever, shall not release any party hereto from any liability which at the time of termination or expiration had already accrued to the other party or which thereafter may accrue in respect to any act or omission prior thereto.

9.8.   Each of HBC or any of its Affiliates and GVAC shall not directly or indirectly, disclose or use at any time (either during or after the termination or expiration of the term of this Agreement), except to or for the benefit of the other as such other party may direct in writing, any confidential information of the other.

9.9   This Agreement is made pursuant to and shall be governed by and construed in accordance with the laws of the State of New York, applicable to agreements made and to be performed in the State of New York. The parties hereby irrevocably submit to the jurisdiction of the United States District Court for the Southern District of New York or the courts of the State of New York in New York County with respect to any action or proceeding arising with respect to this Agreement. In any such action or proceeding, the parties consents that service of process may be made in the manner provided for the giving of notices set forth herein. In addition, each of the parties to this Agreement irrevocably and unconditionally waives any objection that it may now or hereafter have to the venue of any proceedings in any of the courts described above. This provision shall not limit the right of execution of judgment in any appropriate jurisdiction.

9.10   Any alleged uncertainty or ambiguity in this Agreement shall not be construed for or against a party based on attribution of drafting to said party. If any provision or any portion of any provision of this agreement is declared invalid or unenforceable, such provision or such portion shall be deemed modified to

the extent necessary and possible to render it valid and enforceable. In any event the invalidity or unenforceability of any provision or any portion of any provision shall not affect any other provision and the remaining portion of any provision of this Agreement, and this Agreement shall continue in full force and effect and be construed and enforced as if such provision had not been included or had been modified as above provided, as the case may be.

9.11   It is expressly understood and agreed that neither this Agreement alone nor in conjunction with the delivery of any deposits or any performance by either of the parties, shall constitute an offer or create any rights in favor of either of the parties or shall in any way obligate or bind either of the parties, unless and until this Agreement is duly executed by both GVAC and HBC and a fully executed copy thereof is in the possession of GVAC and HBC.

9.12   Neither party shall issue any press release or otherwise make any public statement or disclosure to any third party with respect to the terms of this Agreement, except as agreed upon by the parties in writing. Notwithstanding the foregoing, nothing contained in this Section 9.12 shall prevent any party from making any public statement or disclosure as may be required by law or any listing agreement with a national securities exchange.

9.13   This agreement shall inure to the benefit of the parties and their successors and permitted assigns.

9.14   The parties hereto state their express wish that this Agreement as well as all documentation contemplated hereby, pertaining hereto or to be executed in connection herewith be drawn up in the English language; les parties expriment leur desir exlicite a l'effet que cette entente de meme que tous documents envisages par les presentes, y ayant trait ou qui seront signes relativement aux presentes soient rediges en anglais.

[Reminder of this page intentionally left blank]

IN WITNESS WHEREOF, the parties hereto have caused this instrument to be duly executed as of the day and year first written above.

HUDSON'S BAY COMPANY

By: _____
Title: EXEC VICE PRESIDENT
Date: AUGUST 21, 1998

_____ SECRETARY
Aug. 21, 1998

GLORIA VANDERBILT APPAREL CORP.

By: _____
Title: V.P.
Date: 8/31/98

## "SCHEDULE A"

### "YEAR"

The period commencing as of the date of this Agreement and ending on December 31, 1999, and each successive twelve (12) month period thereafter during the term of this Agreement, or a shorter period, with respect to the last Year, if this Agreement is terminated prior to its expiration.

### "MINIMUM FEE PAYMENT"

| Year | Minimum Fee |
|---|---|
| Initial Term: | |
| 1 | $437,500 |
| 2 | $481,250 |
| 3 | $529,375 |
| Renewal Term: | |
| 4 | $582,313 |
| 5 | $640,544 |
| 6 | $704,598 |

The Minimum Fee for each Year shall be paid to GVAC in equal quarterly installments on the tenth day following the end of each calendar quarter of HBC of each Year, except that, for the first Year the Minimum Fee shall be paid to GVAC as follows: $43,750 upon the execution of this Agreement (which amount shall be credited to Minimum Fees in equal installments during the first Year), and installments of $98,437 on the tenth day following the end of each calendar quarter during the first Year, commencing with the first quarter of 1999.

### "HBC'S FISCAL YEAR"

Rolling -- ends on the last Saturday of January.

## SCHEDULE "A"

### "NOTICE ADDRESSES"

1. If to Licensor, to:

   Karspeldreef 2
   1101 CJ Amsterdam-Z.O.
   The Netherlands
   Tel:  011-31-20-6911780
   Fax:  011-31-20-6911728
   Attn:  Mr. Hendrik J. Keilman

   with copies to:

   Gloria Vanderbilt Apparel Corporation
   50 Hartz Way
   Secaucus, New Jersey 07094-2418
   Attn:  Mr. Itzhak Weinstock
   Tel:  201-865-5588, Ext. 110
   Fax:  201-863-2774

   Steven M. Gerber, Esq.
   1114 Avenue of the Americas
   45th Floor
   New York, New York 10036-7798
   Tel:  212-479-6550
   Fax:  212-479-6553

2. If to Licensee, to:

   Hudson's Bay Company
   c/o Zellers Inc.
   8925 Torbram Road
   Brampton, Ontario
   Canada L6T 4G1
   Attn:  President
   Tel:  (905) 792-4400
   Fax:  (905) 792-4439

   with copies to:

   Hudson's Bay Company
   401 Bay Street
   Toronto, Ontario
   Canada M5H 2Y4
   Attention:  Vice President, Secretary and General Counsel
   Tel:  (416) 861-4593
   Fax:  (416) 861-4720