UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NETHERBY LIMITED,<br><br>Plaintiff,<br><br>- against -<br><br>JONES APPAREL GROUP, INC. and JONES INVESTMENT CO. INC.,<br><br>Defendants. | 04 CV 07028(GEL)<br><br>AFFIDAVIT OF KAREN S. FRIEMAN |

STATE OF NEW YORK )
:
COUNTY OF NEW YORK )

KAREN S. FRIEMAN, being duly sworn, deposes and says:

1. I am Special Counsel to the firm of Duane Morris LLP, attorneys for defendants Jones Apparel Group, Inc,. and Jones Investment Co. ("Jones"). I submit this affidavit in opposition to plaintiff's motion for the issuance of letters rogatory.

2. In its motion, plaintiff seeks to take discovery in Canada of Hudson's Bay Company and its subsidiary Zellers, Inc. (collectively, "Zellers"), JICO's former master licensee in Canada. However, even under the liberal discovery standards of this Court, plaintiff's motion should be denied.

3. The proposed discovery request is improper because: (1) it is grossly overbroad in that it seeks documents and information pertaining to claims barred by the doctrine of res judicata; (2) it is grossly overbroad in that it seeks documents and information that are not relevant to the claims identified by plaintiff as supporting the discovery request; (3) it is grossly overbroad in that it seeks to depose no less than five representatives of Zellers -- including its

general counsel -- without any indication of the subject of the inquiry of each or why it might be necessary to depose so many witnesses on the same issues; (4) it improperly seeks documents already in plaintiff's possession or already requested from defendants; (5) in an effort to circumvent the parties' confidentiality agreement, it seeks documents pertaining to Jones' on-going business that defendants believe are confidential; and (6) it requires travel to and participation in numerous depositions and the review of potentially voluminous documents all of which would impose an unfair, undue and unwarranted expense and burden on defendants.

4. Unfortunately, plaintiff, with misplaced confidence that it can recover its fees in this action (Amended Complaint, ¶ 103-106), has no motivation to apply sensible and appropriate limits to the discovery, even third-party foreign discovery, it seeks. For this reason, we respectfully submit, it has framed requests indiscriminately peppered with "alls" and "anys" and seeking on their face potential information with no possible relevance to the claims it has identified as supporting the discovery sought. It is respectfully submitted that as plaintiff has failed to properly frame its proposed requests, its motion should be denied, or in the alternative, that the issuance of the letters rogatory be conditioned on plaintiff paying, in advance, defendants' counsel's fees and expenses incident to travel to Canada and taking this discovery. Any issuance of letters rogatory should further be conditioned on plaintiff agreeing that the discovery sought be subject to the Confidentiality Stipulation and Protective Order submitted in this action and on it agreeing to promptly provide defendants' counsel with copies of all information obtained from Zellers.

**Background**

5. Pursuant to an Acquisition Agreement dated December 23, 1988 (the "1988 Agreement"), plaintiff's alleged predecessor sold to JICO's ultimate predecessor all of its rights

in the "GLORIA VANDERBILT" Trademark, as that term is defined in the 1988 Agreement (the "GLORIA VANDERBILT Trademark"), in the United States, Canada, New Zealand, Australia and Brazil (the "Five Countries"). In consideration for those rights, plaintiff's alleged predecessor received $ 15 million dollars and the right, for a distinct, specified and limited period of time for each of the Five Countries, to receive from the owner of the GLORIA VANDERBILT Trademark quarterly Contingent Payments. In April, 2002, the GLORIA VANDERBILT Trademark was sold to defendant JICO and JICO has been making Contingent Payments to Netherby in accordance with the terms of the 1988 Agreement ever since. These Contingent Payments are comprised of a percentage of the amounts JICO receives: (a) from sales of products bearing the GLORIA VANDERBILT Trademark; and, (b) from royalties received from third party licensees of the GLORIA VANDERBILT Trademark. At the present time, Canada is the only one of the Five Countries for which Contingent Payments are due.[1]

6. The GLO and GLO JEANS Trademarks (collectively, the "GLO Trademark"), by contrast, were not, defendants assert, conveyed by the 1988 Agreement. Plaintiff never had any interest in those trademarks and it is not entitled to receive any Contingent Payment in respect of them.[2]

7. In this action, plaintiff asserts that JICO is in breach of the 1988 Agreement as modified because, Netherby alleges in part, it has not paid Netherby the proper Contingent

---

1 The payment period for the United States terminated in 1997. The payment period for Canada will expire in 2009. The payment periods have not commenced for Brazil, Australia and New Zealand.

2 Defendants do not concede the accuracy of the factual statements or legal conclusions in the moving papers. The facts set forth herein reflect Jones' position in this action.

Payments for Canada arising from JICO's relationship with its former master licensee in Canada, Hudson's Bay Company. JICO believes all amounts due have been paid.

**PLAINTIFF'S MOTION FOR LETTERS ROGATORY SHOULD BE DENIED**

8. It is well settled that discovery, while broad, is not limitless. Discovery must be relevant to the claim or defense of a party Fed. R. Civ. P. 26(b)(1). In addition, the Court has the power to limit discovery and to condition it on such terms as are just. Further, letters rogatory, such as that sought here, must be issued on terms that are just and appropriate.

9. Discovery can be misused and become a weapon of oppression. The danger of the misuse of discovery is particularly acute here where plaintiff, (wrongly) confident that it will succeed, anticipates recovering its fees from defendants and thus has no motivation to act economically. Moreover, each of the principles enunciated above and in Defendants' Memorandum of Law, requires the denial of plaintiff's motion.

10. In its moving papers, plaintiff defines for the Court the three specific claims on which it purports to need the discovery sought. These issues are: (1) the alleged reduction in the applicable royalty rate paid by Zellers on certain product categories; (2) the elimination of the royalty due from Zellers on goods which had been purchased from Jones and resold by Zellers (together with issue (1), the "Royalty Reduction" issue); and (3) the fact that no Contingent Payment was made on goods bearing the separate GLO trademark (the "GLO" issue). Affirmation of Melissa J. LaRocca, dated March 3, 2005 (the "LaRocca Aff."), ¶ 18.

11. The relevance of plaintiff's requests must be judged against these identified claims. However, plaintiff's proposed discovery requests are so overbroad that they include whole categories of documents with no possible relevance to these claims. Plaintiff's motion for letters rogatory should be denied.

**A. The proposed discovery is impermissibly overbroad in that it seeks documents and information barred by the doctrine of res judicata.**

12. Information which pertains to claims barred by the doctrine of res judicata is by definition not calculated to lead to the discovery of admissible evidence. Yet, this is the information sought by plaintiff in this breach of contract action.[3]

13. In this motion, plaintiff seeks to take discovery from Zellers. From August,1998 through December 31, 2004, Zellers was the master licensee for goods bearing the GLORIA VANDERBILT and GLO trademarks in Canada. From 1998 through April, 2002, the prior owner of those trademarks, Gloria Vanderbilt Trademark BV, which is not a party hereto, made Contingent Payments to Netherby. Netherby, dissatisfied with BV's performance and claiming it had not received all the Contingent Payments to which it was entitled in respect of Zellers, commenced suit in August, 2001 in the Supreme Court of the State of New York, New York County, in an action captioned Netherby Ltd. v. Gloria Vanderbilt Trademark BV, et al., Index No. 113339/01 (Gammerman, J.) (the "2001 Action") (Exhibit C).[4] Judgment was entered in favor of Netherby on June 17, 2003 and, I believe, was paid. (Exhibit D.)

---

3 This defense is reserved in defendants' respective Answers to the Amended Complaint. Exhibits A and B. In light of the Court ordered mediation of this matter, defendants have not formally moved to dismiss the Amended Complaint on these grounds. They are prepared to and respectfully reserve their right to do so.

4 Plaintiff's claims were originally asserted as counterclaims in that action. Justice Gammerman changed the caption of the action after the original claims of JICO's predecessor were determined in its favor before trial. Further, although plaintiff likes to make much of the several litigations between it and prior owners of the GLORIA VANDERBILT Trademarks, those suits did not involve Jones or any allegations of wrongdoing by Jones. Plaintiff's transparent efforts to prejudice Jones with its recitation of the prior litigations should be ignored.

14. In the present action, Netherby again claims that it did not receive all the Contingent Payments due it in respect of Zellers for, in large part, the same period of time as was at issue in the 2001 Action. In particular, Netherby seems to claim that the "reduction" of certain royalties from Zellers and the elimination of another category of royalties indicates there was or may have been a breach of the 1988 Agreement. (Netherby does not, significantly, claim that the reduction and elimination were themselves a breach of the agreement.) However, Netherby was clearly aware before the commencement of the 2001 Action of the Royalty Reduction issue. Indeed, Netherby concedes in its moving papers that it became aware of the "Royalty Reduction" in 2000 -- before the 2001 Action was even commenced. LaRocca Aff., ¶¶ 17, 18. Further, documents which memorialize the "reduction" in certain royalty rates and the elimination of the royalty on goods which had been purchased from the trademark owner, were produced to Netherby, no later than during discovery in the 2001 Action. Also produced to Netherby in that suit and in the ordinary course of the parties' dealings were royalty reports from Zellers which reflected these royalty changes. Yet, in the 2001 Action Netherby agreed that it had no dispute with the amount of Contingent Payments it had received. (Exhibit E.)[5]

15. These claims could and should have been included in the 2001 Action. They were clearly "available" to Netherby. Netherby should now be barred, at least through the date of judgment in that action, March 17, 2003, from asserting these claims. Discovery requests dating back beyond this period are overbroad and should be rejected. All but two of Netherby's

[5] Defendants also believe that Netherby knew or should have known about the GLO issue by the time of the 2001 Action.

seven proposed requests attempt to reach back into this barred period. See, LaRocca Aff., ¶ 24, first, third, fourth, sixth and seventh bullets. They should be stricken.[6]

**B. The proposed discovery is overbroad in that it seeks documents and information that are not relevant to the claims at issue.**

16. Plaintiff's proposed request is not limited in time in any way. In addition to thus including claims barred by res judicata, to the extent plaintiff seeks documents from more than 6 years ago, i.e. or beyond the applicable statute of limitations, CPLR § 213, the request is overbroad and improper.

17. Further, at least five of plaintiff's seven proposed requests call for the production of documents which are not relevant to the claims identified by plaintiff as supporting its motion.[7] As described below, each request is thus impermissibly overbroad. In addition to imposing an unfair burden on Zellers, were Zellers to be required to respond to the proposed request, Jones would also be put to the unfair burden and expense of participating in the likely duplicative depositions sought and parsing through the potentially voluminous (and irrelevant) documents which could be produced.

---

6 The two requests which do not impermissibly reach into the barred period are found in the LaRocca Aff., ¶ 24 at the second and fifth bullet points. Plaintiff's request for copies of agreements with Zellers, (id., ¶ 24, second bullet), is objectionable as it is duplicative of documents requested from Defendants. As to the request at the fifth bullet point, although Jones does have issues with its relevance, it seems to be appropriate. It seeks documents concerning Zellers non-renewal of its license and any agreement presently in effect between Zellers and JICO.

7 Plaintiff has not included in its papers the form of letters rogatory it would like the Court to issue. Instead, it has described the discovery it wants in counsel's affirmation. This opposition relies on that description.

**<u>Category No. 1:</u> Documents concerning any and all agreements concerning the marketing or sale of any products bearing the Gloria Marks. (LaRocca Affirmation, ¶24, first bullet.)**[8]

18. On its face, this request has nothing to do with the question of whether the GLO Trademark is encompassed by the 1988 Agreement. Nor does it seem to have anything to do with the Royalty Reduction issue. Indeed, this request is not even limited to agreements between Zellers and defendants or Zellers and the prior owners of the GLORIA VANDERBILT and GLO Trademarks. While documents reflecting agreements pertaining to royalties paid by Zellers to its Licensor on sales of product bearing the GLO Trademark or the GLORIA VANDERBILT Trademark might be discoverable for some limited period of time, this request goes well beyond that. The request is just too broad.

**<u>Category No. 2:</u> Documents concerning the purchase of any products bearing the Gloria Marks by Zellers from any entity, including the source of the goods, the type of goods, the quantities of goods, the dates of such purchases, the amount paid, the party paid, the date of payment and the relationship, if any, between JICO and the entity paid. (LaRocca Affirmation, ¶24, third bullet.)**

19. This request too has nothing to do with the Royalty Reduction issue. Nor does it have anything to do with whether or not the GLO Trademark falls within the ambit of the 1988 Agreement. Indeed, this request, which calls for documents regarding dealings between Zellers and any entity <u>whether or not it is related to JICO</u>, has nothing to do with any party to this lawsuit.

---

8 Plaintiff has created the term "GLORIA MARKS" to attempt to conflate the GLORIA VANDERBILT Trademarks which are the subject of the 1988 Agreement and the GLO (Continued...)

20. As noted above, plaintiff does not assert that the elimination of royalties on goods purchased by Zellers from JICO at wholesale and resold by it at retail, was a breach of the 1988 Agreement. Rather, it appears to claim that the elimination is somehow indirect evidence of a diversion of Contingent Payments otherwise due to it. Defendants assert that this supposition is without basis. Defendants' also suggest that it would be more sensible for Netherby to investigate this by conducting an audit in accordance with its rights under the 1988 Agreement than by seeking blunderbuss discovery from a third party.

21. In any event, this discovery request seeks information with no relevance to the amount of Contingent Payments due Netherby. Netherby is entitled to a portion of royalties received by JICO from its Canadian licensees of the GLORIA VANDERBILT Trademark and to a portion of JICO's sales of goods bearing the GLORIA VANDERBILT Trademark. Information about Zellers' purchase of those goods from JICO might be relevant for the period since March 17, 2003. However, information such as that sought here, about purchases from unrelated third parties is without relevance. This request should be rejected.

**Category No. 3: Documents concerning any changes in the percentages or amounts of compensation, paid by Zellers to any entity for the sale of any products bearing the Gloria Marks. (LaRocca Affirmation, ¶ 24, fourth bullet.)**

22. Like category no. 2, on its face, this request seeks documents pertaining to relationships Zellers, a non-party, may have had with other non-parties to this action. While plaintiff is entitled to a portion of royalties monies paid by Zellers to JICO for the use of the GLORIA VANDERBILT Trademark, this request seeks information about monies paid by

---

(Continued...)

Trademarks which, Jones' asserts, are not.

Zellers to "any entity". This request for documents concerning a change in the amount Zellers paid to any entity for the sale of products bearing the GLORIA MARKS could be read to encompass documents setting forth price increases from Zellers' manufacturers, if any, or documents pertaining to agreements Zellers had with commissioned salespeople, if any. The request is simply too far afield.

**<u>Category No. 4:</u> Documents provided to Zellers from any entity or provided by Zellers to any entity concerning the Gloria Marks and the GLO Mark, including but not limited to information concerning brand management, colors, fit, logos...including but not limited to e-mails, correspondence, memoranda and notes. (LaRocca Affirmation, ¶ 24, sixth bullet.)**

23. In this request, every document ever produced by Zellers or any other party with anything to do with the "Gloria Marks" is sought. The request is patently overbroad. And, this category of documents simply has nothing to do with the "Reduced Royalty" or "GLO" issues identified by Netherby as supporting this discovery. Plaintiff has provided no basis for this request.

24. Further, while plaintiff does allege in its Amended Complaint, that JICO and its predecessors failed to provide it with a so called "Licensing Package" including information such as colors, fit and logos, this request goes far beyond that allegation.[9] Thus, the request

---

[9] A 1995 Modification to the 1988 Agreement calls for the provision to Netherby of samples and general information. However, Netherby now claims for the first time in 10 years that it bargained for and is entitled, among other things, to "...information on brand management, colors, fit, logos, signage, photos, line plans, trends, etc.... and designs and sample products of the different lines", i.e. what it terms a "Licensing Package." (Amended Complaint, ¶ 28.) Defendants submit there is no basis in the 1988 Agreement or its 1995 Modification for this claim. Additionally, this claim for Licensing Packages (Continued...)

seeks information received not just from Zellers' licensor, but information from any source and information provided by Zellers. Such information can be of no possible relevance to this action.

**Category No. 5: Documents concerning any compensation paid by Zellers resulting from the sale of products bearing the GLO Mark. (LaRocca Aff., ¶ 24, seventh bullet.)**

25. This request is not limited to compensation paid by Zellers to JICO or the former trademark owner. If, for example, Zellers had commissioned its salespeople selling goods bearing the GLO Trademark, this request would seek that information. That information, of course, has nothing to do with the claims in this case.

26. These requests and depositions on each of these issues are grossly overbroad and impose an unfair and unwarranted burden on defendants (and Zellers). The Court should not have to edit plaintiff's requests for it. Plaintiff's motion should be denied.

**C. The request is overbroad in that it seeks to depose no less than five representatives of the same company (including its general counsel) without any indication of the subject of the inquiry or why it might be necessary to depose so many witnesses.**

27. As noted above, the areas of potential inquiry of these witnesses is overbroad and improper. Moreover, plaintiff offers no support for its need to depose five individuals on these issues, including Zellers' general counsel, Brian Davies. Indeed, plaintiff does not identify the areas it feels it needs to explore with each of these individuals. It is unwarranted to give plaintiff carte blanche to require defendants (and non-parties) to spend the time and expense of attending so many, likely duplicative, examinations.

---

(Continued...)

would also be barred by res judicata. This claim was available in the 2001 Action and is barred here.

**D. The request seeks documents already requested from defendants or already in plaintiff's possession.**

28. Plaintiff's proposed requests are largely duplicative of the document request it served on defendants which defendants are in the process of responding to. (Compare, LaRocca Aff., ¶ 24 and Exhibit G, requests no.8-14.)

29. Moreover, plaintiff seeks documents it already has possession of and has had for years. Thus, plaintiff seeks documents concerning the Zellers License Agreement or Services Agreement and documents concerning changes in the royalties paid by Zellers. (LaRocca Aff., ¶ 24, bullet 1.) Plaintiff is already in possession of relevant agreements with Zellers which set forth the applicable royalty rates due from Zellers depending on the category of product sold. Other relevant documents were provided to Netherby in the 2001 Action or in the course of this litigation.

30. In addition, since its acquisition of the GLORIA VANDERBILT Trademarks, plaintiff does not contest that JICO has, as required, made quarterly payments to it and has, also on a quarterly basis, provided detailed reports to plaintiff of the amount of royalties it received from Zellers and others. These reports have included the reports prepared by Zellers itself in calculating the royalty due to JICO. This Court may deny plaintiff's request where, as here, it seeks information that is readily available to it.

**E. Plaintiff seeks confidential and proprietary documents about defendants' on-going business.**

31. The parties to this action have agreed to a Confidentiality Stipulation and Protective Order and have submitted it to the Court for its signature. Each of the proposed requests could include a demand for information that JICO and JAG believe is confidential. This information was sought from defendants as well, as set forth above. To the extent that plaintiff is seeking those documents from Zellers in an effort to circumvent the Confidentiality Stipulation,

this effort should be rebuffed. At the very least, the letters rogatory should be conditioned on defendants being able to designate documents and information confidential in accordance with the terms of the parties' agreement.

32. In light of the duplicative and burdensome nature of these requests, which will dramatically increase the cost of this litigation which is scheduled for mediation next month, plaintiff's motion should be denied.

**THE ISSUANCE OF LETTERS ROGATORY**
**SHOULD BE CONDITIONED IN THREE WAYS**

33. It is well-settled that the Court has the power to condition the issuance of letters rogatory "on terms that are just and appropriate". Fed. R. Civ. P. 28(b)(3). In this case, it is respectfully submitted that if the Court is not inclined to deny plaintiff's motion outright, the issuance of the letters should be conditioned in three ways.

34. First, this Court may grant this motion on such terms as are just and proper. As set forth above, it would be a burden on defendants to have to bear the expense of five likely duplicative depositions on wide ranging overbroad issues and the review of voluminous documents. Therefore, in accordance with plaintiff's own authorities, it is respectfully submitted that, as a condition to the issuance of the letters rogatory, plaintiff should be directed to pay, in advance, defendants' costs, including legal fees, travel expenses and expenses incident to the discovery proposed.

35. Second, defendants should be able to designate the discovery produced as Confidential according to the terms of the parties' Confidentiality Stipulation and Protective Order. This designation will not prejudice plaintiff in any way.

36. Third, plaintiff should be ordered to provide defendants' counsel with copies of whatever materials it receives promptly upon its receipt of same.

THEREFORE, for the foregoing reasons, it is respectfully submitted that the plaintiff's motion should be denied or in the alternative that the issuance of the letters rogatory be conditioned as set forth above.

______________________________
KAREN S. FRIEMAN

Sworn to before me this
18th day of March, 2005

______________________________
Notary Public

NY\277117 1