UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NETHERBY LIMITED,

                              Plaintiff,

              -against-

JONES APPAREL GROUP, INC. and JONES INVESTMENT CO., INC.,

                              Defendants.

04 CV 07028 (GEL)

**REPLY AFFIRMATION IN SUPPORT**

---

MELISSA J. LaROCCA, an attorney duly admitted to practice in the Courts of the State of New York and before this Court, affirms under the penalties or perjury as follows:

1.     I am associated with the firm of Chadbourne & Parke LLP, attorneys for plaintiff Netherby Limited ("Netherby"). I submit this affirmation in further support of Netherby's motion for the issuance of letters rogatory pursuant to Federal Rule of Civil Procedure 28(b)(2) and 28 U.S.C. § 1781(b)(2), to permit (1) the production of documents from the Canadian company Hudson's Bay Company and its subsidiary, Zellers, Inc. (together "Zellers") and (2) the taking of depositions of certain Zellers personnel.

## THE 2001 ACTION[1]

2.     Defendants assert that Netherby's claims in this action are barred on res judicata grounds because they could and should have been decided in a prior litigation before Justice Gammerman entitled

---

[1] The background information is taken from plaintiff's Amended Complaint in the current action and Plaintiff's Counterclaims in a prior litigation before Justice Gammerman entitled Gloria Vanderbilt Trademark B.V. v. Netherby Limited, Index No. 113339/01.

<u>Gloria Vanderbilt Trademark B.V.</u> v. <u>Netherby Limited</u>, Index No. 113339/01 (the "2001 Action") (Exh. A).[2] The background of the 2001 Action is as follows.

3.   Pursuant to a 1988 Acquisition Agreement, Netherby's predecessor-in-interest conveyed to Defendants' predecessor-in-interest, the rights to the Gloria Marks in Five Countries, including Canada (the "Five Country Rights"). Under the 1988 Agreement, the Buyer (now defendant Jones Apparel Group Inc. or Jones Investment Co. Inc.) is obligated to pay ongoing royalties, called "Contingent Payments," to Netherby based on sales of products bearing the Gloria Marks in the Five Countries.

4.   In August 1998, the Buyer of the Five Country Rights licensed the exclusive right to sell products bearing the Gloria Marks in Canada to Zellers pursuant to a License Agreement dated August 21, 1998 (the "License Agreement"). Under the License Agreement, Zellers is obligated to pay the Buyer a quarterly Sales Royalty in the amount of 1-1/4% of the Retail Sales of the Gloria Vanderbilt products (Exh. B).

5.   Simultaneously with the execution of the License Agreement, Zellers entered into a Services Agreement with the Buyer (the "Services Agreement") pursuant to which the Buyer purportedly was to provide certain services to Zellers. Under the Services Agreement, Zellers was obligated to pay the Buyer a quarterly Sales Royalty in the amount of 1-1/4% of the Retail Sales of the Gloria Vanderbilt products (Exh. C). However, it was later proven that the Services Agreement was a complete ruse, as no services were provided.

6.   With this structure, the Buyer paid Netherby royalties only on amounts paid under the License Agreement. By diverting half of the payments to a Services Agreement, the Buyer reported to

---

[2]   Although Netherby's claims were initially asserted as counterclaims in the 2001 Action, after the plaintiff's claims were resolved, Justice Gammerman re-captioned the action so that Netherby was the plaintiff.

Netherby only half of the revenues Zellers paid to Buyer and correspondingly paid Contingent Payments to Netherby on only half of those revenues.

7. Despite the obligation under the 1995 Modification to the 1988 Agreement, to keep Netherby "generally informed of the activities of Buyer's licensees, including providing [Netherby] with copies of such licenses that are executed in the future," Netherby learned of the Services Agreement accidentally, when it received a copy from Zellers approximately three years after the agreement had been executed (Exh. D).

8. After "accidentally" receiving a copy of the Services Agreement from Zellers and learning that Buyer had been diverting half of the monies it had been receiving from Zellers for approximately three years, on or about August 6, 2001, Netherby asserted three claims in the 2001 Action, all of which pertained to the defendants' improper diversion of royalties pursuant to the Services Agreement, as well as the recovery of the legal fees and expenses incurred by Netherby in bringing such claims.

9. Netherby's first counterclaim sought a declaratory judgment "declaring that all payments made and to be made in the future *under the Services Agreement* with HBC/Zellers are properly included in the Contingent Payment Calculation under the 1988 Agreement, as amended" (Exh. A ¶ 48) (emphasis added). Netherby's second counterclaim was for breach of contract based on defendants' failure to pay Netherby Contingent Payments based on royalties received under the Services Agreement (Exh. A ¶ 51). Netherby's third counterclaim for breach of guarantee sought recovery of attorneys' fees and expenses pursuant to a Guarantee between Netherby and the defendants, which provided that the defendants "are obligated to pay and/or reimburse Netherby for its legal fees and related expenses incurred in connection with the dispute" (Exh. A. ¶ 57).

10. Both the discovery conducted by the parties and the evidence introduced at trial revolved almost exclusively around the validity of the Services Agreement, i.e., was the agreement a sham to

disguise royalty payments, as well as the amounts due to Netherby for payments under the Services Agreement.

11. On May 3, 2002, at the conclusion of the trial, Justice Gammerman explained that in his view, "this is a scheme cleverly thought of, and unfortunate from the defendants' point of view, discovered by the plaintiff, perhaps, quite accidentally, to deny to [Netherby] a royalty or a portion of the royalty to which it is entitled" (Exh. E).

12. Although the trial was completed on May 3, 2002 and Justice Gammerman rendered a written Decision and Order on June 28, 2002, Judgment was not entered in the Action until June 17, 2003, as the parties spent significant time stipulating to the amount of royalties and attorneys' fees that should be paid to Netherby.

## THE CURRENT ACTION

A. <u>The Claims Asserted in the Current Action</u>

13. In the present action, Netherby has not asserted any claims pertaining to its right to receive Contingent Payments based on amounts received by Defendants pursuant to the Services Agreement (Exh. F).

14. In this action, Netherby is not arguing over the validity of Services Agreement. Rather, Netherby asserts that Defendants have breached the 1988 Agreement in at least five other respects. Netherby claims that Defendants have: (1) again hidden or diverted revenues from the Gloria Marks in an effort to circumvent the royalty payments due to Netherby under the 1988 Agreement, not by use of the Services Agreement, but by other means; (2) failed to provide Netherby with information to which it is entitled under the 1988 Agreement; (3) failed to provide Netherby with Licensing Packages to which it is entitled under the 1988 Agreement; (4) failed to pay Netherby royalties on sales of products bearing the GLO Marks; and (5) applied to register the GLO Mark, a derivative of the Gloria Marks, in countries outside the Five Countries and have asserted the right to use and sell products bearing the GLO Mark

outside the Five Countries. As *none* of these claims were adjudicated in the 2001 Action, they cannot be precluded on res judicata grounds.

B.  Netherby's Requests for Documents From Zellers Are Not Overly Broad, Are Related To Netherby's Claims In This Action And Cannot Be Obtained From Defendants

15.  Defendants' also argue in their opposition papers that Netherby's requests for discovery from Zellers are overly broad. However, the categories of documents requested by Netherby are intentionally broad, as Netherby has learned through seven prior litigations that royalty payments, to which Netherby is entitled to a percentage, are often disguised or diverted by agreements or arrangements (usually unbeknownst to Netherby) that are outside the scope of the typical license agreement.

16.  Netherby specifically opted not to limit many of its requests to agreements between Zellers and Defendants because there have been instances in which affiliated or related corporations have been established for the purpose of diverting royalties from Netherby.

17.  Contrary to Defendants' assertions, the documents that Netherby is seeking are not currently available to Netherby, as Defendants have consistently failed to provide Netherby with the information it has requested. Moreover, even if some of this information was available from Defendants, third-party discovery is required to assess its accuracy and completeness.

18.  Netherby and its counsel have requested documents from Defendants for the past *several years* and have received little or no useful information in response to their requests (Exh. F ¶¶ 35-51).

19.  In addition, shortly after commencing the instant litigation, Netherby served a document demand requesting thirty separate categories of documents from Defendants. Over the course of the past three months, despite assurances that responsive documents would be produced and after the parties executed a Confidentiality Stipulation and Protective Order, Defendants have produced few of the documents requested.

20. Netherby has also learned over the course of the last seven litigations that typically, the most helpful documents it discovers are documents from non-parties. As such, discovery from Zellers, Defendants' exclusive Canadian licensee, is essential.

21. As the documents and deposition testimony requested by Netherby through this motion are related to Netherby's claims in this action, this Court should grant Netherby's motion for letters rogatory.

Dated: New York, New York
       March 28, 2005

*/s/ Melissa J. LaRocca*

_____
Melissa J. LaRocca (ML 8807)