UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NETHERBY LIMITED,

                              Plaintiff,

                  -against-                           04 CV 07028 (GEL)

JONES APPAREL GROUP, INC. and JONES INVESTMENT
CO., INC.,

                             Defendants.

                                               ECF


**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF PLAINTIFF NETHERBY LIMITED'S
<u>MOTION FOR THE ISSUANCE OF LETTERS ROGATORY</u>**


CHADBOURNE & PARKE LLP
Attorneys for Plaintiff Netherby Limited
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

Thomas J. Hall
Melissa J. LaRocca
      Of Counsel

NY4 - 184732.01

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF NETHERBY LIMITED'S MOTION FOR THE ISSUANCE OF LETTERS ROGATORY

Plaintiff Netherby Limited ("Netherby") respectfully submits this reply memorandum of law in further support of its motion for the issuance of letters rogatory.

### I

### THE DOCTRINE OF RES JUDICATA IS INAPPLICABLE

Defendants Jones Apparel Group, Inc. and Jones Investment Co., Inc.'s (together "Defendants") primary argument in opposition to this motion is that much of the discovery sought relates to claims that are allegedly barred on res judicata grounds. As set forth more fully below, this argument is nothing but a red herring and is yet another transparent attempt by Defendants to prevent Netherby from obtaining information that will permit discovery of the latest ways in which Defendants have diverted royalties due to Netherby.

A.  The Requirements For The Doctrine of Res Judicata

The doctrine of res judicata precludes a claim only where: (1) there has been a final determination on the merits; (2) the parties are identical to or in privity with the parties in the first action; and (3) the causes of action are identical. Shamrock Assoc. v. Sloane, 738 F. Supp. 109, 116 (S.D.N.Y. 1990). The key question here is whether the causes of action between the two actions are identical.

B.  Because Netherby's Current Claims Are Distinct From The Claims
    Adjudicated In The 2001 Action, They Are Not Precluded By Res Judicata

Courts in this district have consistently held that two actions are identical if the facts underlying the transactions in both actions are the same. Shamrock Assoc., 738 F. Supp. at 116. Factors to be considered in this determination include whether the "same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." Id. The Second Circuit has noted that the fact that "several operative facts may be common to successive actions between the same parties does not mean that the claim asserted in the second is the same as the claim asserted in the first." National Labor Rel. Bd. v. United Techs. Corp., 706 F.2d 1254, 1259-60 (2d Cir. 1983) (holding that although the same rules and agreement were at issue in both litigations, the claims asserted in the second action were not barred by res judicata because they were different from the claim adjudicated in the earlier action).

Where identical facts are not at issue in both litigations, courts have routinely denied motions to bar claims on res judicata grounds. For example, in Shamrock Assoc., a buyer of securities brought an action against former corporate officers and directors for securities fraud, fraud and negligent misrepresentation. The defendants argued that plaintiff's claims were barred on res judicata grounds because the same stock purchases trigged both actions. The court rejected defendants' argument and noted that "the identicalness of purchases is insufficient to qualify the entire action as identical. The facts of the alleged violations are sufficiently different in both content and form so that res judicata is inappropriate." Shamrock Assoc., 738 F. Supp. at 116. The Court further explained that, whereas the prior action was premised on defendants' non-disclosure of certain ownership matters, the current action was premised on a different non-disclosure, namely the defendants' non-disclosure in 10Ks and 10Qs of the "problems with accounts receivable and of the milking of the company." Id. As such, defendants' res judicata argument was rejected.

The claims in the 2001 Action are distinct from the claims asserted herein. The fact that both actions involve the same contract is of no consequence, as the evidence needed to support the claims herein is different than the evidence used to support the claims in the 2001 Action. The single issue adjudicated in the 2001 Action was whether Netherby was entitled to Contingent Payments based on royalties paid by Zellers to defendants under a Services Agreement. The discovery conducted and the evidence presented at trial involved the validity of the Services Agreement, i.e. was the agreement a sham to disguise royalty payments, as well as the amounts due to Netherby for payments under the Services Agreement (LaRocca Aff. ¶¶ 8-10).[1]

In this action, Netherby is not arguing over the validity of Services Agreement. Rather, Netherby asserts that Defendants have breached the 1988 Agreement in at least five other respects. Netherby claims that Defendants have: (1) again hidden or diverted revenues from the Gloria Marks in order to circumvent the royalty payments due to Netherby under the 1988 Agreement, not by use of the Services Agreement, but by other means; (2) failed to provide Netherby with information to which it is entitled under the 1988 Agreement; (3) failed to provide Netherby with Licensing Packages to which it is entitled under the 1988

---

[1] References to "LaRocca Aff." are references to the Reply Affirmation in Support of Melissa J. LaRocca.

2

Agreement; (4) failed to pay Netherby royalties on sales of products bearing the GLO Marks; and (5) applied to register the GLO Mark, a derivative of the Gloria Marks, outside the Five Countries and asserted the right to use and sell products bearing the GLO Mark outside the Five Countries.  As ***none***[2] of these claims were adjudicated in the 2001 Action, they cannot be precluded on res judicata grounds (LaRocca Aff. ¶ 14).

Defendants' reliance on the <u>Hanley</u> case is misplaced, as the facts of that case are clearly distinguishable.  In <u>Hanley</u>, in a 1994 Complaint, the plaintiff alleged that defendant had not submitted monthly reports or contributions for the period February 1994 through October 1994.  <u>Hanley</u> v. <u>Apertivo Restaurant Corp</u>., 1998 WL 307376, at *1 (S.D.N.Y. June 11, 1998).  The 1994 Complaint sought to recover these delinquent contributions and to hold defendant liable "***for any amounts that [it] may determine, by way of an audit, are due and owing under the Agreement[s]***."  <u>Hanley</u>, 1998 WL 307376, at *1.  Although requested in the complaint, the plaintiff failed to conduct an audit of defendant's records and, instead, entered into a Settlement Agreement resolving all claims.  After the execution of the Settlement Agreement, the plaintiff conducted an audit of defendant's records and determined that it was owed additional money.  The plaintiff filed a second complaint to recover these additional funds and the court rejected plaintiff's claims on res judicata grounds.  Unlike the <u>Hanley</u> case, Netherby did not assert a claim in the 2001 Action for "***for any amounts that [plaintiff] may determine, by way of an audit, are due and owing under the Agreement[s]***." Netherby's 2001 Action addressed only the issue of whether Contingent Payments were due to Netherby based on amounts paid by Zellers pursuant to the Services Agreement.  As such, any claims unrelated to Netherby's entitlement to received Contingent Payments pursuant to the Services Agreement are permissible and are not precluded by res judicata.

Defendants' argument that res judicata bars Netherby's claims in the instant action is further belied by the fact that since 1992 (not including this action) Netherby has been forced to bring at least seven actions relating to breaches of the 1988 Agreement, many of which arose after royalty streams were diverted or concealed from Netherby, and all of which resulted in a substantial recovery (by settlement or otherwise) to

---

[2]   Unless otherwise indicated, emphasis has been added throughout this brief.

Netherby.  The use of the doctrine of res judicata to bar subsequent claims arising from the same contract would have barred Netherby from bringing all but the first of those cases, a nonsensical result.

C.      Res Judicata Does Not Preclude Claims Over
        <u>Events Arising After the Filing of the First Complaint</u>

Even assuming arguendo that the facts underlying the transactions in both actions are the same, res judicata cannot be used to "preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit."  <u>Curtis</u> v. <u>Citibank, N.A</u>., 226 F.3d 133, 139 (2d Cir. 2000).

The Second Circuit has specifically noted that after the date upon which a complaint is filed, "[t]he plaintiff has ***no continuing obligation*** to file amendments to the complaint or to stay abreast of subsequent events; plaintiff may simply bring a later suit on those later arising claims."  <u>Curtis</u>, 226 F.3d at 139; <u>see</u> <u>also</u> <u>Securities and Exchange Comm</u>. v. <u>First Jersey Sec. Inc</u>., 101 F.3d 1450, 1464 (2d Cir. 1996) (holding that res judicata will not preclude a subsequent suit for a breach that had not occurred when the first suit was brought); <u>Prime Man. Co</u>. v. <u>Steinegger</u>, 904 F.2d 811 (2d Cir. 1990) (same).

Defendants' assertion that Netherby is precluded from asserting claims that arose prior to the July 2003 judgment in the 2001 Action is incorrect as a matter of law.  Rather it is the August 7, 2001 date upon which Netherby's counterclaims were filed that would be the operative date for res judicata purposes.  As such, even if the facts underlying the transactions in both actions were the same, Netherby would still be entitled to pursue any claims that arose after August 7, 2001.[3]

C.      This Court Should Not Limit Netherby's Request For Letters Rogatory Based On A
        <u>Potential Motion That Has Yet To Be Made By Defendants And Determined By This Court</u>

Defendants' request that this Court limit Netherby's right to discovery based on assertions that certain claims ***might*** be barred on res judicata grounds should be rejected, as Defendants have not prevailed on that

---

[3]     Defendants' assertion that "Netherby concedes . . . that it became aware of the "Royalty Reduction" in 2001 -- before the 2001 Action was even commenced" (Def. Opp. Mem. at 8) is both a mischaracterization of the Amended Complaint and, in any event, is immaterial at this stage.  First, Netherby states in its Amended Complaint that as early as 2000 and 2001, Netherby's accountant began noticing changes in the royalties being paid under the 1988 Agreement (Cmplt. ¶ 35).  These changes may or may not give rise to any claims by Netherby.  Moreover, until such time we have a developed record in this case and know what diversions of royalties took place during what periods, it is premature to limit Netherby's right to discovery.

4

issue by motion or otherwise.[4]  As none of Netherby's claims have been dismissed on res judicata grounds, Netherby is entitled to discovery on each of its claims.  Such discovery cannot and should not be limited based on the assertion of a res judicata defense.  Tellingly, Defendants did not cross-move for dismissal of Netherby's claims based on res judicata grounds.

## II

### THE DISCOVERY REQUESTED IS NOT OVERLY BROAD AND IS RELEVANT TO NETHERBY'S CLAIMS IN THIS ACTION

Defendants next argue that (1) Netherby's requests are overly broad, (2) Netherby seeks documents that have already been requested from Defendants or are already in Netherby's possession, and (3) Netherby seeks confidential information.  As set forth more fully below, these arguments are without merit.

A.  The Documents Sought By Netherby Are Relevant To Its Claims in This Action

All the documents sought by Netherby are directly related to Netherby's claims in this action.  The categories of documents requested are intentionally broad, as Netherby has learned through seven prior litigations[5] that royalty payments, to which Netherby is entitled to a percentage, are often disguised or diverted by agreements or arrangements (usually unbeknownst to Netherby) that are outside the scope of the typical license agreement.  Moreover, Netherby has learned over the course of the last seven litigations that typically, the most helpful documents it discovers are documents from non-parties.  The Services Agreement at issue in the 2001 Action is a perfect example.  Despite the obligation under the 1995 Modification to the 1988 Agreement to keep Netherby "generally informed of the activities of Buyer's licensees, including providing [Netherby] with copies of such licenses that are executed in the future," Netherby learned of the

---

[4]  Defendants' assertion that "in light of the Court ordered mediation of this matter, defendants have not formally moved to dismiss the Amended Complaint on these grounds" is weak at best.  (Def. Opp. Mem. at 6 n. 3).  If Defendants believed that Netherby's claims could be dismissed on res judicata grounds, a motion to dismiss would likely have been submitted to this Court shortly after the filing of the Amended Complaint in December 2004, long before this case was assigned to mediation.  Moreover, the fact that there is an upcoming mediation does not preclude Defendants from making such a motion.

[5]  Defendants note that the prior litigations "did not involve Jones or any allegations of wrongdoing by Jones" but ignore Netherby's claim that despite various corporate changes, the ownership/management of the Gloria Marks in the Five Countries have been in the hands of the same individuals since 1988 (Cmplt. ¶ 13).

5

Services Agreement accidentally, when it received a copy from Zellers approximately three years after the agreement had been executed. In fact, Justice Gammerman noted that "this [was] a scheme cleverly thought of, and unfortunate from the defendants' point of view, discovered by the plaintiff, perhaps, quite accidentally, to deny to [Netherby] a royalty or a portion of the royalty to which it is entitled."

Defendants' attempt to limit Netherby's request for documents by claiming that Netherby limited its request to "three specific claims on which it purports to need the discovery sought"[6] (Frieman Aff. ¶ 10) is a mischaracterization and should be ignored. As Netherby has not limited its requests for discovery in any way, it is entitled to all evidence reasonably calculated to lead to the discovery of admissible evidence on ***any*** of its claims in this action.

Netherby responds to Defendants' objections to Netherby's requests for documents as follows.

**Category 1:** Documents concerning any and all agreements or understandings concerning the marketing or sale of any products bearing the Gloria Marks.

This request may lead to the discovery of admissible evidence on issues including, but not limited to, agreements pursuant to which Defendants are diverting royalty streams due to Netherby, agreements pursuant to which Zellers has altered the amount of royalties paid on products bearing the Gloria Marks and documents reflecting the manner in which Zellers markets or sells products bearing the GLO Mark.

---

[6] Defendants' falsely claim that Netherby limited its request for documents to documents relating to (1) the alleged reduction in the applicable royalty rate paid by Zellers on certain product categories; (2) the elimination of the royalty due from Zellers on goods purchased from Jones and resold by Zellers; and (3) the fact that no Contingent Payment was made on goods bearing the separate GLO trademark (Frieman Aff. ¶ 10). Netherby has imposed no such limitation on its request. In support of this assertion Defendants cite to a paragraph in Netherby's Affirmation in Support which provides that Netherby's accountant noticed certain irregularities in the royalty payments made to Netherby. Specifically, this paragraph provides:

> "Among other things, the accountant noticed that (1) Zellers had reduced the royalty percentage it was paying to Jones on certain products bearing the Gloria Marks *by half*, from 1.25% to 0.625%, (2) Zellers had *completely ceased* paying royalties to Jones on Jones's sales of products bearing the Gloria Marks to Zellers and (3) Jones and Zellers marketed and sold products bearing the "GLO" mark (marketed as a youthful division of the Gloria Vanderbilt line) and Jones failed to pay Netherby Contingent Payments from these sales (Cmplt. ¶¶ 35, 60)."

As this statement of the irregularities noticed by Netherby's accountant in no way limits Netherby's requests for discovery, Defendants' argument should be disregarded.

6

Defendants are correct that this request is not limited to "agreements between Zellers and defendants or Zellers and the prior owners of the GLORIA VANDERBILT and GLO Trademarks." Netherby specifically opted not to limit this request to those parties because there have been instances in which affiliated or related corporations have been established for the purpose of diverting royalties from Netherby. But, as the Defendants own the Gloria Marks in Canada, any agreement or understanding within the scope of this request would be traceable back to the Defendants.

> **Category 2:** Documents concerning the purchase of any products bearing the Gloria Marks by Zellers from any entity, including, but not limited to, documents reflecting: (a) the source of the goods purchased, (b) the types of goods purchased, (c) the quantities of goods purchased (d) the dates of such purchases, (e) any amounts paid by Zellers, (e) the party to whom payment was made, (f) the dates of such payments and (g) the direct or indirect relationship, if any, between the Buyer and these entities.

As set forth in the Amended Complaint, pursuant to the 1988 Agreement, Defendants are obligated to make Contingent Payments to Netherby on percentages of revenues received by Defendants (and their affiliates) from their own sales of products bearing the Gloria Marks to Zellers and others (Cmplt. ¶ 17). Netherby explains that at some point Zellers "***completely ceased*** paying royalties to Jones on Jones's sale of products bearing the Gloria Marks to Zellers" (Cmplt. ¶ 35). Based on these allegations, Netherby is entitled to information regarding Zellers' purchase of goods bearing the Gloria Marks. As Zellers' website reflects that it is selling Gloria Vanderbilt products, Netherby reasonably believes that Defendants are funneling their sales of Gloria Vanderbilt products to Zellers through a third-party. If it is determined that Defendants are again diverting royalties through an agreement whereby Zellers purchases goods from an entity related to Defendants, this information would be quite relevant to Netherby's right to receive Contingent Payments.

Finally, Defendants' assertion that "it would be more sensible for Netherby to . . . conduct[] an audit in accordance with its rights under the 1988 Agreement" is laughable in light of the years of fruitless requests for information made by Netherby and its counsel (Cmplt. ¶¶ 35-51). Third-party discovery is essential.

> **Category 3:** Documents concerning any changes in the percentages or amounts of compensation, e.g., royalties, fees, etc., paid by Zellers to any entity for the sales of any products bearing the Gloria Marks, including but not limited to any e-mails, correspondence, memoranda and notes.

In its Amended Complaint, Netherby asserts that Zellers "reduced the royalty percentage it was paying [to Defendants] on certain products bearing the Gloria Marks ***by half***" (Cmplt. ¶ 35). Netherby

7

further alleges that despite repeated oral and written requests for an explanation of this issue, Netherby received no information from Defendants (Cmplt. ¶¶ 35-51). As such, Netherby is entitled to information from Zellers relating to changes in the percentages or amount of compensation or royalties paid to entities for the sales of products bearing the Gloria Marks. As explained above, Netherby opted not to limit this request to documents concerning the Defendants because there have been instances in which affiliated or related corporations have been established for the purpose of diverting royalties from Netherby. Moreover, as Defendants own the Canadian rights to the Gloria Marks, any arrangement that Zellers has which is responsive to this request would be traceable back to Defendants.

> **Category 4:**  Documents provided to Zellers from any entity or provided by Zellers to any entity concerning the Gloria Marks and the GLO Mark, including but not limited to information concerning brand management, colors, fit, logos, signage, advertising, photos, line plans, trends, designs and samples, including but not limited to, any e-mails, correspondence, memoranda and notes.

The documents sought through this request relate to Netherby's claim that Defendants' have breached the 1988 Agreement, by failing to provide Netherby with the required Licensing Packages. Netherby asserts that whatever was provided to or by Zellers "concerning brand management, colors, fit, logos, signage, advertising, photos, line plans, trends, designs and samples" should have been provided to Netherby.

> **Category 5:**  Documents concerning any compensation, i.e., royalties, fees, etc., paid by Zellers resulting from the sales of products bearing the GLO Mark.

The documents sought through this request relate to Netherby's claim for royalties based on Zellers sales of products bearing the GLO Marks. As stated above, Netherby opted not to limit this request to documents concerning the Defendants because there have been instances in which affiliated or related corporations have been established for the purpose of diverting royalties from Netherby.

B.       <u>The Request to Depose Five Zellers Witnesses Is Not Overbroad</u>

Netherby's request to depose five Zellers witnesses on issues related to its claims in this action is not overly broad. Based on the limited documents that Netherby has received from Defendants, it is clear that these individuals have information pertaining to one or more of Netherby's claims in this action. Although after receiving the requested documentation from Zellers, Netherby may determine that it does not need to take all five depositions, at this early stage of litigation, it is premature for Netherby to determine exactly

which witnesses it will need to depose. Moreover, given that motion practice is required both in this Court and, thereafter, in a Canadian court, to effectuate this discovery, the discovery schedule in this case would not allow sufficient time for Netherby to seek one deposition at a time.

C.      The Documents Sought By Netherby Are Not Readily Available From the Defendants

Contrary to Defendants' assertions, the documents that Netherby is seeking are not currently available to Netherby, as Defendants have consistently failed to provide Netherby with the information it has requested. Moreover, even if some of this information was available from Defendants, third-party discovery is required to assess its accuracy and completeness.

As an initial matter, Netherby and its counsel have requested documents from Defendants for the past *several years* and have received little or no useful information in response to their requests (Cmplt. ¶¶ 35-51). Moreover, shortly after commencing the instant litigation, Netherby served a document demand requesting thirty separate categories of documents from Defendants. Over the course of the past three months, despite assurances that responsive documents would be produced and after the parties executed a Confidentiality Stipulation and Protective Order (the "Confidentiality Stipulation"), Defendants have produced few of the documents requested. Finally, based on Netherby's seven prior litigations, Netherby has learned that the most useful information in each litigation has typically been provided by non-parties.

As such, although Defendants may have some of the information sought from Zellers, Netherby does not trust that all requested information will be provided by Defendants. This Court, in accordance with the broad discovery rules, has the authority to grant a motion for letters rogatory even if the discovery sought might be duplicative. Elliot Assoc., L.P. v. Republic of Peru, 1997 WL 436493, at *2 (S.D.N.Y. Aug. 1, 1997) (granting motion for letters rogatory despite claims that the discovery would be duplicative).

D.      Confidential Documents Will Be Subject To The Confidentiality Stipulation

As the parties have executed a Confidentiality Stipulation that provides coverage for documents received by non-parties, Defendants' argument that Netherby is seeking documents from Zellers in an effort to circumvent such Confidentiality Stipulation should be ignored.

9

## III

## NETHERBY'S REQUEST FOR LETTERS ROGATORY SHOULD NOT BE LIMITED

Defendants' request that Netherby's motion for letters rogatory be limited should be denied.

First, Netherby should not be required to pay Defendants' costs and expenses in attending depositions of Zellers witnesses.  As this is Netherby's eight lawsuit against the owner of the Gloria Marks in the Five Countries for breaches of the 1988 Agreement and as Netherby is forced to pursue third-party discovery due to the constant concealment of information to which it is entitled, this Court, as a matter of equity, should not require Netherby to pay Defendants' costs and expenses in attending these depositions.  Moreover, as Zellers witnesses are located in Toronto, Canada, a short trip from New York., should Defendants opt to attend the depositions, they should pay their own expenses as every litigant does.  Second, as the Confidentiality Stipulation provides protection for documents received from non-parties, there is no need for an order permitting Defendants to designate discovery received from Zellers as confidential.  Finally, Netherby will make any documents received from Zellers available to Defendants for copying at their own expense.

## CONCLUSION

Based on the foregoing, Netherby respectfully requests that this Court grant its motion for the issuance of letters rogatory.

Respectfully submitted,

CHADBOURNE & PARKE LLP

By      /s/ Thomas J. Hall
        Thomas J. Hall  (TH 3398)
        A Member of the Firm
Attorneys for Plaintiff Netherby Limited
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

Thomas J. Hall
Melissa J. LaRocca
    Of Counsel