## MODIFICATION TO 1988 ACQUISITION AGREEMENT

MODIFICATION to the Acquisition Agreement dated as of December 23, 1988, between Murjani Worldwide B.V. ("Murjani"), as Seller, and G.V. Gitano, Inc. ("G.V. Gitano"), as Buyer (the "1988 Acquisition Agreement").

WHEREAS, Netherby Limited ("Netherby"), as the successor in interest to all of the rights, interests and obligations of Murjani, as Seller, under the 1988 Acquisition Agreement, and G.V. Trademark Investments, Ltd. ("GVTI"), having assumed for the period commencing on August 2, 1993 all of the rights, interests and obligations of G.V. Gitano, as Buyer, under the 1988 Acquisition Agreement, wish to modify and amend that 1988 Acquisition Agreement commencing with Contingent Payments due Netherby by GVTI for the third quarter of 1995, which payments are due to Netherby under the 1988 Acquisition Agreement within 90 days after the end of that quarter.

NOW, THEREFORE, in consideration of the mutual promises contained herein and intending to be legally bound hereby, the parties hereto agree as follows:

1. The definition of "Additional Royalty Income" contained in Section 1 of the 1988 Acquisition Agreement is hereby amended and modified as follows:

"Additional Royalty Income," with respect to designated products, means all payments (including advances) received from any non-Affiliate of Buyer by Buyer (or any Affiliate thereof) that are paid for use of the Marks in connection with such products in the Additional Territory; provided, however, that payments received by Buyer (or any Affiliate thereof) to reimburse Buyer for services actually rendered by third parties retained by Buyer (or any Affiliate thereof) (in amounts reasonably related to such services), shall not fall within this definition; provided further, however, that Buyer's right to exclude from this definition payments for such services actually rendered, is expressly limited as follows:

i. Advertising and/or other expenses paid to Buyer (or an Affiliate thereof) by a licensee may be excluded only where such expense was incurred solely to benefit the particular licensee making the payment to Buyer, and further only where such advertising and/or other expenses are for that licensee's licensed products only, to the exclusion of all other products (except other products may appear in photographic advertising so long as the print on such advertising is for the paying licensee's licensed products only).

ii. Expenses for advertising and/or other services paid for by a licensee may be excluded only if such services were rendered by a third party which is not an Affiliate of Buyer and is not owned or controlled by Isaac Dabah and/or his family.

iii. In any event, Buyer's right to exclude advertising and/or other expense payments by licensees in any bi-annual period, either January 1 to June 30 or July 1 to December 31, is capped for each licensee at one percent (1%) of that licensee's sales for that six-month period for which such payments are being made. Any advertising and/or other expenses exceeding this one percent (1%) per six months per licensee limitation cannot be excluded and cannot be carried forward to subsequent periods or applied to past-bi-annual periods.

2

2. The definition of "Canadian Royalty Income" contained in Section 1 of the 1988 Acquisition Agreement is hereby amended and modified as follows:

> "Canadian Royalty Income," with respect to designated products, means all payments (including advances) received from any non-Affiliate of Buyer by Buyer (or any Affiliate thereof) that are paid for use of the Marks in connection with such products in Canada; provided, however, that payments received by Buyer (or any Affiliate thereof) to reimburse Buyer for services actually rendered by third parties retained by Buyer (or any Affiliate thereof) (in amounts reasonably related to such services), shall not fall within this definition; provided further, however, that Buyer's right to exclude from this definition payments for such services actually rendered, is expressly limited as follows:
>
> i. Advertising and/or other expenses paid to Buyer (or an Affiliate thereof) by a licensee may be excluded only where such expense was incurred solely to benefit the particular licensee making the payment to Buyer, and further only where such advertising and/or other expenses are for that licensee's licensed products only, to the exclusion of all other products (except other products may appear in photographic advertising so long as the print on such advertising is for the paying licensee's licensed products only).
>
> ii. Expenses for advertising and/or other services paid for by a licensee may be excluded only if such services were rendered by a third party which is not an Affiliate of Buyer and is not owned or controlled by Isaac Dabah and/or his family.
>
> iii. In any event, Buyer's right to exclude advertising and/or other expense payments by licensees in any bi-annual period, either January 1 to June 30 or July 1 to December 31, is capped for each licensee at one percent (1%) of that licensee's sales for that six-

month period for which such payments are being made. Any advertising and/or other expenses exceeding this one percent (1%) per six months per licensee limitation cannot be excluded and cannot be carried forward to subsequent periods or applied to past-bi-annual periods.

3. The definition of "US Royalty Income" contained in Section 1 of the 1988 Acquisition Agreement is hereby amended and modified as follows:

"US Royalty Income," with respect to designated products, means all payments (including advances) received from any non-Affiliate of Buyer by Buyer (or any Affiliate thereof) that are paid for use of the Marks in connection with such products in the US Territory; provided, however, that payments received by Buyer (or any Affiliate thereof) to reimburse Buyer for services actually rendered by third parties retained by Buyer (or any Affiliate thereof) (in amounts reasonably related to such services), shall not fall within this definition; provided further, however, that Buyer's right to exclude from this definition payments for such services actually rendered, is expressly limited as follows:

i. Advertising and/or other expenses paid to Buyer (or an Affiliate thereof) by a licensee may be excluded only where such expense was incurred solely to benefit the particular licensee making the payment to Buyer, and further only where such advertising and/or other expenses are for that licensee's licensed products only, to the exclusion of all other products (except other products may appear in photographic advertising so long as the print on such advertising is for the paying licensee's licensed products only).

ii. Expenses for advertising and/or other services paid for by a licensee may be excluded only if such services were rendered by a third party which is not an Affiliate of Buyer and is not owned or controlled by Isaac Dabah and/or his family.

4

  iii. In any event, Buyer's right to exclude advertising and/or other expense payments by licensees in any bi-annual period, either January 1 to June 30 or July 1 to December 31, is capped for each licensee at one percent (1%) of that licensee's sales for that six-month period for which such payments are being made. Any advertising and/or other expenses exceeding this one percent (1%) per six months per licensee limitation cannot be excluded and cannot be carried forward to subsequent periods or applied to past-bi-annual periods.

  4. The definition of "First Termination Date" contained in Section 1 of the 1988 Acquisition Agreement is hereby amended and modified as follows:

  "First Termination Date" -- July 31, 1997.

  5. The definition of "Second Payment Period" contained in Section 1 of the 1988 Acquisition Agreement is hereby amended and modified as follows:

  "Second Payment Period" -- the period commencing on August 1, 1997 and terminating on December 31, 1997.

  6. The definition of "Non-US Payment Period" contained in Section 1 of the 1988 Acquisition Agreement is hereby amended and modified as follows:

  "Non-US Payment Period," with respect to Canada, Brazil, Australia or New Zealand, as the case may be, means the period commencing on the Closing Date and terminating on the date ten years and three months after the date on which Buyer or any of its Affiliates first commences making shipments to its customers in such country commercial quantities of Gitano Products. Subject to the following paragraph in this Modification to

>  1988 Acquisition Agreement, Buyer hereby agrees that as of December 8, 1995, the Non-US Payment Period for these countries has not commenced.

The inclusion of Canada in the foregoing paragraph is subject to modification, on the issue of whether commercial quantities of Gitano Products have yet been shipped to Canada, should Buyer within sixty (60) days of the date of execution of this Modification to 1988 Acquisition Agreement present to Seller documentary evidence reasonably satisfactory to Seller that commercial quantities of Gitanto Products have been previously shipped to Canada.

   7.   Section 3.7 of the 1988 Acquisition Agreement is modified to add the following sentence at the end thereof:

>  Buyer shall pay to Seller interest, calculated at the rate of nine percent (9%) per annum, on all Contingent Payments, or any portions thereof, that have not been paid to Seller by Buyer within five (5) business days of the due date thereof, the due date being 90 days after the end of each calendar quarter following the Closing Date.

8.  Section 15 of the 1988 Acquisition Agreement is modified to add the following provision as Section 15.11:

> Buyer shall use its best efforts to provide to Seller, at no cost to Seller, one set of samples of Gloria Vanderbilt designs and products within 30 days after such samples are available to Buyer. Additional samples shall be supplied by Buyer, at a cost to Seller of no more than the Buyer's actual cost, if requested by Seller. Buyer further agrees to use its best efforts to keep Seller generally informed of the activities of Buyer's licensees, including providing Seller with copies of such licenses presently in existence and licenses that are executed in the future.

IN WITNESS WHEREOF, the parties have duly executed this Modification as of the 8th day of December, 1995.

NETHERBY LIMITED

By _____
A duly authorized representative

G.V. TRADEMARK INVESTMENTS, INC.

By _____
A duly authorized representative