Page 328

COURT OF THE STATE OF NEW YORK
NEW YORK : CIVIL TERM 27
- - - - - - - - - - - - - - - - - -X
     , LTD.,
                    Plaintiff,
                              INDEX NUMBER:
        - against -              113339/01

VANDERBILT TRADEMARK, B.V.,
VANDERBILT APPAREL, INC.,
TRADEMARK INVESTMENT, LTD.,

                    Defendants.
- - - - - - - - - - - - - - - - - -X
                    60 Centre Street
                    New York, New York
                    May 3, 2002

BEFORE:

            HONORABLE IRA GAMMERMAN, Justice.

APPEARANCES:

    CHADBOURNE & PARK, LLP,
    Attorneys for the Plaintiff
    30 Rockefeller Plaza
    New York, New York  10112
    BY:  THOMAS J. HALL, ESQ.
         MELISSA LaROCCA, ESQ.

    SHIBOLETH, YISRAELI, ROBERTS & ZISMAN, L.L.P.
    Attorneys for Defendant Gloria Vanderbilt Trademark B.V.
    350 Fifth Avenue, Suite 6001
    New York, New York  10118-6098
    BY:  MATTHEW C. GRUSKIN, ESQ.

            (Continued on next page.)

Page 329

APPEARANCES: (Continued)

DUANE MORRIS LLP
Attorneys the Defendant GV APPAREL
& GV TRADEMARK INVESTMENT, LTD.
380 Lexington Avenue
New York, New York  10168
BY:  KAREN S. FRIEMAN, ESQ.


            MARGARET BAUMANN
            Official Court Reporter

Page 330

1       ISAAC DUBAH, called as a witness
2   having been previously duly sworn, was examined and
3   testified as follows:
4       THE COURT: Let the record reflect Isaac Dubah
5   is recalled.
6       THE COURT: Go ahead, counsel.
7   DIRECT EXAMINATION
8   BY MS. FRIEMAN:
9   Q  Good morning, Mr. Dubah.
10         Were you involved in negotiating the license
11  agreement between Hudson Bay Company and Gloria Vanderbilt
12  Trademark, B.V.?
13  A  Yes.
14  Q  Could you tell us what your in involvement was?
15  A  As CEO of Gloria Vanderbilt, I was not involved in
16  the detail, nor was I involved in negotiating directly with
17  the Hudson Bay.  In my role as chief executive, I certainly
18  was involved.
19  Q  Were you involved in direct conversation with anyone
20  at Hudson Bay regarding the terms of the license agreement
21  with Gloria Vanderbilt Trademark, B.V.?
22  A  I was involved in certain meetings with them, again I
23  -- before the license was signed, yes.
24  Q  Do you recall the substance of any of those

Page 331

1   conversations?
2   A  The basic substance was really discussion relating to
3   the value of the trademark, positioning of the trademark, how
4   we could -- how the trademark will do in the stores.
5   Basically, it's talking about talking up the trademark and
6   how we can be able to get, you know, more royalties from
7   them.
8   Q  And did you have any discussions with anyone at
9   Gloria Vanderbilt Trademark, B.V. about the license agreement
10  with Hudson Bay prior to the time that that agreement was
11  executed?
12  A  Yes.
13  Q  And could you tell us who, who did you speak with
14  about that at Gloria Vanderbilt Trademark, B.V.?
15  A  Again, it was years ago, so I don't recall the
16  specifics of the discussion, but I would have discussed it
17  with Henk Keilman who is basically -- you know, owns and
18  manages GVBV.
19  Q  And did he agree to the terms of the license
20  agreement between Hudson Bay Company and Gloria Vanderbilt,
21  B.V.?
22  A  He was ecstatic of the minimums and royalty we were
23  anticipating in getting since, prior we were trying to do
24  business in Canada for many years, we were never able to get
25  such a big license.  So, such big minimums out of a Canadian

Page 352

1   is more, Judge, than just an argument based on --
2   THE COURT: I would say, counselor, that's what
3   you have to concentrate on in your post trial argument
4   because you really have to change my mind.
5   My initial impression here is that this is a
6   scheme cleverly thought of, and unfortunate from the
7   defendants' point of view, discovered by the plaintiff,
8   perhaps, quite accidentally, to deny to the plaintiff a
9   royalty or a portion of the royalty to which it is
10  entitled, and you are going to have a problem convincing
11  me of the opposite.
12  But, let's talk about some practical matters.
13  MR. GRUSKIN: Your Honor, just one --
14  THE COURT: Yes.
15  MR. GRUSKIN: On what you just said, the issue
16  that you'd like us to focus in on is whether the
17  definition of buyer includes?
18  THE COURT: Whether or not it was the intention
19  of the parties that merely by assigning, from merely by
20  assigning to BV, the defendants can avoid the impact of
21  this language.
22  MS. FRIEMAN: But, your Honor.
23  THE COURT: That's really your argument.
24  MR. GRUSKIN: But even if that was irrelevant,
25  even if the transfer was conceded by everyone to be an

Page 353

1   appropriate proper legal arm's length transaction, the
2   Court is still viewing GTI as a buyer, am I correct?
3   THE COURT: It has nothing to do with the bona
4   fides of the transfer.
5   MR. GRUSKIN: That's what I mean.
6   THE COURT: Because it seems to me that the
7   intention of the parties was to prevent what is happening
8   here from happening, and that the mere transfer of the
9   copyright or the trademark from one company to another,
10  even if it's a legitimate transfer, and even if the Dubah
11  family has no interest at all in the Dutch company -- and
12  I am interested in the fact -- I guess the principal
13  operating officer of the Dutch company never appeared for
14  his deposition? If you had made a motion, I would have
15  made a judgment against that. Just a moment.
16  If you had made a motion based on that failure I
17  would have granted that motion and judgment against the
18  company.
19  MR. GRUSKIN: Your Honor.
20  THE COURT: Just a minute.
21  MR. HALL: Your Honor, I did send a letter,
22  third week of April, asking for that relief.
23  MR. GRUSKIN: And, we had a conference with Ms.
24  Giles of your chambers, and we dealt with that.
25  THE COURT: In any event, in any event, it does

Page 354

1   -- let me say this to you, it does raise some questions
2   in my mind, but that's not the basis of my ruling or my
3   thoughts. I have not ruled yet.
4   It seems to me that that transfer doesn't change
5   anything, and that everyone on this list is the buyer, and
6   that the transferor remains liable for the payments and
7   remains liable under the definition of buyer, and you will
8   have to argue otherwise in the papers you submit.
9   MR. GRUSKIN: I am trying to understand. If the
10  service provider, instead of being GVAC, Mr. Gordon's
11  could have, the plaintiff's expert in this case --
12  THE COURT: I think you would be in much better
13  shape.
14  MR. GRUSKIN: Okay, because your finding.
15  THE COURT: Absolutely.
16  MR. GRUSKIN: Okay, I want to be clear on that.
17  THE COURT: There is no question about that. I
18  don't think we'd have a lawsuit under those
19  circumstances.
20  And if it was clear that the only amount that
21  was being received was the amount of the mark and that
22  there was a totally independent third-party unrelated to
23  any of the Dubah corporations, including the providing the
24  services, we would not be trying this case.
25  There is nothing in that agreement, in the '98

Page 355

1   agreement that prevents that from happening, and I suspect
2   that did not happen because some decision was made to
3   convert two and a half percent to 1 and a quarter
4   percent.
5   Now, from a practical point of view, is there a
6   dispute concerning the amount of royalties that have been
7   paid about a contingent payments that your client has
8   received?
9   This is the addressed to the attorney for the
10  plaintiff.
11  MR. HALL: We know what has been reported to us
12  by GVAC.
13  THE COURT: How do you verify the contingent
14  payments, the amount that to which your client is
15  entitled?
16  MR. HALL: We are trying to get that information
17  from Zellers directly.
18  THE COURT: It seems to me you don't need to
19  know what Zellers paid. To -- presume I don't think
20  there's any question that that Zellers paid the same
21  amount that they made on the one quarter percent to BI to
22  GVAC.
23  MR. HALL: We're trying to find out from Zellers
24  how much they paid.
25  Well, to both, it is a quarterly payment.