UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
NETHERBY LIMITED,                                   :         04 CV 07028(GEL)
                                                    :
                        Plaintiff,                  :
                                                    :
         - against -                                :
                                                    :
JONES APPAREL GROUP, INC. and JONES                 :
INVESTMENT CO. INC.,                                :
                                                    :
                        Defendants.                 :
------------------------------------------------------------------------x

## DEFENDANTS' STATEMENT
## PURSUANT TO LOCAL RULE 56.1

Pursuant to Local Rule 56.1 of the United States District Court for the Southern District

of New York, defendants Jones Apparel Group, Inc. ("JAG") and Jones Investment Co. Inc.

("JICO", and sometimes collectively with JAG, "Jones"), submit the following response to

plaintiff's statement pursuant to Local Rule 56.1.

As set forth below and in the accompanying papers, plaintiff has failed to come forward

with admissible evidence sufficient to eliminate all genuine issues of fact on its sixth, seventh

and eight causes of action or sufficient to defeat the respective first counterclaims of JAG and

JICO. Plaintiff's motion for summary judgment should be denied and judgment should be

entered in favor of defendants: (a) dismissing plaintiff's sixth, seventh and eighth causes of

action; (b) on their respective first counterclaims; (c) dismissing plaintiff's first, second, third,

fourth and seventh causes of action to the extent that they seek damages barred by the expiration

of the applicable six year statute of limitations; (d) dismissing plaintiff's first, second, third,

sixth, seventh and eighth causes of action to the extent they assert claims barred by the doctrine

of res judicata; (e) dismissing the complaint insofar as it asserts claims against JAG; (f) awarding them their attorneys' fees; and (g) for .such other and further relief as to this Court seems just and proper.

      1.      In response to paragraph 1, JAG and JICO state that, no response is required since the statement fails to comply with the requirements of Local Rule 56.1 in that it is not based on admissible evidentiary support   Subject to and without waiving the foregoing objection, in response to the allegations contained in paragraph 1, JAG and JICO deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations that plaintiff Netherby is a corporation duly organized and existing under the law of Jersey, Channel Islands with its principal place of business in Jersey, Channel Islands and that it is the owner of the worldwide rights (outside of the Five Countries) to the GLORIA VANDERBILT Trademarks conveyed in the Five Countries to JICO's indirect predecessor under the 1988 Agreement (the "GLORIA VANDERBILT Trademarks"); JAG and JICO admit that Netherby does not own the GLORIA VANDERBILT Trademarks in the Five Countries; JAG and JICO deny that the definition of "Gloria Marks" set forth in said paragraph and used by plaintiff throughout accurately describes the trademark rights transferred pursuant to the 1988 Agreement which makes no reference to that term; JAG and JICO further deny that plaintiff owns the rights in the "Gloria Marks" (as that term is defined and used by plaintiff in the Amended Complaint and in this motion) in the Five Countries or elsewhere, and in particular deny that plaintiff owns the trademarks GLO, GLO JEANS or GLO Girl (the "GLO Trademarks").  (Affidavit of  Mohan Murjani, dated September 23, 2005 ("Murjani Aff."), Exhibit B, p. 4, definition of "Marks";

Affidavit of Karen S. Frieman, sworn to October 21, 2005 (the "Frieman Aff."), Exhibit X;

Declaration of Jeffrey M. Samuels, dated October 12, 2005 ("Samuels Decl., ¶¶ 4-8.)[1]

      2.      JAG and JICO admit the statements contained in paragraph 2.

      3.      JAG and JICO deny the statements contained in paragraph 3, except admit that

JICO is indirectly wholly owned by JAG and maintains its principal place of business at 200

West 9th Street, Suite 700, Wilmington, Delaware, 19801-1646.

      4.      In response to paragraph 4, JAG and JICO state that no response is required since

the statement fails to comply with the requirements of Local Rule 56.1 in that it is not based on

admissible evidentiary support. Subject to and without waiving the foregoing objection, JAG

and JICO deny the statements contained in paragraph 4, except admit that by agreement dated

March 18, 2002, JICO acquired the GLORIA VANDERBILT Trademarks and the GLO

Trademark, and related formative marks, together with the goodwill associated with each, and

third party licenses of each. JAG and JICO further state that as definitive, unrebutted evidence

has been produced to plaintiff in this action demonstrating that JICO owns the GLORIA

VANDERBILT Trademarks and that JAG does not (Frieman Aff., Exhibit A), so that JAG has

no obligations under the 1988 Agreement, there is no basis for the entry of any judgment in this

action for breach of that agreement against JAG.

      5.      JAG and JICO deny knowledge or information sufficient to form a belief as to the

truth or falsity of the statements contained in paragraph 5, deny that said statement accurately

reflects the terms of the document relied on therein, and admit that that document purports to

---

[1]      References herein to the "1988 Agreement" are to the agreement dated December 23,
1988 between G.V. Gitano and Murjani Worldwide, B.V. pursuant to which the GLORIA
VANDERBILT Trademarks were conveyed to JICO's indirect predecessor.

grant to an entity called Netherby Ltd. certain enumerated rights in certain enumerated GLORIA

VANDERBILT Trademarks.

      6.     In response to paragraph 6, JAG and JICO state that no response is required since

the statement fails to comply with the requirements of Local Rule 56.1 in that there is no

admissible evidentiary support for the statements, conclusions, inferences and/or

characterizations in said paragraph. Subject to and without waiving the foregoing objection,

JAG and JICO deny the statements contained in paragraph 6. In particular, JAG and JICO aver

that plaintiff's characterization and quotation of the 1980 Purchase Agreement are incomplete,

incorrect and misleading. For example, and without limitation, the term "Gloria Marks" is not

found anywhere in the 1980 Purchase Agreement or in any other agreement or document which

might be relevant to any issue in this action. Rather, it is a term created by plaintiff for this

litigation in order to improperly and without any evidentiary support conflate the GLORIA

VANDERBILT and GLO Trademarks. Further, by eliminating quotation marks which appear in

the 1980 agreement, plaintiff has changed the plain meaning of the provision. Properly quoted,

the provision reads:

> "Mark" shall mean (i) the name "Gloria Vanderbilt" both in stylized signature
> form and all other manner of representation, (ii) the initials "GV" both in stylized
> signature form and all other manner of representation, (iii) the swan, (iv) the
> stylized signature of Gloria Vanderbilt in a rectangular box, (v) any and all
> variations of any of the foregoing, including, but not limited to, "Vanderbilt",
> "Gloria" and all other manner of representation, to the extent that GV, Netherby
> or licensees of Netherby have or subsequently obtain a right to any such marks,
> and (vi) any other mark associated with Gloria Vanderbilt. (Emphasis supplied.)

The quotation marks are clearly used in that paragraph to denote trademarks consistent with

conventions in intellectual property matters. (See, Samuels Decl., ¶ 8.) Quotation marks are not

used in subparagraph (vi) which references to marks associated with Gloria Vanderbilt. A plain

reading of that subparagraph is that what is referred to is not a trademark associated with the

trademark "Gloria Vanderbilt", but a trademark associated with the person, Gloria Vanderbilt, who was the grantor under the 1980 agreement. Therefore, plaintiff's claim that this subparagraph granted it rights in all trademarks "associated with" the so-called, non-existent, "Gloria Marks" is simply not supported by the contract. (Id.)

Similarly, the term "all manner of representation" is used in that provision to refer specifically to representations: (i) of the name "Gloria Vanderbilt", other than the stylized signature referred to; (ii) of the initials "GV" other than the stylized signature referred to; and, (iii) of any variations of the foregoing, (i.e. the "Gloria Vanderbilt","GV", swan and signature trademarks), including but not limited to "Gloria," Vanderbilt", and all to the extent GV, Netherby or Netherby's licenses have or obtain a right to such marks. Again, there is no reference to the overbroad term "Gloria Marks" relied on by plaintiff. Moreover, even the arguable broadest part of that paragraph which refers to variations of the enumerated marks (subparagraph (iv)), is limited to those variations to which the parties to the1980 Purchase Agreement subsequently obtain rights. There is no admissible evidence that Netherby, at the time it transferred its rights pursuant to the 1988 Agreement to JICO's predecessor, had any rights in the Five Countries to the GLO Trademarks. In fact, the evidence is to the contrary: plaintiff has conceded that prior to the 1988 Agreement it did not adopt or use the GLO Trademarks. (Compare Declaration of Melissa J. LaRocca dated September 23, 2005 ("LaRocca Decl."), Exhibit 2, ¶ 123 with Frieman Aff., Exhibit B, ¶ 123, and LaRocca Decl., Exhibit 3, ¶123 with Frieman Aff., Exhibit C, ¶ 123.)

7.    In response to paragraph 7, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1 in that it is not based on admissible evidentiary support. Subject to and without waiving the foregoing objection, JAG

and JICO deny the statements contained in paragraph 7 based on the use of the objectionable,

misleading and incorrect term "Gloria Marks", to the extent they aver that Netherby acquired the

"Gloria Marks"; and to the extent they imply or state that Netherby had any involvement with the

GLO Trademarks or any business connected therewith, and deny knowledge or information

sufficient to form a belief as to the truth or falsity of the remainder of the statements contained

therein. (Compare LaRocca Decl., Exhibit 2, ¶ 123 with Frieman Aff., Exhibit B, ¶ 123, and

LaRocca Decl., Exhibit 3, ¶123 with Frieman Aff., Exhibit C, ¶ 123.)

       8.     In response to paragraph 8, JAG and JICO state that no response is required since

the statement fails to comply with the requirements of Local Rule 56.1 in that it is not based on

admissible evidentiary support to the extent said paragraph avers that Netherby sold rights in the

"Gloria Marks" through Murjani Worldwide B.V. and to the extent it implies that the buyer

under the 1988 Agreement was a predecessor to JAG. Subject to and without waiving the

foregoing objection, JAG and JICO deny the statements contained in paragraph 8, except admit

that pursuant to the 1988 Agreement, Murjani Worldwide, the apparent predecessor to plaintiff,

conveyed to G.V. Gitano, Inc., the indirect predecessor of JICO, the rights to the Gloria

Vanderbilt Trademarks, as defined therein, in the Five Countries.

       9.     JAG and JICO deny the statements contained in paragraph 9 as contrary to

language of the 1988 Agreement, except admit that plaintiff retained its rights, if any, outside of

the Five Countries in the Gloria Vanderbilt Trademarks enumerated in the 1988 Agreement, and

aver that the reference to "Marks" in said paragraph is undefined such that a full response to this

statement is impossible.

       10.    In response to paragraph 10, JAG and JICO object to this statement on the

grounds and to the extent that the term "Five Country rights" used therein is undefined such that

a full response to this statement is impossible.  Subject to and without waiving the foregoing

objection, JAG and JICO admit that the ownership of the GLORIA VANDERBILT Trademarks

transferred pursuant to the 1988 Agreement has changed and that the obligations of the

trademark owner under the 1988 Agreement have been assigned.

11.     In response to paragraph 11, JAG and JICO state that no response is required

since the statement fails to comply with the requirements of Local Rule 56.1 in that it is not

based on  admissible evidentiary support.  Subject to and without waiving the foregoing

objection, JAG and JICO deny the allegations contained in paragraph 11 based on the use of the

objectionable, misleading and incorrect term "Jones" (id.), admit that by agreement dated March

18, 2002, JICO acquired the GLORIA VANDERBILT Trademarks and the GLO Trademark,

and related formative marks, together with the goodwill associated with each, and third party

licenses of each and has assumed obligations under the 1988 Agreement.  (Frieman Aff., Exhibit

A.)

12.     JAG and JICO deny the statements  contained in paragraph 12 based on the use of

the objectionable, misleading and incorrect terms "Jones" and "Gloria Marks" and because the

obligation to make Contingent Payments in respect of the United States expired no later than

December 31, 1997.  (Frieman Aff., ¶ 8, Exhibit D, ¶¶ 4-5.)  Subject to and without waiving the

foregoing, JAG and JICO admit that, pursuant to the terms of the 1988 Agreement, as modified,

JICO, as the owner of the GLORIA VANDERBILT Trademarks, is obligated to make

Contingent Payments to Netherby in respect of its sales of covered products bearing the

GLORIA VANDERBILT Trademarks and its receipt of royalty income from its licensees of the

GLORIA VANDERBILT Trademarks in Canada until October 16, 2009, and may become

obligated to make such payments for a finite period of time in respect of such sales and such

royalty income, if any, in Brazil, Australia and/or New Zealand. (Frieman Aff., ¶¶ 11-12, Exhibits D, ¶ 6, and E)

13.     JAG and JICO deny the statements contained in paragraph 13 based on the use of the objectionable, misleading and incorrect terms "Jones" and "Gloria Marks" and because the obligation to make Contingent Payments in respect of the United States expired no later than December 31, 1997. (Frieman Aff., ¶ 8, Exhibit D, ¶¶ 4-5.) Subject to and without waiving the foregoing, JAG and JICO admit that, pursuant to the terms of the 1988 Agreement, as modified, JICO, as the owner of the GLORIA VANDERBILT Trademarks, is obligated to make Contingent Payments to Netherby in respect of sales by it or its Affiliates of covered products bearing the GLORIA VANDERBILT Trademark and of licensing royalties received from licensees of the GLORIA VANDERBILT Trademarks in Canada, all through October 16, 2009, and may become obligated to make such payments for a finite period of time in respect of such sales and such royalty income, if any, in Brazil, Australia and/or New Zealand. (Frieman Aff., ¶¶ 11-12, Exhibits D, ¶6 and E.)

14.     JAG and JICO deny the allegations contained in paragraph 14 based on the use of the objectionable, misleading or incorrect term "Gloria Marks" and because the obligation to make Contingent Payments in respect of the United States expired no later than December 31, 1997. (Frieman Aff., ¶ 8, Exhibit D, ¶¶ 4-5.) Subject to and without waiving the foregoing, JAG and JICO admit that currently and up to and including with respect to the period ending October 16, 2009, Netherby has a right to receive a Contingent Payment on royalty income JICO receives as the owner of the GLORIA VANDERBILT Trademarks in respect of the GLORIA VANDERBILT Trademarks from Canadian licensees and may in the future have such a right for

a finite period of time in respect of New Zealand, Australia and/or Brazil, all pursuant to the
terms of the 1988 Agreement, as modified. (Frieman Aff., ¶¶ 11-12, Exhibits D, ¶6 and E.)

15.     JAG and JICO deny the allegations contained in paragraph 15, based on the use or
incorporation of the objectionable, misleading or incorrect terms "Jones" and "Gloria Marks"
and because the obligation to make Contingent Payments in respect of the United States expired
no later than December 31, 1997. (Frieman Aff., ¶ 8, Exhibit D, ¶¶ 4-5.) Subject to and without
waiving the foregoing, JAG and JICO admit that pursuant to the 1988 Agreement, as the owner
of the GLORIA VANDERBILT Trademarks, JICO is required to render quarterly statements to
Netherby, as described in the 1988 Agreement, covering the period ending October 16, 2009
with respect to Canada, and may in the future be required for a finite period of time to provide
such statements for New Zealand, Australia and/or Brazil. (Frieman Aff., ¶¶ 11-12, Exhibits D,
¶6 and E.)

16.     In response to paragraph 16, JAG and JICO state that no response is required
since the statement fails to comply with the requirements of Local Rule 56.1 in that it is not
based on admissible evidentiary support. Subject to and without waiving the foregoing
objection, JAG and JICO deny the allegations contained in paragraph 16. (See, Frieman Aff., ¶
11, Exhibit E, ¶6.)

17.     In response to paragraph 17, JAG and JICO state that no response is required
since the statement fails to comply with the requirements of Local Rule 56.1 in that it is not
based on admissible evidentiary support. Subject to and without waiving the foregoing
objection, JAG and JICO deny the allegations contained in paragraph 17, except admit that the
Canadian Payment Period will expire on October 16, 2009. (Frieman Aff., ¶ 12, Exhibits D and

E.) JAG and JICO further aver that the US Payment Period ended on June 30, 1997, with respect to "Gitano products" (as defined in the 1988 Agreement), and on December 31, 1997, with respect to all other covered products. (Id., Exhibit D.) In each case Netherby's final Contingent Payment was, or will be, due no later than 90 days after the end of the calendar quarter. (Murjani Aff., Exhibit B, ¶¶ 3.6, 3.7.) However, Netherby was not entitled to any Contingent Payment on US royalties or US sales proceeds received by the trademark owner(s) after June 30, 1997 (with respect to Gitano Products) or December 31, 1997 (with respect to other products). (Id.)

18.    In response to paragraph 18, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1 in that it is not based on admissible evidentiary support. Subject to and without waiving the foregoing, JAG and JICO deny the allegations contained in paragraph 18, except admit that the respective payment periods of ten years and three months from the first commercial shipment of goods into those territories have not begun for Brazil, Australia or New Zealand. (Frieman Aff., ¶ 11, Exhibit D, ¶ 6.)

19.    In response to paragraph 19, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1 in that it is not based on admissible evidentiary support at least insofar as it relates to JAG and to the alleged purpose of ¶ 12.2 of the 1988 Agreement. Subject to and without waiving the foregoing objection, JAG and JICO deny the allegations contained in paragraph 19 based on the use of the objectionable, misleading and incorrect terms "Jones" and "Gloria Marks," except admit that ¶ 12.2 of the 1988 Agreement, which is binding on JICO only and pertains only to the "GLORIA VANDERBILT" Trademarks transferred under the 1988 Agreement, provides, in pertinent part, that:

Consistent with antitrust and other appropriate laws, at all times on and after the Closing Date,... (c) Buyer shall (and shall cause each of its Affiliates to) use its best efforts to restrict the customers of it and its licensees from reselling Relevant Products (other than Cosmair Items) bearing any of the Marks to other Persons outside the Territory, and (d) Buyer shall not (and shall cause each of its Affiliates not to) sell or distribute (or permit its licensees to sell or distribute) any Relevant Product (other than Cosmair Items) bearing any of the Marks to any Person, if Buyer (or such Affiliate) knows of should know that such Person will resell or distribute such Relevant Product or cause such Relevant Product to be resold or distributed outside the Territory.

20.     JAG and JICO incorporate their response to paragraph 19 hereof.

21.     In response to paragraph 21, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1 in that it is not based on admissible evidentiary support at least insofar as it characterizes the definition of "Marks" in the 1988 Agreement as "broad." Subject to and without waiving the foregoing, JAG and JICO deny the statements contained in paragraph 21 based on plaintiff's characterization of the agreement, except admit that plaintiff, aside from its added emphasis, has accurately set forth the definition of Marks contained in the 1988 Agreement.

22.     In response to paragraph 22, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1 in that it is not based on admissible evidentiary support. Subject to and without waiving the foregoing objection, JAG and JICO deny the statements contained in paragraph 22 including but not limited to based on the use of the objectionable, misleading and incorrect term "Jones", except admit that JICO's predecessor registered the trademark "GLO by Gloria Vanderbilt" and did a small amount of business under that name in 1996. JAG and JICO further aver that no additional use of that trademark was made thereafter. (Declaration of Jack Gross, dated October 18, 2005, (the "Gross Decl."), ¶ 3.)

23.     JAG and JICO deny the statements contained in paragraph 23 based on the objectionable, misleading and incorrect reference to and characterization of "first GLO trademark." Subject to and without waiving the foregoing, JAG and JICO admit that the trademark "GLO by Gloria Vanderbilt" was first used on or about November 1, 1996 and was registered with the United States Patent and Trademark office on or about December 29, 1998.

24.     JAG and JICO deny the statements contained in paragraph 24 based on the objectionable, misleading and incorrect reference to "additional GLO Marks", except admit that in the United States, the trademark GLO was registered on January 15, 2002 by JICO's predecessor, that in the United States the trademark GLO Girl was registered by Nettlewoods, Inc. on February 3, 2004 and has been acquired by JICO, that an application was made in the United States to register GLO Jeans, which application was suspended and that JICO has used, through affiliates or licenses, the trademarks GLO, GLO GIRL and GLO JEANS (previously defined herein as the "GLO Trademarks"). (LaRocca Decl., Exhibits 5-7.)

25.     In response to paragraph 25, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1 in that it is not based on admissible evidentiary support at least insofar as it pertains to the reference to and characterization of the alleged "evolution of the GLO Marks." Subject to and without waiving the foregoing objection, JAG and JICO deny the statements contained in paragraph 25 on the same grounds and incorporate their responses to paragraphs 22, 23 and 24.

26.     In response to paragraph 26, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1 in that it is not based on admissible evidentiary support since the document at issue is inadmissible hearsay which may not be considered on this motion. Subject to and without waiving the foregoing

objection, JAG and JICO deny the statements contained in paragraph 26 based on the use of the objectionable, misleading and incorrect term "Jones", and further deny knowledge or information sufficient to form a belief as to the truth or falsity of the statements contained in paragraph 26, except admit that Steve Gerber was counsel to JICO's predecessor.

27. In response to paragraph 27, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1 in that it is not based on admissible evidentiary support in that the document at issue is inadmissible hearsay which may not be considered on this motion and in that plaintiff misquotes same. Subject to and without waiving the foregoing objection, JAG and JICO deny the statements contained in paragraph 27 as to the meaning and source of the memorandum is ambiguous and not as plaintiff characterizes it. JAG and JICO further aver that the Zellers license also granted Zellers the right to use the ROYAL BLUES Trademark which even plaintiff would not allege falls within the rubric of the 1988 Agreement. (Frieman Aff., Exhibit T, exhibit A, p. Jones 000149.)

28. In response to paragraph 28, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1 in that it is not based on admissible evidentiary support. Rather, the documents on which plaintiff seeks to rely are incomplete and/or unauthenticated hearsay which may not be considered on this motion. Further, JAG and JICO aver that paragraph 28 is not probative because any statement that GLO products are related to the Gloria Vanderbilt Division, which is the corporate headquarters, within the Jones family of corporations, of the Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and without waiving the foregoing objection, JAG and JICO deny the statements contained in paragraph 28 (Gross Decl., ¶¶ 3-4; Declaration of Janice

13

Brown, dated October 18, 2005 ("Brown Decl."), ¶ 3) and further aver that the statements

contained in paragraph 28 are misleading insofar as they confuse the difference between the

"GLORIA VANDERBILT" Trademarks and the entity known as Gloria Vanderbilt Apparel

Corp. or as the Gloria Vanderbilt Division of the Jones Apparel Group, Inc.

29    In response to paragraph 29, JAG and JICO admit that the press releases referred

to were issued by JAG on behalf of itself and its affiliates and are located on the website owned

and controlled by JAG and/or its subsidiaries and affiliates.

30.    JAG and JICO deny the statements contained in paragraph 30, except admit that

the document annexed at Exhibit 9 to the LaRocca Declaration is a true static version or copy of

one page of the referenced non-commercial website that appeared at that site at one point in time

including in May of 2005.  (Gross Decl., ¶ 7; Brown Decl., ¶ 6.)

31.    In response to paragraph 31, JAG and JICO state that no response is required

since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not

based on admissible evidentiary support.  Rather,  inter alia, the documents referred to therein are

incomplete, and/or unauthenticated hearsay and may not be considered on this motion.  JAG and

JICO further aver that paragraph 31 is without any relevance to the issue on this motion which is

whether or not the GLO Trademarks, which did not exist at the time, are included in the

definition of "Marks" in the 1988 Agreement.  Further, JAG and JICO aver that paragraph 31 is

not probative because any statement that GLO products are related to the Gloria Vanderbilt

Division, which is the corporate headquarters, within the Jones family of corporations, of the

Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative

of any connection between the GLO and GLORIA VANDERBILT Trademarks.  Subject to and

without waiving the foregoing objection, JAG and JICO deny the statements contained in

paragraph 31 on the grounds, <u>inter alia</u>, of the use of the word "also" and because they are misleading insofar as they confuse the difference between the GLORIA VANDERBILT Trademarks and the entity known as Gloria Vanderbilt Apparel Corp. or as the Gloria Vanderbilt Division of the Jones Apparel Group, Inc. (Frieman Aff., ¶¶ 13-18, Exhibits F-I; Gross Decl., ¶ 6.)

32.    In response to paragraph 32, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not based on admissible evidentiary support. Rather, <u>inter alia</u>, the document referred to therein is incomplete and/or unauthenticated hearsay and may not be considered on this motion. JAG and JICO further aver that paragraph 32 is without any relevance to the issue on this motion which is whether or not the GLO Trademarks, which did not exist at the time, are included in the definition of "Marks" in the 1988 Agreement. Further, JAG and JICO aver that paragraph 32 is not probative because any statement that GLO products are related to the Gloria Vanderbilt Division, which is the corporate headquarters, within the Jones family of corporations, of the Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and without waiving the foregoing objection, JAG and JICO aver that they lack knowledge or information sufficient to form a belief as to the truth or falsity of the statement and therefore, it can not be considered uncontested for purposes of this motion. (Gross Decl., ¶ 6.)

33.    In response to paragraph 33, JAG and JICO incorporate their responses to paragraphs 31 and 32 herein.

34.    In response to paragraph 34, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not

based on admissible evidentiary support. Rather, <u>inter alia</u>, the document referred to therein is incomplete and/or unauthenticated hearsay and may not be considered on this motion. JAG and JICO further aver that paragraph 34 is without any relevance to the issue on this motion which is whether or not the GLO Trademarks, which did not exist at the time, are included in the definition of "Marks" in the 1988 Agreement. Further, JAG and JICO aver that paragraph 34 is not probative because any statement that GLO products are related to the Gloria Vanderbilt Division, which is the corporate headquarters, within the Jones family of corporations, of the Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and without waiving the foregoing objection, JAG and JICO aver that they lack knowledge or information sufficient to form a belief as to the truth or falsity of the statement and therefore, it can not be considered uncontested for purposes of this motion. (Frieman Aff., ¶¶ 13-14, Exhibit F; Gross Decl., ¶ 6.)

35.    In response to paragraph 35, JAG and JICO incorporate their responses to paragraphs 31 and 34 herein.

36.    In response to paragraph 36, JAG and JICO incorporate their responses to paragraph 35 herein. Subject to and without waiving the foregoing, defendants state that they do not take issue with the substance of the alleged quote but aver that it must properly be understood in context. (Gross Decl., ¶ 6.)

37.    In response to paragraph 37, JAG and JICO incorporate their responses to paragraphs 35 and 36 herein.

38.    In response to paragraph 38, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not

based on admissible evidentiary support. Rather, <u>inter alia</u>, the document referred to therein is incomplete and/or unauthenticated hearsay and may not be considered on this motion. Subject to and without waiving the foregoing objection, JAG and JICO deny the statements contained in paragraph 38 based on the use of the objectionable, misleading and incorrect terms "Jones" and "GLO Marks", except admit that JICO's predecessor apparently retained The Bromley Group to do public relations work for the Gloria Vanderbilt business and for the GLO business.

39.     In response to paragraph 39, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not based on admissible evidentiary support. Rather, <u>inter alia</u>, the document referred to therein is incomplete and/or unauthenticated hearsay and may not be considered on this motion. Subject to and without waiving the foregoing objection, JAG and JICO deny the statements contained in paragraph 39 based on the use of the objectionable, misleading and incorrect use of the undefined term "GLO Marks", except admit that The Bromley Group was apparently retained to perform public relations services for the GLO business.

40.     In response to paragraph 40, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not based on admissible evidentiary support. Rather, <u>inter alia</u>, the document referred to therein is incomplete, and/or unauthenticated hearsay and may not be considered on this motion. JAG and JICO further aver that paragraph 40 is without any relevance to the issue on this motion which is whether or not the GLO Trademarks, which did not exist at the time, are included in the definition of "Marks" in the 1988 Agreement. Further, JAG and JICO aver that paragraph 40 is not probative because any statement that GLO products are related to the Gloria Vanderbilt Division, which is the corporate headquarters, within the Jones family of corporations, of the

17

Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and without waiving the foregoing objection, JAG and JICO further deny the statements contained in paragraph 40 based on the objectionable, misleading and incorrect use of the term "Jones" and further aver that they lack knowledge or information sufficient to form a belief as to the truth or falsity of the statement and therefore it can not be considered uncontested for purposes of this motion.

41.     In response to paragraph 41, JAG and JICO incorporate their response to paragraph 40.

42.     In response to paragraph 42, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not based on admissible evidentiary support. Rather, inter alia, the document referred to therein is incomplete, and/or unauthenticated hearsay and may not be considered on this motion. JAG and JICO further aver that paragraph 42 is without any relevance to the issue on this motion which is whether or not the GLO Trademarks, which did not exist at the time, are included in the definition of "Marks" in the 1988 Agreement. Further, JAG and JICO aver that paragraph 42 is not probative because any statement that GLO products are related to the Gloria Vanderbilt Division, which is the corporate headquarters, within the Jones family of corporations, of the Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and without waiving the foregoing objection, JAG and JICO further deny the statements contained in paragraph 42 based on the objectionable, misleading and incorrect use of the term "Jones" and further aver that they lack knowledge or information sufficient to form a belief as to the truth or

falsity of the statement and therefore it can not be considered uncontested for purposes of this motion.

43.    In response to paragraph 43, JAG and JICO incorporate their response to paragraph 42.

44.    In response to paragraph 44, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not based on admissible evidentiary support.  Rather, <u>inter alia</u>, the document referred to therein is incomplete, and/or unauthenticated hearsay and may not be considered on this motion.  JAG and JICO further aver that paragraph 44 is without any relevance to the issue on this motion which is whether or not the GLO Trademarks, which did not exist at the time, are included in the definition of "Marks" in the 1988 Agreement.  Further, JAG and JICO aver that paragraph 44 is not probative because any statement that GLO products are related to the Gloria Vanderbilt Division, which is the corporate headquarters, within the Jones family of corporations, of the Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative of any connection between the GLO and GLORIA VANDERBILT Trademarks.  Subject to and without waiving the foregoing objection, JAG and JICO further deny the statements contained in paragraph 44 based on the objectionable, misleading and incorrect use of the term "Jones" and further aver that they lack knowledge or information sufficient to form a belief as to the truth or falsity of the statement and therefore it can not be considered uncontested for purposes of this motion.

45.    In response to paragraph 45, JAG and JICO incorporate their response to paragraph 44.

46.     In response to paragraph 46, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not based on admissible evidentiary support. Rather, <u>inter alia</u>, the document referred to therein is incomplete, and/or unauthenticated hearsay and may not be considered on this motion. JAG and JICO further aver that paragraph 46 is without any relevance to the issue on this motion which is whether or not the GLO Trademarks, which did not exist at the time, are included in the definition of "Marks" in the 1988 Agreement. Further, JAG and JICO aver that paragraph 46 is not probative because any statement that GLO products are related to the Gloria Vanderbilt Division, which is the corporate headquarters, within the Jones family of corporations, of the Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and without waiving the foregoing objection, JAG and JICO further deny the statements contained in paragraph 46 based on the objectionable, misleading and incorrect use of the term "Jones" and further aver that they lack knowledge or information sufficient to form a belief as to the truth or falsity of the statement and therefore it can not be considered uncontested for purposes of this motion.

47.     In response to paragraph 47, JAG and JICO incorporate their response to paragraph 46.

48.     In response to paragraph 48, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not based on admissible evidentiary support. Rather, <u>inter alia</u>, the document referred to therein is incomplete and/or unauthenticated hearsay and may not be considered on this motion. JAG and JICO further aver that paragraph 48 is without any relevance to the issue on this motion which is

whether or not the GLO Trademarks, which did not exist at the time, are included in the definition of "Marks" in the 1988 Agreement. Further, JAG and JICO aver that paragraph 48 is not probative because any statement that GLO products are related to the Gloria Vanderbilt Division, which is the corporate headquarters, within the Jones family of corporations, of the Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and without waiving the foregoing objection, JAG and JICO aver that they lack knowledge or information sufficient to form a belief as to the truth or falsity of the statement and therefore it can not be considered uncontested for purposes of this motion.

49. In response to paragraph 49, JAG and JICO incorporate their response to paragraphs 31 and 48.

50. In response to paragraph 50, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not based on admissible evidentiary support. Rather, <u>inter alia</u>, the document referred to therein is incomplete, and/or unauthenticated hearsay and may not be considered on this motion. JAG and JICO further aver that paragraph 50 is without any relevance to the issue on this motion which is whether or not the GLO Trademarks, which did not exist at the time, are included in the definition of "Marks" in the 1988 Agreement. Further, JAG and JICO aver that paragraph 50 is not probative because any statement that GLO products are related to the Gloria Vanderbilt Division, which is the corporate headquarters, within the Jones family of corporations, of the Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and without waiving the foregoing objection, JAG and JICO further deny the statements contained in

paragraph 50 based on the objectionable, misleading and incorrect use of the term "Jones" and further aver that they lack knowledge or information sufficient to form a belief as to the truth or falsity of the statement and therefore it can not be considered uncontested for purposes of this motion.

51.    In response to paragraph 51, JAG and JICO incorporate their response to paragraphs 31 and 50.

52.    In response to paragraph 52, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not based on admissible evidentiary support. Rather, inter alia, the document referred to therein is incomplete, and/or unauthenticated hearsay and may not be considered on this motion. JAG and JICO further aver that paragraph 52 is without any relevance to the issue on this motion which is whether or not the GLO Trademarks, which did not exist at the time, are included in the definition of "Marks" in the 1988 Agreement. Further, JAG and JICO aver that paragraph 52 is not probative because any statement that GLO products are related to the Gloria Vanderbilt Division, which is the corporate headquarters, within the Jones family of corporations, of the Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and without waiving the foregoing objection, JAG and JICO further aver that they lack knowledge or information sufficient to form a belief as to the truth or falsity of the statement and therefore it can not be considered uncontested for purposes of this motion.

53.    In response to paragraph 53, JAG and JICO incorporate their response to paragraphs 31 and 52.

54      In response to paragraph 54, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not based on admissible evidentiary support. Rather, inter alia, the document referred to therein is incomplete and/or unauthenticated hearsay and may not be considered on this motion. JAG and JICO further aver that paragraph 54 is without any relevance to the issue on this motion which is whether or not the GLO Trademarks, which did not exist at the time, are included in the definition of "Marks" in the 1988 Agreement. Further, JAG and JICO aver that paragraph 54 is not probative because any statement that GLO products are related to the Gloria Vanderbilt Division, which is the corporate headquarters, within the Jones family of corporations, of the Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and without waiving the foregoing objection, JAG and JICO further aver that they lack knowledge or information sufficient to form a belief as to the truth or falsity of the statement and therefore it can not be considered uncontested for purposes of this motion.

55.     In response to paragraph 55, JAG and JICO incorporate their response to paragraphs 31 and 54.

56.     In response to paragraph 56, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not based on admissible evidentiary support. Rather, inter alia, the document referred to therein is incomplete and/or unauthenticated hearsay and may not be considered on this motion. JAG and JICO further aver that paragraph 56 is without any relevance to the issue on this motion which is whether or not the GLO Trademarks, which did not exist at the time, are included in the definition of "Marks" in the 1988 Agreement. Further, JAG and JICO aver that paragraph 56 is

not probative because any statement that GLO products are related to the Gloria Vanderbilt
Division, which is the corporate headquarters, within the Jones family of corporations, of the
Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative
of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and
without waiving the foregoing objection, JAG and JICO further aver that they lack knowledge or
information sufficient to form a belief as to the truth or falsity of the statement and therefore it
can not be considered uncontested for purposes of this motion.

57.     In response to paragraph 57, JAG and JICO incorporate their response to
paragraphs 31 and 56.

58.     In response to paragraph 58, JAG and JICO state that no response is required
since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not
based on admissible evidentiary support. Rather, inter alia, the documents referred to therein are
incomplete, and/or unauthenticated hearsay and may not be considered on this motion. JAG and
JICO further aver that paragraph 58 is without any relevance to the issue on this motion which is
whether or not the GLO Trademarks, which did not exist at the time, are included in the
definition of "Marks" in the 1988 Agreement. Further, JAG and JICO aver that paragraph 40 is
not probative because any statement that GLO products are related to the Gloria Vanderbilt
Division, which is the corporate headquarters, within the Jones family of corporations, of the
Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative
of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and
without waiving the foregoing objection, JAG and JICO further aver that they lack knowledge or
information sufficient to form a belief as to the truth or falsity of the statement and therefore it
can not be considered uncontested for purposes of this motion.

59.     In response to paragraph 59, JAG and JICO incorporate their response to paragraphs 31 and 58.

60.     In response to paragraph 60, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not based on admissible evidentiary support. Rather, <u>inter alia</u>, the documents referred to therein are incomplete, and/or unauthenticated hearsay and may not be considered on this motion. JAG and JICO further aver that paragraph 60 is without any relevance to the issue on this motion which is whether or not the GLO Trademarks, which did not exist at the time, are included in the definition of "Marks" in the 1988 Agreement. Further, JAG and JICO aver that paragraph 60 is not probative because any statement that GLO products are related to the Gloria Vanderbilt Division, which is the corporate headquarters, within the Jones family of corporations, of the Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and without waiving the foregoing objection, JAG and JICO further aver that they lack knowledge or information sufficient to form a belief as to the truth or falsity of the statement and therefore it can not be considered uncontested for purposes of this motion.

61.     In response to paragraph 61, JAG and JICO incorporate their response to paragraphs 31 and 60.

62.     In response to paragraph 62, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not based on admissible evidentiary support. Rather, <u>inter alia</u>, the documents referred to therein are incomplete, and/or unauthenticated hearsay and may not be considered on this motion. JAG and JICO further aver that paragraph 62 is without any relevance to the issue on this motion which is

whether or not the GLO Trademarks, which did not exist at the time, are included in the definition of "Marks" in the 1988 Agreement. Further, JAG and JICO aver that paragraph 62 is not probative because any statement that GLO products are related to the Gloria Vanderbilt Division, which is the corporate headquarters, within the Jones family of corporations, of the Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and without waiving the foregoing objection, JAG and JICO further aver that they lack knowledge or information sufficient to form a belief as to the truth or falsity of the statement and therefore it can not be considered uncontested for purposes of this motion.

63.     In response to paragraph 63, JAG and JICO incorporate their response to paragraphs 31 and 62.

64.     In response to paragraph 64, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not based on admissible evidentiary support. Rather, inter alia, the documents referred to therein are incomplete, and/or unauthenticated hearsay and may not be considered on this motion. JAG and JICO further aver that paragraph 64 is without any relevance to the issue on this motion which is whether or not the GLO Trademarks, which did not exist at the time, are included in the definition of "Marks" in the 1988 Agreement. Further, JAG and JICO aver that paragraph 64 is not probative because any statement that GLO products are related to the Gloria Vanderbilt Division, which is the corporate headquarters, within the Jones family of corporations, of the Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and without waiving the foregoing objection, JAG and JICO further aver that they lack knowledge or

information sufficient to form a belief as to the truth or falsity of the statement and therefore it
can not be considered uncontested for purposes of this motion.

65.    In response to paragraph 65, JAG and JICO incorporate their response to
paragraphs 31 and 64.

66.    In response to paragraph 66, JAG and JICO state that no response is required
since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not
based on admissible evidentiary support.  Rather, inter alia, the documents referred to therein are
incomplete, and/or unauthenticated hearsay and may not be considered on this motion.  JAG and
JICO further aver that paragraph 66 is without any relevance to the issue on this motion which is
whether or not the GLO Trademarks, which did not exist at the time, are included in the
definition of "Marks" in the 1988 Agreement.  Further, JAG and JICO aver that paragraph 66 is
not probative because any statement that GLO products are related to the Gloria Vanderbilt
Division, which is the corporate headquarters, within the Jones family of corporations, of the
Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative
of any connection between the GLO and GLORIA VANDERBILT Trademarks.  Subject to and
without waiving the foregoing objection, JAG and JICO further aver that they lack knowledge or
information sufficient to form a belief as to the truth or falsity of the statement and therefore it
can not be considered uncontested for purposes of this motion.

67.    In response to paragraph 67, JAG and JICO incorporate their response to
paragraphs 31 and 66.

68.    In response to paragraph 68, JAG and JICO state that no response is required
since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not
based on admissible evidentiary support.  Rather, inter alia, the documents referred to therein are

Case 1:04-cv-07028-GEL Document 66 Filed 10/21/05 Page 28 of 43

incomplete and/or unauthenticated hearsay and may not be considered on this motion. JAG and JICO further aver that paragraph 68 is without any relevance to the issue on this motion which is whether or not the GLO Trademarks, which did not exist at the time, are included in the definition of "Marks" in the 1988 Agreement. Further, JAG and JICO aver that paragraph 68 is not probative because any statement that GLO products are related to the Gloria Vanderbilt Division, which is the corporate headquarters, within the Jones family of corporations, of the Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and without waiving the foregoing objection, JAG and JICO deny the statements contained in paragraph 68 and aver that they are misleading insofar as they confuse the difference between the "GLORIA VANDERBILT" trademark and the entity known as Gloria Vanderbilt Apparel Corp. or as the Gloria Vanderbilt Division of the Jones Apparel Group, Inc. (Frieman Aff., ¶¶ 19-27, Exhibits J-Q; Gross Decl., ¶¶ 1-2, 5.)

69. In response to paragraph 69, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not based on admissible evidentiary support. Rather, inter alia, the document referred to therein is incomplete and/or unauthenticated hearsay and may not be considered on this motion. JAG and JICO further aver that paragraph 69 is without any relevance to the issue on this motion which is whether or not the GLO Trademarks, which did not exist at the time, are included in the definition of "Marks" in the 1988 Agreement. Further, JAG and JICO aver that paragraph 69 is not probative because any statement that GLO products are related to the Gloria Vanderbilt Division, which is the corporate headquarters, within the Jones family of corporations, of the Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative

of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and without waiving the foregoing objection, JAG and JICO deny the statements contained in paragraph 69 on the grounds, inter alia, that they are misleading insofar as they confuse the difference between the "GLORIA VANDERBILT" trademark and the entity known as Gloria Vanderbilt Apparel Corp. or as the Gloria Vanderbilt Division of the Jones Apparel Group, Inc. JAG and JICO further aver that they lack knowledge or information sufficient to form a belief as to the truth or falsity of the statement and therefore it can not be considered uncontested for purposes of this motion. (Frieman Aff., ¶¶ 19, 22, 25, Exhibit K-N.)

70.    In response to paragraph 70, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not based on admissible evidentiary support. Rather, inter alia, the document referred to therein is incomplete and/or unauthenticated hearsay and may not be considered on this motion. JAG and JICO further aver that paragraph 70 is without any relevance to the issue on this motion which is whether or not the GLO Trademarks, which did not exist at the time, are included in the definition of "Marks" in the 1988 Agreement. Further, JAG and JICO aver that paragraph 70 is not probative because any statement that GLO products are related to the Gloria Vanderbilt Division, which is the corporate headquarters, within the Jones family of corporations, of the Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and without waiving the foregoing objection, JAG and JICO deny the statements contained in paragraph 70 on the grounds, inter alia, that they are misleading insofar as they confuse the difference between the "GLORIA VANDERBILT" trademark and the entity known as Gloria Vanderbilt Apparel Corp. or as the Gloria Vanderbilt Division of the Jones Apparel Group, Inc.

JAG and JICO further aver that plaintiff's exhibit is merely a reproduction of Exhibit 31 and is not an "additional" example of a reference to GLO and Gloria Vanderbilt and that they lack knowledge or information sufficient to form a belief as to the truth or falsity of the statement and therefore it can not be considered uncontested for purposes of this motion. (Frieman Aff., ¶¶ 19, 22, 25, Exhibits K-N.)

71.    In response to paragraph 71, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not based on admissible evidentiary support. Rather, inter alia, the document referred to therein is incomplete and/or unauthenticated hearsay and may not be considered on this motion. JAG and JICO further aver that paragraph 71 is without any relevance to the issue on this motion which is whether or not the GLO Trademarks, which did not exist at the time, are included in the definition of "Marks" in the 1988 Agreement. Further, JAG and JICO aver that paragraph 71 is not probative because any statement that GLO products are related to the Gloria Vanderbilt Division, which is the corporate headquarters, within the Jones family of corporations, of the Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and without waiving the foregoing objection, JAG and JICO deny the statements contained in paragraph 71 on the grounds, inter alia, that they are misleading insofar as they confuse the difference between the "GLORIA VANDERBILT" trademark and the entity known as Gloria Vanderbilt Apparel Corp. or as the Gloria Vanderbilt Division of the Jones Apparel Group, Inc. and on the ground that this website no longer is available on line. (Frieman Aff., ¶¶ 19, 33, Exhibit J.)

72.     In response to paragraph 72, JAG and JICO incorporate their responses to paragraphs 68, 69, 70 and 71.

73.     In response to paragraph 73, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not based on admissible evidentiary support. Rather, inter alia, the document referred to therein is incomplete, and/or unauthenticated hearsay and may not be considered on this motion. JAG and JICO further aver that paragraph 73 is without any relevance to the issue on this motion which is whether or not the GLO Trademarks, which did not exist at the time, are included in the definition of "Marks" in the 1988 Agreement. Further, JAG and JICO aver that paragraph 73 is not probative because any statement that GLO products are related to the Gloria Vanderbilt Division, which is the corporate headquarters, within the Jones family of corporations, of the Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and without waiving the foregoing objection, JAG and JICO deny the statements contained in paragraph 73 on the grounds, inter alia, that they are misleading insofar as they confuse the difference between the "GLORIA VANDERBILT" trademark and the entity known as Gloria Vanderbilt Apparel Corp. or as the Gloria Vanderbilt Division of the Jones Apparel Group, Inc. JAG and JICO further aver that they lack knowledge or information sufficient to form a belief as to the truth or falsity of the statement and therefore it can not be considered uncontested for purposes of this motion. (Frieman Aff., ¶¶ 19, 20; Gross Decl., ¶ 7; Brown Decl., ¶ 6.)

74.     In response to paragraph 74, JAG and JICO incorporate their response to paragraph 73 and further deny the statement contained therein. (Frieman Aff., ¶¶ 19-20; Gross Decl., ¶ 7; Brown Decl., ¶ 6.)

75.    In response to paragraph 75, JAG and JICO state that no response is required since the statement fails to comply with the requirements of Local Rule 56.1, in that it is not based on admissible evidentiary support. Rather, <u>inter alia</u>, the document referred to therein is incomplete and/or unauthenticated hearsay and may not be considered on this motion. JAG and JICO further aver that paragraph 75 is without any relevance to the issue on this motion which is whether or not the GLO Trademarks, which did not exist at the time, are included in the definition of "Marks" in the 1988 Agreement. Further, JAG and JICO aver that paragraph 75 is not probative because any statement that GLO products are related to the Gloria Vanderbilt Division, which is the corporate headquarters, within the Jones family of corporations, of the Gloria Vanderbilt, GLO, Jeanstar and Bandolino Blu businesses is accurate but is not probative of any connection between the GLO and GLORIA VANDERBILT Trademarks. Subject to and without waiving the foregoing objection, JAG and JICO deny the statements contained in paragraph 75 on the grounds, <u>inter alia</u>, that they are misleading insofar as they confuse the difference between the "GLORIA VANDERBILT" trademark and the entity known as Gloria Vanderbilt Apparel Corp. or as the Gloria Vanderbilt Division of the Jones Apparel Group, Inc. and on the ground that the reference no longer appears on the eWanted.com website. (Frieman Aff., ¶¶ 19, 24.)

76.    In response to paragraph 76, JAG and JICO incorporate their response to paragraph 75.

77.    JAG and JICO deny the statements contained in paragraph 77 on the grounds that the term "GLO Marks" is nowhere defined. Subject to and without waiving the foregoing, JAG and JICO aver that outside of the United States, Canada, Brazil, New Zealand and Australia, there are pending applications to register the trademark GLO in China, Colombia, Taiwan and

Peru and applications to register the trademark GLO JEANS in China and the European Union. (LaRocca Decl., Exhibit 36, p. 5.)

78.     JAG and JICO deny the statements contained in paragraph 78 on the grounds that the term "GLO Marks" is nowhere defined. Subject to and without waiving the foregoing, JAG and JICO aver that there are pending applications to register the trademark GLO in China, Colombia, Taiwan and Peru and applications to register the trademark GLO JEANS in China and the European Union. (LaRocca Decl., Exhibit 36, p. 5.)

79.     In response to paragraph 79, JAG and JICO state that no response is required as the statement fails to comply with the requirements of Local Rule 56.1 in that it is not based on admissible evidentiary support. In particular, and without limitation, said statement is based on an unauthenticated hearsay document. JAG and JICO further aver that the statement is without relevance to any issue in this action or on this motion. JAG and JICO further aver that they lack knowledge or information sufficient to form a belief as to the truth or falsity of the statement and therefore it can not be considered uncontested for purposes of this motion.

80.     In response to paragraph 80, JAG and JICO state that no response is required as the statement fails to comply with the requirements of Local Rule 56.1 in that it is not based on admissible evidentiary support. In particular, and without limitation, said statement is based on an unauthenticated hearsay document. JAG and JICO further aver that the statement is without relevance to any issue in this action or on this motion. JAG and JICO further aver that they lack knowledge or information sufficient to form a belief as to the truth or falsity of the statement and therefore it can not be considered uncontested for purposes of this motion.

81.     JAG and JICO admit the statement contained in paragraph 81.

82.     JAG and JICO admit that the statement contained in paragraph 82 accurately quotes one portion of the November 22, 2004 letter.

83.     JAG and JICO deny the statements contained in paragraph 83 on the grounds, inter alia, that the term "GLO Marks" is nowhere defined and aver that JICO does not believe it has any obligation to pay Netherby any Contingent Payments or provide quarterly statements to it with respect to sales and licensing revenue for its Glo businesses conducted with the "GLO," "GLOJEANS," "GLOGIRL" or related formative marks.

## ADDITIONAL STATEMENTS IN OPPOSITION TO
## MOTION AND IN SUPPORT OF CROSS-MOTION

84.     Attached to the Frieman Aff. as Exhibit A is a true and correct copy of relevant excerpts of the agreement, dated March 18, 2002, pursuant to which JICO acquired the GLORIA VANDERBILT Trademarks and the GLO Trademarks from Gloria Vanderbilt Trademark, B.V. This document was produced in discovery and bears Bates Nos. beginning with Jones 000940.

85.     JAG has no obligation under the 1988 Agreement.  (Frieman Aff., Exhibit A.)

86.     Attached to the Frieman Aff. as Exhibit B is a true and correct copy of Plaintiff's Reply to Counterclaims of JICO.

87.     At paragraph 123 of Exhibit B, plaintiff admits that prior to the 1988 Acquisition Agreement, neither it nor its predecessors had adopted or used the GLO Trademarks. (Compare, Declaration of Melissa La Rocca, dated September 23, 2005 ("La Rocca Decl."), Exhibit 2, ¶ 123.)

88.     Attached to the Frieman Aff. as Exhibit C is a true and correct copy of Plaintiff's Reply to Counterclaims of JAG.

89.     At paragraph 123 of Exhibit C, plaintiff admits that prior to the 1988 Acquisition Agreement, neither it nor its predecessors had adopted or used the GLO Trademarks.  (Compare La Rocca Decl., Exhibit 3, ¶ 123.)

90.     Attached to the Frieman Aff. as Exhibit D is a true and correct copy of the Modification to the 1988 Acquisition Agreement, dated December 8, 1995 (the "Modification Agreement").

91.     Paragraphs 4 and 5 of the Modification Agreement set forth that the US Payment Period, i.e. the period during which Netherby was entitled to Contingent Payments and reports (as described in the 1988 Acquisition Agreement) in respect of the United States, terminated for some products on July 31, 1997 and for all other covered products on December 31, 1997.

92.     The first termination date, July 31, 1997, pertains to "Gitano Products".  (Murjani Aff., Exhibit B, ¶3.1 (b) and (c).

93.     Gitano Products are defined in the 1988 Agreement as "jeanswear (in all fabrications), sportswear, bodywear, outwear, dresses, woven shirts and blouses, activewear, sweaters and sweat suits, separates, related separates, coordinates, weekend wear, knitwear and knit tops for men, women and children of all ages."  (Murjani Aff., Exhibit B, pp. 4-5.)

94.     The GLO Trademarks were introduced in 2000, after the termination of the US Payment Period under the 1988 Agreement, as modified.

95.     Netherby has no claim for US Contingent Payments for GLO products.  (Gross Decl., ¶ 3.)

96.     The GLO by GLORIA VANDERBILT Trademark was used for a short time in 1996.  (Gross Decl., ¶3.)

97.     Thus, in any event, even if the GLO Trademarks are covered by the 1988 Agreement, which they are not, under no circumstances was (or is) Netherby entitled to Contingent Payments in respect of any use of the GLO Trademarks in the United States on Gitano Products after July 13, 1997, and on the other covered products after December 31, 1997. (Frieman Aff., Exhibit D, ¶¶ 4-5.)

98.     By operation of the 1988 Agreement, payments are due 90 days after the end of each calendar quarter. (Murjani Aff., Exhibit B, ¶ 3.6, 3.7.).

99.     Although plaintiff's last US Contingent Payment was due by March 31, 1998 (90 days after December 31, 1997), Netherby was not entitled to any payments arising from exploitation of the mark after (at the latest) December 31, 1997. (Id.; Frieman Aff., Exhibit D.)

100.    Paragraph 6 of the Modification Agreement (Frieman Aff., Exhibit D) states that the respective payment periods for each of the remaining four countries (i.e. Canada, Brazil, Australia and New Zealand) is 10 years and three months from the date on which the buyer or its affiliates first commences making shipments to its customers in such country of commercial quantities of Gitano Products.

101.    Attached to the Frieman Aff. as Exhibit E is a true and correct copy of the arbitrator's award and decision dated September 22, 2003, in the arbitration entitled Netherby Limited v. GV Trademark Investment Ltd., et al.

102.    As set forth therein (at pp. 5-6), the Canadian Payment Period commenced on July 16, 1999. (Frieman Aff., Exhibit E, pp. 5-6.)

103.    By operation of the Modification Agreement (Frieman Aff., Exhibit D) the Canadian Payment Period will end on October 16, 2009.

104.    The Gloria Vanderbilt division, which is a division of an indirect subsidiary of Jones Apparel Group, Inc. (the "Gloria Vanderbilt Division"), is engaged in the business of manufacturing, marketing and selling apparel, primarily jeanswear and related separates. (Gross Decl., ¶ 1.)

105.    The division manufactures, markets and sells apparel bearing the "GLORIA VANDERBILT", "GLO", "GLO JEANS", "GLO GIRL", "JEANSTAR" and "BANDOLINO BLU" trademarks, as well as private label apparel for major retailers in the Unites States and Canada. (Id.)

106.    The manufacture, marketing and sale of goods bearing the various "GLO" trademarks is conducted by a separate group within the Gloria Vanderbilt Division, called GLO Jeans. (Gross Decl., ¶ 2.)

107.    GLO Jeans is run by its senior vice president, Janice Brown, and operates out of a separate showroom with a design team and staff separate from the teams that work on the other Gloria Vanderbilt Division brands. (Gross Decl., ¶ 2; Brown Decl., ¶ 2.)

108.    Janice Brown is not involved in any way with the business of any brand other than GLO. (Brown Decl., ¶ 2.)

109.    In 1996, the Gloria Vanderbilt Division, then known as Gloria Vanderbilt Apparel Corp ("GVAC") started the "GLO by GLORIA VANDERBILT" line of girls clothing for a single customer, Belk stores. The business was not a success and was discontinued after a short time. (Gross Decl., ¶ 3.)

110.    No additional business using the "GLO by GLORIA VANDERBILT" trademark was ever done. (Gross Decl., ¶ 3; Brown Decl., ¶ 2.)

111.   In or about 2000, GVAC started a new business venture and launched (i.e. began to show) a junior's line bearing the trademark "GLO". Since 2000, the word "GLO" has not been used in a trademark or branding sense together with the trademark "GLORIA VANDERBILT". (Gross Decl., ¶ 3.)

112.   The present uses of GLO are "GLO", "GLO JEANS" and "GLO GIRL". (Id.)

113.   A conscious business decision was made to not market "GLO" together with "GLORIA VANDERBILT" since it was strongly believed that the junior customer would not be interested in buying apparel that was connected to the misses' brand targeted to an older audience. (Gross Decl., ¶ 4; Brown Decl., ¶ 4.)

114.   There has been no effort to play off of or capitalize on the GLORIA VANDERBILT Trademark with the "GLO" line. (Gross Decl., ¶ 5; Brown Decl., ¶ 5.)

115.   Attached to the Frieman Aff. as Exhibit F is a true and complete copy of an article from the August 10, 2000 edition of Women's Wear Daily, an excerpt of which plaintiff submitted as Exhibit 13 to the Declaration of Melissa J. LaRocca, dated September 23, 2005 (the "LaRocca Decl.").

116.   The complete article quotes Jack Gross as saying "We want to keep it separate from the parent company . . . We want it to be hip and cool". (Id.)

117.   Jones has not marketed the GLO Trademarks together with the GLORIA VANDERBILT Trademark. (See, Gross Decl., ¶ 2, 4, 5; Declaration of Janice Brown, dated October 18, 2005 (the "Brown Decl.), ¶¶ 2-5.)

118.   Attached to the Frieman Aff. as Exhibit G is a true, correct and complete copy of an article entitled "Jones Promotes Dabah to New Jeans CEO Post" from Women's Wear Daily (hereinafter "WWD"), December 2, 2003.

38

119.    Attached to the Frieman Aff. as Exhibit H is a true, correct and complete copy of an article entitled "The Moderate Approach to Jeans" from <u>WWD</u> December 26, 2004.

120.    Attached to the Frieman Aff. as Exhibit I is a true, correct and complete copy of an article entitled "Brands Adapt to Retail Consolidation" from <u>WWD</u> May 26, 2005.

121.    In each of Exhibits G, H and I, reference is made to the brand and trademark "JEANSTAR" which is manufactured and marketed by the Gloria Vanderbilt division.  (Gross Decl., ¶ 1.)

122.    Plaintiff does not claim that the JEANSTAR Trademark is encompassed in the definition of Marks in the 1988 Agreement.

123.    Jeans could not and cannot be purchased from defendants on the <u>www.gloria-vanderbilt.com</u> website.  (Gross Decl., ¶ 7; Brown Decl., ¶ 6.)

124.    As of October 17, 2005, the www.digitsmith.com website no longer exists in the form it apparently did when plaintiff allegedly used that cite.  (Frieman Aff., ¶ 23.)

125.    Annexed to the Frieman Aff. as Exhibit J is a true and correct copy of the opening page of the www.digitsmith.com website as of October 17. 2005.

126.    As of October 17, 2005, the eWanted.com website, relied on by plaintiff, no longer contained the advertisement relied on by plaintiff or any other reference to GLO or GLO JEANS.  (Frieman Aff., ¶ 24.)

127.    Attached to the Frieman Aff. as Exhibits K, L, M, and N, are true and correct additional references to GLO Jeans from the Amazon.com and shop-faster.com websites.

128.    Those Exhibits make no reference to Gloria Vanderbilt.

129.    Attached to the Frieman Aff. as Exhibit O is true and correct copy of an on-line advertisement from J.C. Penney for GLO Jeans.

130.    It makes no reference to Gloria Vanderbilt.

131.    Attached to the Frieman Aff. as Exhibits P and Q are true and correct copies of offers to sell GLO Jeans found on EBay.

132.    These Exhibits make no reference to Gloria Vanderbilt.

133.    At no time could "GLORIA VANDERBILT" or "GLO" product be purchased from us through the websites, www.gloria-vanderbilt.com or www.glojeans.com.

134.    Attached to the Frieman Aff. as Exhibit R is a true and correct copy of Netherby's answer and counterclaims in the in the action entitled <u>Gloria Vanderbilt Trademark B.V. and Gloria Vanderbilt Trademark Investment, Ltd.</u> v. <u>Netherby Limited</u> (Index No. 113339/01) (the "2001 State Court Action"), dated August 6, 2001.

135.    Attached to the Frieman Aff. as Exhibit S is a true and correct copy of the judgment entered in the 2001 State Court Action on or about March 17, 2005.

136.    Attached to the Frieman Aff. as Exhibit T is a true and correct copy of the license agreement between JICO's predecessor and Hudson's Bay Company/Zellers, dated August 21, 1998. That license agreement covers the GLORIA VANDERBILT, GLO Trademarks and other trademarks, including ROYAL BLUES. (<u>See</u>, <u>id</u>., exhibit A, p. Jones 000149.)

137     The Hudson's Bay/Zellers license agreement was provided to Netherby prior to the institution of the 2001 State Court Action. (Frieman Aff., Exhibit R.)

138.    Netherby was aware of the use of the GLO Trademarks by JICO or its predecessors before it filed its answer and counterclaims in the 2001 State Court Action. (<u>Id</u>.; Gross Decl., ¶ 8.)

139.    No later than during discovery in the 2001 State Court Action, Netherby was provided with documents that reflected that certain adjustments had been made to the royalty rate

to be paid by Zellers under the license, including the elimination of royalties on goods bought from Gloria Vanderbilt Apparel.  Attached to the Frieman Aff. as Exhibit U are true and correct copies those documents bearing the Bates numbers which were used in the 2001 State Court Action.

140.    Attached to the Frieman Aff. as Exhibit V is a true and correct copy of plaintiff's counsel's affidavit in support of its application for the issuance of letters rogatory in this action.

141.    In that submission (at ¶¶ 17-18), counsel concedes that it had the "royalty reduction" documents in 2000 -- before the 2001 Action was commenced.

142.    These changes in the Zellers' royalty rates are the subject, in part, of Netherby's first, second and third causes of action in this case.  (LaRocca Decl., Exhibit 1, ¶¶ 35, 54-77.)

143.    The 2001 State Court Action involved the issue of whether or not Netherby had received the proper Contingent Payments in respect of amounts received from Hudson's Bay Company under that license.  (Frieman Aff., Exhibit R.)

144.    Netherby was aware of and could have brought claims in the 2001 State Court Action arising from the use of the GLO Trademark and from the changes in royalty rates to be paid by Zellers.

145.    Mohan Murjani visited the offices of GVAC no later than 2000 at which time GLO was doing business.  (Gross Decl., ¶ 8.)

146.    Any references there may be in trade publications for example to GLO as the

junior division of Gloria Vanderbilt simply note that GLO is owned by Gloria Vanderbilt

division.  (Brown Decl., ¶ 3.)


 Dated: New York, New York
        October 21, 2005

                                        DUANE MORRIS LLP

                                        By:
                                        KAREN S. FRIEMAN (KF-9204)
                                        380 Lexington Avenue
                                        New York, NY 10168
                                        (212) 692-1000
                                        Attorneys for Defendants


To:     Chadbourne & Parke
        30 Rockefeller Plaza
        New York, NY  10112




NY\290698 1