UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

NETHERBY LIMITED,                                          :          04 CV 07028(GEL)
                                                           :
                      Plaintiff,                           :
                                                           :
          -against-                                        :
                                                           :
JONES APPAREL GROUP, INC. and JONES                        :
INVESTMENT CO. INC.,                                       :
                                                           :
                      Defendants.                          :
-----------------------------------------------------------------------x

DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN
SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

DUANE MORRIS LLP
380 Lexington Avenue
New York, New York 10168
(212) 692-1000
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
NETHERBY LIMITED,                                    :        04 CV 07028(GEL)
                                                     :
                        Plaintiff,                   :
                                                     :
            -against-                                :
                                                     :
JONES APPAREL GROUP, INC. and JONES                  :
INVESTMENT CO. INC.,                                 :
                                                     :
                        Defendants.                  :
------------------------------------------------------------------------x


DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN
SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT


DUANE MORRIS LLP
380 Lexington Avenue
New York, New York 10168
(212) 692-1000
Attorneys for Defendants

**TABLE OF CONTENTS**

Page No.

Preliminary Statement                                                                    2

Argument                                                                                 5

POINT I -   THE GLO TRADEMARKS WERE NOT
            CONVEYED BY THE 1988 AGREEMENT                                                6

        A.   The GLO Trademarks are not "associated" with
             Gloria Vanderbilt                                                            8

        B.   The GLO Trademarks are not "any other
             manner of representation" of Gloria Vanderbilt                               9

POINT II -  THE GLO TRADEMARKS AND THE GLORIA VANDERBILT
            TRADEMARKS HAVE NOT BEEN MARKETED TOGETHER                                    11

        A.   The press releases, website and "Gerber memo" do not
             support plaintiff's motion                                                   13

        B.   Plaintiff may not rely on trade publications                                 14

        C.   Plaintiff may not rely on the Bromley Group materials                        16

        D.   Plaintiff may not rely on its web-site materials                             16

POINT III - THE LANHAM ACT IS IRRELEVANT                                                  18

POINT IV -  DEFENDANTS' USE OF THE GLO TRADEMARKS
            OUTSIDE OF THE FIVE COUNTRIES HAS BEEN PROPER                                  20

POINT V –   DEFENDANTS' CROSS-MOTION SHOULD BE GRANTED                                     21

        A.   Plaintiff's claims are barred at least in part by the
             applicable statute of limitations                                            21

        B.   Plaintiff's claims are barred by the doctrine of res judicata                 22

i

## TABLE OF CONTENTS

**Page No.**

| | | |
|---|---|---|
| C. | Plaintiff has no basis to assert any claims against JAG | 25 |
| D. | Defendants are entitled to their attorneys' fees on this motion | 25 |
| Conclusion | | 25 |

NY\292327 1

ii

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
NETHERBY LIMITED,                                       :          04 CV 07028(GEL)
                                                        :
                    Plaintiff,                          :
                                                        :
         -against-                                      :
                                                        :
JONES APPAREL GROUP, INC. and JONES                     :
INVESTMENT CO. INC.,                                    :
                                                        :
                    Defendants.                         :
-----------------------------------------------------------------------x

DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN
SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants Jones Apparel Group, Inc. ("JAG") and Jones Investment Co. Inc. ("JICO"
and sometimes collectively with JAG, "Jones"), respectfully submit this memorandum of law in
opposition to plaintiff's motion for partial summary judgment on its sixth, seventh and eighth
causes of action and on the respective first counterclaims of JAG and JICO. This memorandum
is also submitted in support of defendants' cross-motion for partial summary judgment: (a)
dismissing plaintiff's sixth, seventh and eighth causes of action; (b) in their favor on their
respective first counterclaims; (c) dismissing plaintiff's first, second, third, fourth and seventh
causes of action to the extent that they seek damages barred by the expiration of the applicable
six year statute of limitations; (d) dismissing plaintiff's first, second, third, sixth, seventh and
eighth causes of action to the extent they assert claims barred by the doctrine of res judicata; (e)
dismissing the amended complaint insofar as it asserts claims against JAG; (f) awarding them
their attorneys' fees; and (g) for such other and further relief as to the Court seems just and
proper.

<u>Preliminary Statement</u>

By agreement dated December 23, 1988 (the "1988 Agreement"), plaintiff's predecessor sold to JICO's predecessor its rights to the GLORIA VANDERBILT Trademarks, as defined in that agreement, in five countries (the "Five Countries") on certain specified categories of goods. The purchaser made a substantial cash payment and agreed, for a limited period of time, to pay to the seller certain specified percentages of revenues earned from the exploitation of those trademarks through direct sales and licensing royalties, the so-called "Contingent Payments." (Affidavit of Mohan Murjani, sworn to September 23, 2005 (the "Murjani Aff."), Exhibit B, ¶¶ 2.2, 3.1, 3.2, 3.3.)  Plaintiff claims it is entitled to Contingent Payments arising from JICO's trademarks "GLO", "GLO JEANS" and "GLO GIRL" (together with related formative marks, the "GLO Trademarks") and that JICO may not use the GLO Trademarks outside of the Five Countries.

To begin, plaintiff's recitation of the underlying contractual relationship between the parties contains several material errors, omissions or overstatements.  Thus, while it is true that pursuant to the 1988 Agreement, JICO is obligated to pay Netherby Contingent Payments based on sales and licensing royalty revenues, Netherby fails to advise the Court that the period during which Contingent Payments were due for the United States expired approximately eight years ago, <u>i.e.</u> on July 31, 1997 (for certain goods) or on December 3, 1997 (for other goods). (Affidavit of Karen S. Frieman, sworn to October 21, 2005 (the "Frieman Aff."), Exhibit 7; Exhibit D, ¶¶4, 5.)  Since payments under the 1988 Agreement are due no later than 90 days following the calendar quarter (Murjani Aff. Exhibit B, ¶¶ 3.6, 3.7), Netherby received its last payment with respect to the United States by March 31, 1998.  Hence, Netherby's assertion,

tucked into its footnote 4, that it is entitled to Contingent Payments on the sale of GLO Trademarked goods made through March 31, 1998 is simply incorrect.[1]

JICO is currently obligated to make Contingent Payments only in respect of sales and royalties in Canada. The Canadian Payment Period will expire on or about October 16, 2009. (Frieman Aff., ¶10, Exhibit E.). The payment periods for the remaining three countries (Brazil Australia and New Zealand) have not commenced.[2]

To succeed on this motion, plaintiff must demonstrate that it has eliminated all genuine issues of fact as to whether the GLO Trademarks are covered by the 1988 Agreement. It has not done so and it cannot. The GLO Trademarks did not exist in 1988, and neither plaintiff nor its predecessor had adopted or used them prior to the 1988 Agreement. (Frieman Aff., ¶¶5-6 Exhibits B and C.) Therefore, it cannot be said that the GLO Trademarks were or could have been conveyed by that agreement. Moreover, the 1988 Agreement, which no where mentions the GLO Trademarks, cannot be read to include them. As set forth in full below, a plain reading of the 1988 Agreement demonstrates that the GLO Trademarks were not conveyed by and are not within the strictures of the 1988 Agreement. For this reason, plaintiff's motion must be denied and the cross-motion granted. (Point I.)

Thwarted by the plain language of the 1988 Agreement, plaintiff improperly attempts to rely on inadmissible hearsay evidence, misleading and unsupported characterizations and misstatements in an effort to demonstrate that the GLO Trademarks have been marketed together with the GLORIA VANDERBILT Trademarks. As set forth below, they have not been so

---

[1] It is also irrelevant as claims arising before September 1, 1998 (six years before the filing of the complaint in this action) are barred by the statute of limitations. CPLR §213.

[2] Each of the remaining countries covered by the 1988 Agreement has a separate payment period which is 10 years and three months (and not 10 years as plaintiff asserts) commencing from the time when commercial quantities of goods are first shipped into the territory. (Frieman Aff., ¶9; Exhibit D, ¶6.)

marketed. Moreover, this is irrelevant to the contract interpretation question posed by this motion. For these reasons as well, plaintiff's motion should be denied and the cross-motion granted.[3] (Point II.)

In addition, plaintiff's reliance on Lanham Act authority cannot avail it. The cases cited are irrelevant to this breach of contract action and are, in any event, factually inapt. Plaintiff has not asserted a Lanham Act claim and has not (and cannot) come forward with any admissible (let alone sufficient) evidence of actual or likely confusion to make out a colorable Lanham Act claim. Plaintiff's Lanham Act arguments must be disregarded. (Point III.)

Finally, the other portions of defendants' cross-motion should be granted.

First, plaintiff's amended complaint is barred in part by the statute of limitations. (Point IVA.)

Second, plaintiff has known about the existence and use of the GLO Trademarks and of other facts that underlie certain of its claims since prior to the institution of a lawsuit between the parties or their predecessors in 2001. Therefore, these claims are barred by the doctrine of res judicata. (Point IVB.)

Third, while plaintiff insists on referring to defendants collectively as Jones, there is no basis for any claim against JAG. Unrebutted evidence has been provided to plaintiff demonstrating that JICO, and not JAG, owns the GLORIA VANDERBILT Trademarks and is therefore obligated under the 1988 Agreement. (Frieman Aff., Exhibit A.) At a minimum, the action against JAG should be dismissed. (Point IVC.)

---

[3] The motion is additionally premature. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). No party depositions have even been scheduled in this case. For example, defendants have not had the opportunity to depose Mohan Murjani, who was, we believe, involved in the negotiation of the 1988 Agreement.

Finally, defendants are entitled to their attorneys' fees on this motion and cross-motion. (Point IVD.)

Argument

On its motion for summary judgment, Netherby "bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party." Apollo Theater Found., Inc. v. Western Int'l Syndication, 2005 U.S. Dist. LEXIS 7955, *28 (S.D.N.Y. May 5, 2005) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) and Celotex Corp., supra, 477 U.S. at 323); see also, Matsushita Elec. Indust., Co. v. Zenith Radio Corp., et al., 475 U.S. 574, 587 (1985); Eli Lilly Do Brasil, Ltda. v. Federal Express Corp., 2005 WL 2312547 (S.D.N.Y. Sept. 21, 2005) (Lynch, J.).

Further, in accordance with the requirements of Fed. R. Civ. P. 56 and Local Rule 56.1(d), Netherby was required to come forward with admissible evidence in support of its motion. "[W]here the movant 'fails to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented.'" Giannullo v. City of New York, 322 F.3d 139, 140-41 (2d Cir. 2003); see also, Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001); Eli Lilly Do Brasil, Ltda., supra.

As set forth in full herein, in the accompanying submissions, plaintiff has failed to satisfy its burden to eliminate material facts and has failed to supply admissible evidence to support its factual assertions. Not only does much of Plaintiff's Rule 56.1 statement fail to cite admissible evidence, but plaintiff has failed to provide admissible evidentiary support in any of its other papers sufficient to support its motion. See, Id. Its motion should be denied.

5

In contrast, defendant's cross-motion is based on admissible and sufficient evidence and should be granted.

POINT I

THE GLO TRADEMARKS WERE NOT
CONVEYED BY THE 1988 AGREEMENT

The GLORIA VANDERBILT Trademarks were sold by plaintiff's predecessor to JICO's predecessor pursuant to the 1988 Agreement. (Murjani Aff., Exhibit B.)  Naturally, plaintiff could not sell what it did not own and so the 1988 Agreement states that the seller was selling all of "its rights, title and interest" in certain marks which it had "adopted, used, and through its licensees ... [was] using in its business." (Id., p.1, recital paragraph 2; see also, id., ¶ 2.) Moreover, the Seller represented in the agreement that it owned what it was selling. (Id., ¶ 7.6(c).)  Plaintiff claims that the GLO Trademarks were included in the 1988 Agreement. However, it has conceded that prior to the execution of the 1988 Agreement, it had not used or adopted the GLO Trademarks. (Frieman Aff., ¶¶ 5-6.)  Clearly, the GLO Trademarks can not have been included in the 1988 Agreement.

Further, the 1988 Agreement contains a detailed definition of the marks conveyed there under. (Murjani Aff., Exhibit B, p. 4, "Marks".)  The GLO Trademarks are not mentioned in the definition of Marks (or anywhere else) in the 1988 Agreement and do not fall within that detailed definition.[4]

Plaintiff claims that the parties intended the definition of Marks to be broad (Plaintiff's Memorandum of Law ("Pltffs. Mem."), p. 14) and that "the parties intended for later created,

---

[4]  The term "Gloria Marks", which plaintiff has coined, similarly appears nowhere in the 1988 Agreement or in any other agreement between the parties.  It is an undefined construct of plaintiff's improperly designed to attempt to conflate the GLORIA VANDERBILT and GLO Trademarks in the mind of the Court.

derivative or related trademarks, such as the GLO Marks, to fall within the definition of Marks."
Id. Plaintiff offers no evidentiary support for its assertion that this was the parties' intent. As
noted above, its failure to do so, particularly as it has available to it one of the parties involved in
the negotiation of the 1988 Agreement, requires that its assertion be disregarded.

Plaintiff's assumption is also illogical. A seller does not generally overstate what it has
represented it is selling. And certainly, no buyer wants to pay for something that does not exist
but will (or will not) be "later created". It makes more sense to conclude that the 1988
Agreement's definition of Marks, with its specific and lengthy detail indicates the parties' desire
to be precise and not to be open-ended. In any event, rather than rely on plaintiff's
unsubstantiated claims of intent, the law is clear that the Court should enforce the agreement in
accordance with its plain terms. See, e.g. South Road Assoc., LLC v. IBM, 4 N.Y.3d 272, 277,
793 N.Y.S.2d 835, 838 (2005); Krumme v. Westpoint Stevens Inc., 238 F.3d 133, 139 (2d Cir.
2000); Chevron TCI, Inc. v. Tallyrand Assoc. LLC, 2003 WL 22977498, at *5 (S.D.N.Y. Dec.
19, 2003).[5]

Further, faced with such a precise definition of "Marks", plaintiff may not, consistent
with the maxim, expressio unius est exclusio alterius, expand that definition. CS First Boston
Ltd. v. Behar,1996 WL 384893, at *5 (S.D.N.Y. July 9, 1996). The plain language of that
definition demonstrates that plaintiff cannot succeed.

The 1988 Agreement defines Marks as follows:

(a) the name "Gloria Vanderbilt" both in stylized signature form and all other
manner of representation, (b) the initials "GV" both in stylized signature form and
all other manner of representation, (c) all registrations of Seller or its Affiliates (or
Mellon) for (and applications of such Person for registration of) representations of

_____

[5] It is also significant that the 1988 Agreement contains an integration clause. (Murjani Aff., Exhibit B,
¶ 15.8.)

swan designs, and all representations of swan designs used at any time by Seller
of its Affiliates or their respective licensees, (d) the stylized signature of Gloria
Vanderbilt in a rectangular box, (e) any and all variations of any of the foregoing,
including, without limitation, "Vanderbilt", "Gloria" and any other manner of
representation to the extent that Seller or its Affiliates or their respective licensees
have or subsequently obtain a right thereto, (f) any other mark associated with
Gloria Vanderbilt, (g) all logos and distinctive configurations used in connection
with any of the foregoing, (h) any copyright (common law or statutory) bearing
any of the Marks, and (i) all registrations for and applications for registration of
any of the foregoing (including, without limitation, the Mark (as defined in the
Netherby Agreement) and all of the marks set forth in Section 7.6A-7.6E of the
Disclosure Letter).[6]

(Murjani Aff., Exhibit B, p. 4.)

Plaintiff does not and cannot argue that the GLO Trademarks fall within the ambit of

subsections (b), (c), (d), (h) or (i). Instead, plaintiff states that "[t]he contractual test is whether

the GLO Marks are 'associated with Gloria Vanderbilt' or whether they constitute 'any other

manner of representation' of Gloria Vanderbilt". (Pltffs. Mem., p. 14.)[7] An examination of the

language of the 1988 Agreement demonstrates that plaintiff has misstated the applicable test and

that the GLO Trademarks are not included in any subdivision of the definition of Marks.

A.    The GLO Trademarks are not "associated" with Gloria Vanderbilt

Plaintiff relies on subdivision (f) of the definition of "Marks" and claims that the GLO

Trademarks are associated with the GLORIA VANDERBILT Trademarks. (Pltffs. Mem., p. 1.)

As set forth below, this is not the case. Moreover, it is not the proper inquiry under the 1988

Agreement.

Subdivision (f) refers to marks associated with Gloria Vanderbilt. Tellingly, the words

Gloria Vanderbilt in that provision do not appear in quotation marks. It is a convention in

---

[6]  Plaintiff has neglected to include the Disclosure Letter in its papers. It seems safe to assume that it
makes no reference to the GLO Trademarks.

[7]  Plaintiff's theory is something of a moving target. (Compare, id. and id., p 6.)

trademark practice to either put trademarks in all capital letters or to include them in quotation marks. (See, Declaration of Jeffrey M. Samuels, dated October 12, 2005, ¶ 8.) This convention is followed in the definition of Marks in the 1988 Agreement. (See, subdivisions (a), (b), and (e).) The name Gloria Vanderbilt appears without quotation marks in two places in that definition, in subdivisions (d) and (f).

Subdivision (d) speaks of the "signature of Gloria Vanderbilt". Plainly it refers to the signature of the person, Gloria Vanderbilt, and not to a trademark. So too, in subdivision (f) the reference, without quotation marks, to marks associated with Gloria Vanderbilt means marks associated with the person, Gloria Vanderbilt, and not with the GLORIA VANDERBILT Trademark. Plaintiff does not claim that the GLO Trademarks have no connection or association whatsoever with Ms. Vanderbilt. They do not. This provision simply does not encompass the GLO Trademarks.

B.    The GLO Trademarks are not "any other manner of representation" of Gloria Vanderbilt

The language "any other manner of representation," on which plaintiff also seeks to rely (Pltffs Mem., p. 1), appears three times in the definition of Marks.

Subdivision (a) of the definition of Marks refers to the trademark "Gloria Vanderbilt" in the stylized signature form and "any other manner of representation". That phrase clearly refers to another representation of the two-word trademark "Gloria Vanderbilt" such as in a different font or stylization. It strains the meaning of the provision to say that the trademark "GLO" is another manner of representation of the trademark "Gloria Vanderbilt".[8] (See, Frieman Aff., Exhibit W, pp. 5-7; Samuels Decl., ¶ 7.)

---

[8] The language "any other manner of representation also appears in subdivision (b) referring to any manner of representation of the initials "GV". Again, "GLO" is not a different form of the initials "GV". Nor can it be considered a logo or configuration of same. (Definition of Marks, subdivision (g)).

Subdivision (e) of the definition also contains the language "any other manner of representation". It refers to "variations of the foregoing" (i.e., the name "Gloria Vanderbilt", the initials GV, the swan design and the Gloria Vanderbilt signature in a rectangular box), "including 'Vanderbilt', 'Gloria' and any other manner of representation". The GLO Trademarks are not a variation of "Gloria Vanderbilt", the initials, the swan or the signature. The examples the provision uses, i.e. "Gloria" or "Vanderbilt", each of which contains one complete part of the two word trademark, are simply not the same as the three letters "G-L-O". (See, Id.)

In any event, and most fatally to plaintiff, subdivision (e) does not encompass all variations or "manners of representation" of the trademark "Gloria Vanderbilt". Rather, the plain language of the provision is limited to variations "<u>to the extent that Seller or its Affiliates or their respective licensees have or subsequently obtain a right thereto</u>."

It is well settled that trademark rights are obtained through the use of the mark in commerce. <u>C.L.A.S.S. Promotions, Inc.</u> v. <u>D.S. Magazines, Inc.</u>, 753 F.2d 14, 16 (2d Cir. 1985); <u>Aini</u> v. <u>Sun Taiyang Co., Ltd</u>, 964 F. Supp. 762, 773 (S.D.N.Y. 1997); <u>Seiko Sporting Goods USA, Inc.</u> v. <u>Kabushiki Kaisha Hattori Tokeiten</u>, 545 F. Supp. 221, 225 (S.D.N.Y. 1982). Here, it is uncontroverted that neither the seller (i.e, plaintiff) nor its affiliates owned, adopted or used the GLO Trademarks at any time prior to December 23, 1988 and they have not done so in the Five Countries since. (Frieman Aff., ¶¶ 5-6.) (Of course, they could not -- consistent with trademark law -- do so once the marks were adopted and used by JICO and its predecessors.) Plaintiff did not have and has not subsequently obtained a right to the GLO Trademarks. Therefore, this provision of the definition of Marks does not support plaintiff's claim, but, rather, defeats it.

The 1988 Agreement was designed to compensate Netherby's predecessor for parting with its assets, i.e., the GLORIA VANDERBILT Trademarks. It was not designed to compensate Netherby for, or to limit, the ingenuity, business savvy or imagination of the buyer and its successors.[9] This is borne out by comparing subparagraph (e) of the definition of "Marks" with the corresponding definition of "Marks" in the 1980 agreement, pursuant to which plaintiff's predecessor acquired the trademarks directly from Gloria Vanderbilt. (Murjani Aff., Exhibit A.) Subparagraph (v) of the 1980 Agreement, corresponds to subparagraph (e) of the 1988 Agreement. It expressly encompasses " . . . any and all variations of the foregoing, including but not limited to 'Vanderbilt,' 'Gloria' and all other manner of representation to the extent that GV [i.e. Ms. Vanderbilt], Netherby or licensees of Netherby have or subsequently obtain a right to any such mark." (Murjani Aff., Exhibit A, p. 001110; emphasis supplied.)

Thus, the 1980 agreement expressly included marks that were then owned or subsequently became owned by the seller **or** the buyer. The 1988 Agreement, in contrast, includes only marks owned or subsequently owned by the seller, i.e., by plaintiff and its predecessor. Marks which are "subsequently" owned by the buyer, like the GLO Trademarks, are not intended to be, and are not, covered by the 1988 Agreement.[10]

POINT II

THE GLO TRADEMARKS AND THE GLORIA VANDERBILT
TRADEMARKS HAVE NOT BEEN MARKETED TOGETHER

Since the GLO Trademarks are not covered by the plain language of the 1988 Agreement, plaintiff argues that, by virtue of an alleged marketing strategy of defendants, the

---

[9] Plaintiff speaks of the GLO Marks "capitalizing" on the good will of the Gloria Vanderbilt trademark. However, this begs the question, eighteen years after the 1988 Agreement, of who built that good will.

[10] There is also no support whatsoever for plaintiff's assertion that the provision covers "any and all variations of the name Gloria". (Pltffs. Mem., p. 6.)

11

GLO Trademarks would be deemed to be "associated with" or "any other manner of representation" of the GLORIA VANDERBILT Trademarks under the Lanham Act. (Pltffs. Mem., pp. 15-16.) This claim is completely irrelevant in this breach of contract action where the key question is whether the GLO Trademarks were conveyed in 1988. Indeed, it is difficult to see how alleged actions of defendants in the year 2000 and thereafter (or even in the year 1996) are relevant to the parties' intentions and meaning in entering into an agreement in 1988.

In any event, plaintiff offers no admissible evidence to support its claim that defendants have directly linked the GLO marks with the GLORIA VANDERBILT Trademarks, let alone sufficient evidence to eliminate any genuine issues of fact. In contrast, defendants have come forward with evidence that demonstrates that there has been no effort to "associate" GLO with GLORIA VANDERBILT in the minds of consumers and that, indeed, the very strong belief is that doing so would be detrimental. As Jack Gross and Janice Brown explain, from a marketing standpoint, juniors do not want to buy apparel connected to a brand such as Gloria Vanderbilt, targeted to an older audience. (Declaration of Jack Gross, dated October 18, 2005 (the "Gross Decl."), ¶ 4.5; Declaration of Janice Brown, dated October 18, 2005 (the "Brown Decl."), ¶¶ 3-5.) [11]

Similarly, plaintiff's claim that defendants first established the connection between the two marks by registering "GLO by GLORIA VANDERBILT" and then creating additional GLO Marks without reference to GLORIA VANDERBILT (Pltffs. Mem., p. 15), is without any evidentiary support. As the declaration of Jack Gross makes clear, the original line, GLO by GLORIA VANDERBILT, was unsuccessful and very short-lived. (Gross Decl., ¶ 3.) Some four

---

[11] This is even borne out by the comment of Jack Gross in Plaintiff's Exhibit 14, where he states that "the junior customer wants its own identity."

years after it was discontinued, the GLO line was launched. (Id.) A concerted effort was made

to disassociate GLO from GLORIA VANDERBILT and the GLO Trademarks have not been

used in connection with the GLORIA VANDERBILT Trademarks. (Gross Decl.; ¶¶ 2, 4-5;

Brown Decl., ¶¶ 2-4 ) Moreover, by making this assertion, plaintiff concedes that the GLO

Trademarks are used separate and apart from the GLORIA VANDERBILT Trademarks.

Much of plaintiff's argument is based on a willful disregard of the difference between the

use of "GLORIA VANDERBILT" as a Trademark and its use as the name of a division of JAG.

The Gloria Vanderbilt division markets goods bearing the GLORIA VANDERBILT,

BANDOLINO BLU, JEANSTAR and GLO Trademarks. (Gross Decl., ¶¶ 1, 5; Brown Decl.,

¶5.) GLO is obviously "associated" with its "parent" Gloria Vanderbilt division. There is,

however, no connection between the trademarks.

Plaintiff's evidence is not to the contrary.

A.      The press releases, website and "Gerber memo" do not support plaintiff's motion

Plaintiff can get no comfort from the press releases, web sites and Steven Gerber memo

on which it seeks to rely.

The press releases (LaRocca Decl., Exhibits 10 and 11) state only that Jones acquired the

common stock of the corporation called Gloria Vanderbilt Apparel Corp., which corporation

marketed brands including GLORIA VANDERBILT and GLO. There is no evidence

whatsoever in these press releases of any "marketing strategy" to link GLO and GLORIA

VANDERBILT. In fact, Exhibit 10 speaks of leveraging the GLO business with Jones' Energie

brand

As to the outdated one page excerpt from the Gloria Vanderbilt website, this page merely

indicates the corporate parent of GLO JEANS. It was not a commercial site. No jeans could be

13

bought on it from defendants and once the viewer pressed either the GLO icon or the GLORIA VANDERBILT JEANS icon, there was no connection between the two names. (Gross Decl., ¶ 7; Brown Decl., ¶ 6.)

Plaintiff also attempts to make much of a July 30, 1998 memorandum from Steve Gerber to Isaac Dabah describing the then on-going negotiations with what was to become (from 1998-2004) the master licensee for GLORIA VANDERBILT in Canada, Hudson's Bay/Zellers. [12] While Mr. Gerber seems to make reference to GLO as a derivative mark of GLORIA VANDERBILT, it is far from clear from that memo whether that was his opinion or something that was said by Zellers. It is, therefore, inadmissible hearsay which may not be considered on this motion. Further, what seems clear is that what Zellers wanted was rights in all the marks owned by JICO's predecessor. (LaRocca Decl. Exhibit 8, ¶ 1 ("They want the license to be truly exclusive").) Thus, the license also includes the trademark ROYAL BLUES. (Frieman Aff., Exhibit T, p. Jones 000149) [13] In any event it is respectfully submitted that this ambiguous document is not sufficient to satisfy plaintiff's burden on this motion.

B.    Plaintiff may not rely on trade publications

Plaintiff's reliance on so-called trade publications is also misplaced. Those articles (LaRocca Decl., Exhibits 13, 14, 21-30), are unauthenticated, rank hearsay and may not be considered on this motion. They also are not probative of the issue on which they are offered. Plaintiff claims that the hearsay in these articles – which is not attributed to anyone affiliated with either defendant – demonstrates JICO's marketing strategy. However, these articles make

---

[12]   Plaintiff describes the Zellers license as one for the "Gloria Marks". (Pltffs. Mem., p. 7.) That term appears nowhere in the Zellers license  (Frieman Aff., Exhibit T.)

[13] Further, in 1998, the only mark in existence was "GLO by GLORIA VANDERBILT" which contained the GLORIA VANDERBILT name.

no reference to, and do not reflect, any strategy to "blur the line" between the GLO and GLORIA VANDERBILT TRADEMARKS. (See, Pltffs. Mem., p.18.)

At best, plaintiff's articles note that the corporate parent of GLO is the Gloria Vanderbilt Division. Indeed, the Brandweek article quoted by plaintiff (Pltffs Mem., p. 9 and LaRocca Decl., Exhibit 14), specifically refers to GLO in connection with the company known as Gloria Vanderbilt Apparel, the predecessor to the Gloria Vanderbilt Division.[14]  Further, although plaintiff argues that GLO has been associated with GLORIA VANDERBILT, that article clearly states, as plaintiff quotes, there is "no association with the parent brand [Gloria Vanderbilt] on the label."[15]

Plaintiff next goes so far as to state that "any trademark joined or loosely connected with Gloria Vanderbilt is encompassed [in] the definition of "Marks". (Pltffs. Mem., p. 15.) However, this concept is not part of the 1988 Agreement and plaintiff may not now add terms to the 1988 Agreement. CS First Boston Ltd., supra, 1996 WL 384893, at *5. Moreover, this argument is nonsense. The trademark JEANSTAR is also used by the Gloria Vanderbilt division and sometimes the two names are referred to together in press reports and the like, much as GLO and the Gloria Vanderbilt division are in plaintiff's "evidence". (See, Pltffs. Mem., p. 10, second bullet point; LaRocca Decl., Ex. 22 at 01436; and Frieman Aff., ¶¶ 14-15, Exhibits G-I.) Surely, plaintiff does not think that JEANSTAR is encompassed within the definition of Marks transferred under the 1988 Agreement. For the same reason, plaintiff's trade publications do not

---

[14] The quote in that article from Jack Gross adds nothing to plaintiff's arguments. Moreover, as a procedural matter, it is not an admission against interest and is not admissible on this motion. (Gross Decl., ¶ 6; LaRocca Decl., Exhibit 9, response no. 9.)

[15] That quoted statement is also inadmissible hearsay. It does not even purport to be a quote from Jack Gross.

demonstrate that the GLO Trademarks are encompassed within the definition of Marks conveyed by the 1988 Agreement.

Finally, in some cases, plaintiff's exhibits are incomplete. Thus, LaRocca Exhibit 13 is clearly an excerpt from the article at issue. Tellingly, plaintiff's excerpt excludes Mr. Gross' statement that the Gloria Vanderbilt company was "trying to keep the younger brand [GLO] at arm's length from its older sibling." (Frieman Aff., ¶ 11, Exhibit F, p. 2). Mr. Gross is further quoted as saying "[w]e want to keep it [GLO] separate from the parent company. . . . We want it to be hip and cool." Id.

In sum, plaintiff's offer of inadmissible articles does not support its claim of a marketing strategy to couple the GLO and GLORIA VANDERBILT Trademarks.

C.    Plaintiff may not rely on the Bromley Group materials

Plaintiff's "Bromley Group evidence" (LaRocca Decl., Exhibits 15-20), similarly merely refers to the corporate relationship between Gloria Vanderbilt Apparel and the GLO brand and does not evidence any effort to combine the GLO and GLORIA VANDERBILT Trademarks. Moreover, those materials too demonstrate the desire of the company to keep the GLORIA VANDERBILT brand and the GLO brand separate. (LaRocca Decl., Exhibit 15, p. 7, item IIIB ("...keep image unique").) These materials simply do not advance plaintiff's arguments.

D.    Plaintiff may not rely on its web-site materials

Perhaps even further a field is plaintiff's offer of hearsay materials allegedly obtained from five websites. (LaRocca Decl., Exhibits 31-35). Of these five websites, two are duplicative of each other (LaRocca Decl., Exhibits 31 and 32), one no longer exists (id., Exhibit 33; Frieman Aff., ¶ 20 ), one contains no present references to GLO or GLO JEANS (LaRocca Decl., Exhibit 35; Frieman Aff. ¶ 21.), and the contents of another are completely mischaracterized by plaintiff.

(La Rocca Decl., Exhibit 34.)  In any event, there is no connection between these sites and either defendant.[16]  (In fact, the links on the Amazon.com website state that the information comes from Beall's Stores and not from either defendant.)  These articles are inadmissible  hearsay which may not be considered on this motion..

Further, plaintiff's exhibits have no probative force.  They merely reflect the corporate parentage of GLO.  And, other listings for GLO products on the same or similar web sites make no reference whatsoever to Gloria Vanderbilt.  (Frieman Aff., ¶¶ 22-23, Exhibits K-Q.)  Plaintiff's website extracts are irrelevant to this motion.  Nothing in those exhibits demonstrates or reflects any marketing strategy by JICO.  Nor do plaintiff's exhibits demonstrate any association in the minds of the "consuming public" between GLO and GLORIA VANDERBILT.  Indeed, even giving plaintiff the full benefit of the doubt, <u>five</u> references to GLO cannot be probative of the "consuming public's" opinion about anything.  As set forth in full below, plaintiff's "evidence" is insufficient to demonstrate actual or likely confusion by the consuming public.[17]

In sum, plaintiff's exhibits are not probative, not admissible, and should not be considered on this motion.

---

[16]  The Ewanted.com page (LaRocca Decl., Exhibit 35 ) for example, has a statement by some unknown speaker who is looking for a pair of jeans.  It would be difficult to find a less probative piece of "evidence".

[17]  Compounding these deficiencies is plaintiff's mischaracterization of its exhibits.  The ym website (LaRocca Decl., Exhibit 34) does not say that GLO Jeans can be purchased at www.gloria-vanderbilt.com.  Rather, it lists that website as a source of information for where to shop.  However, the gloria-vanderbilt.com website -- which no longer refers to GLO Jeans-- was never a place where jeans could be purchased from the company.  It only provided, and today only provides, information on, or links to, stores where jeans are available for purchase.  (Gross Decl., ¶ 7 Brown Decl., ¶ 6.)

POINT III

THE LANHAM ACT IS IRRELEVANT

Plaintiff asserts that under the Lanham Act, the GLO Trademarks are "associated with"
or are "any other manner of representation" of GLORIA VANDERBILT. (Pltffs. Mem , p. 15.)
However, plaintiff has not asserted (and could not assert) a claim under the Lanham Act. The
issue on this motion is whether the GLO Trademarks are encompassed within the definition of
Marks in the 1988 Agreement. As set forth in full above (Points I and II), they are not.
Plaintiff's reliance on the Lanham Act is misplaced.

Further, plaintiff's authorities are without application. Unlike the situation in E.G.L.
GEM Lab Ltd. v. Gem Quality Inst. Inc., 90 F. Supp. 2d 277 (S.D.N.Y. 2000), aff'd, 2001 U.S.
App. LEXIS 2542 (2d Cir. 2001), there is no evidence here of the use together of two different
trademark owner's marks. Nor is there admissible evidence of the use of the GLO Trademarks
together with the GLORIA VANDERBILT Trademarks. There is no evidence that GLO was
built by trading on the reputation of the GLORIA VANDERBILT Trademarks. As noted above,
the opposite has been true.

Further, unlike the situation in E.G.L. or in Standard Oil Co. v. Standard Oil Co., 252
F.2d 65 (10th Cir. 1958), also relied on by plaintiff, any reference to the GLO Marks and GLO
products as being owned by or marketed by the Gloria Vanderbilt division did not mislead any
customers since the relationship is absolutely true. Plaintiff's complaint that defendants
"successfully blurred the line between the brands such that customers may consider products
bearing the GLO Marks to be a GLORIA VANDERBILT brand or, at the very least, an affiliate
of Gloria Vanderbilt" (Pltffs. Mem., p. 8) adds nothing to any issue in this case. GLO is a part of

the Gloria Vanderbilt company.  Unlike in E.G.L. and Standard Oil, there is no false designation

of origin.  In short, defendants, and their predecessors, would have been entirely within their

rights under the Lanham Act to use the GLO and GLORIA VANDERBILT Trademarks together

in any way they saw fit.  Plaintiff's cases are completely inapt.[18]

More pertinent is Abraham Zion Corp. v. Harry P. Lebow, 593 F. Supp. 551 (S.D.N.Y.

1984), aff'd, 761 F.2d 93 (2d Cir. 1985).  There, a 1969 stock purchase agreement contained

seller's agreement not to use the name "Lebow", or "any variant thereof".  Id. At 554.  The Court

held that the name "Harry Lebow" was not a variant of "Lebow", in reliance, in part, on the fact

that the name "Harry Lebow" had not been used by, and so was not an asset of, the seller at the

time of the 1969 sale.  Id.  So too here, since the GLO Trademarks did not exist and were not

used by plaintiff at the time of the 1988 Agreement, they can not be considered to be a variant or

variation of the GLORIA VANDERBILT Trademark.

In addition, following plaintiff's argument to its logical extreme, every trademark used by

the Gloria Vanderbilt division would fall under the strictures of the 1988 Agreement.  This

cannot be the result.  As noted above, Gloria Vanderbilt markets the JEANSTAR and

BANDOLINO BLU brands as well as the GLORIA VANDERBILT and GLO brands.  Surely

even plaintiff cannot assert that those brands fall within the strictures of the 1988 Agreement.

Finally, plaintiff can not meet its burden under the Lanham Act to show, by a

preponderance of admissible evidence that there is any likelihood of confusion on the part of an

appreciable number of reasonable consumers.  International Data Group, Inc. v. J & R

---

[18] Plaintiff asserts that defendants "intermingled" the GLO and GLORIA VANDERBILT marks in their marketing materials, on their websites and in advertising. (Pltffs. Mem., p. 18.)  No citation is offered in the memorandum for this conclusion.  And, for good reason.  There is no record support for this claim. This is, moreover,  a clear concession that the proper inquiry is what use has been made of the two names as trademarks.

Electronics, Inc., 798 F. Supp. 135, 138 (S.D.N.Y. 1992) (dismissing claims on summary

judgment). Indeed, even giving credence to plaintiff's "evidence", it is clear that it would not be

sufficient to sustain plaintiff's burden of proof in a Lanham Act case. Savin Corp. v. Savin

Group, 391 F.3d 439, 459 (2d Cir. 2004) (single anecdote of confusion is de minimis evidence

insufficient to raise a triable issue.); Information Clearing House, Inc. v. Find Magazine, 492 F.

Supp. 147, 160 (S.D.N.Y. 1980) (few isolated instances of claimed confusion is not sufficient to

sustain burden of proof)[19]; Hard Rock Café Int'l (USA) Inc. v. Morton, 1999 WL 717995, *18

(S.D.N.Y. September 9, 1999) (fourteen emails and two phone conversations insufficient to

demonstrate actual confusion where evidence reflected correct belief that there was a relationship

between the two entities at issue.).

> The Lanham Act does not support plaintiff's motion.

## POINT IV

### DEFENDANTS' USE OF THE GLO TRADEMARKS
### OUTSIDE OF THE FIVE COUNTRIES HAS BEEN PROPER

Plaintiff is correct that it retained whatever rights it might have had in the Marks, as

defined in the 1988 Agreement, in territories outside the Five Countries. The record is silent as

to what those rights might have been or are.[20] It is also silent as to any limitation on JICO's right

to register any mark anywhere in the world. In any event, this Court needn't decide what the

parameters of the parties' rights are outside of the Five Countries with respect to the GLORIA

VANDERBILT Trademark. All that is required is a finding that plaintiff has failed to eliminate

---

[19] The Court there also found it "significant" that no survey was conducted by plaintiff. Id.

[20] The Buyer of the Marks, for example, received worldwide rights in the so-call Cosmair Items.
(Murjani Aff., Exhibit 2, ¶ 12.5.

any material issue of fact as to whether or not the GLO Trademarks are included in the definition of Marks and that defendants have established their entitlement to judgment on that issue.

Once more, plaintiff's reliance on trademark law authorities is inapt. Unlike the plaintiffs in Netherby's authorities, Netherby is not JICO's licensor and there is no question but that JICO is authorized to sell and use the GLO Mark in the Five Countries in any way it sees fit. Netherby has no basis to claim any trademark infringement under the Lanham Act. If plaintiff believes that its trademark rights have been violated elsewhere, it may seek relief elsewhere under the applicable laws of those jurisdictions.

POINT V

DEFENDANTS' CROSS-MOTION
SHOULD BE GRANTED

For all the reasons set forth above, it is clear that it is defendants, and not the plaintiff, that are entitled to partial summary judgment on plaintiff's sixth, seventh and eighth causes of action and on defendants' respective first counterclaims. In addition, defendants should be awarded partial summary judgment because, and to the extent that, plaintiff's claims are barred in whole or in part by the applicable statute of limitations and by the doctrine of res judicata. Moreover, there is no basis for any claims to be asserted against JAG. Finally, defendants are entitled to their attorneys' fees on this motion.

A.    Plaintiff's claims are barred at least in part by the applicable statute of limitations

Plaintiff's first, second, third, fourth and seventh causes of action seek money damages for defendants' alleged breaches of the 1988 Agreement. The complaint in this action was filed on September 1, 2004. Plaintiff is barred, by virtue of the applicable six year statute of limitations (CPLR § 213), from seeking damages arising before September 1, 1998.

21

B.    Plaintiff's claims are barred by the doctrine of res judicata

The doctrine of res judicata "promotes judicial economy and fairness to litigants by ensuring that a final judgment on the merits of an action 'precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Hanley v. Aperitivo Restaurant Corp., 1998 U.S. Dist. LEXIS 8536, at *6 (S.D.N.Y. June 10, 1998). The doctrine bars subsequent litigation of "any ground of recovery that was available in the prior action, whether or not it was actually litigated or determined." Balderman v. United States Veterans Admin., 870 F.2d 57, 62 (2d Cir. 1989) (emphasis supplied); Estate of Young v. Williams, 810 F.2d 363, 365 (2d Cir. 1987).

More specifically, "[w]here an action includes a cause of action for breach of a particular contract, a second action seeking additional recovery for breach of that same contract is generally considered part of the same factual 'transaction' and is precluded, where the grounds for additional recovery might have been included in the first action." Phoenix Canada Oil Co. v. Texaco Inc., 749 F. Supp. 525, 535 (S.D.N.Y. 1990) (action precluded where it merely presents a different ground for relief for a cause of action included in earlier action); Isbrandtsen Marine Services v. Derecktor Shipyard, Inc., 2001 U.S. Dist. LEXIS 9765 at *4 (S.D.N.Y. July 11, 2001) (rejecting plaintiff's attempt to distinguish two actions by alleging prior suit concerned temporal breach of contract and later suit was about qualitative breach of contract); Hanley, 1998 U.S. Dist. LEXIS 8536 at *15 (claims arising out of same contract are subject to doctrine of res judicata). Moreover, the second contract action can be barred even where the plaintiff did not discover the breach which is the subject of the second action until after the first action was concluded. Hanley, supra, at *15.

Hanley is instructive. There, a union pension fund sued defendant restaurant to recover delinquent fringe benefit contributions. The fund had originally brought suit in 1994 for amounts then due and amounts that would be disclosed following an audit. The action was settled with the pension fund reserving its right to conduct an audit for subsequent periods not covered by the settlement. After the fund conducted its audit, it brought the suit which was the subject of the Court's decision. The Court held that the claims, insofar as they covered the same period covered by the earlier settlement, were barred by the settlement in the first action because the fund was on notice of irregularities in payments by the restaurant and had the right to conduct an audit.

These principles bar Netherby's claims here based on: (a) the use of the GLO Trademarks; and (b) the reduction in the royalty rate paid by Zellers under its license.

In August of 2001, Netherby, claiming it had not received all the Contingent Payments to which it was entitled in respect of the Zellers license, commenced suit in the Supreme Court of the State of New York, New York County, in an action captioned Netherby Ltd. v. Gloria Vanderbilt Trademark BV, et al., Index No. 113339/01 (Gammerman, J.) (the "2001 State Court Action"). (Frieman Aff., ¶ 24, Exhibit R.) Judgment was entered in favor of Netherby on June 17, 2003 and was paid. (Frieman Aff., ¶ 2-5, Exhibit S.)

Plaintiff's first, second and third causes of action here are based in part on what plaintiff refers to as the reduction in royalties owed by Zellers under its (expired) license with JICO. ( LaRocca Decl., Exhibit I, ¶¶ 35-51, 64-77.) [21]  However, the documents memorializing that reduction were provided to plaintiff before Netherby asserted its claims in the 2001 State Court

---

[21]  Netherby does not actually claim that the reduction and elimination were themselves a breach of the agreement.

23

Action. Indeed, Netherby has conceded it became aware of the royalty reduction issue in 2000. (Frieman Aff., ¶ 29, Exhibit V ¶¶ 17-18.)

Similarly, plaintiff's sixth, seventh and eighth causes of action here assert, broadly speaking, that plaintiff was (or will be) damaged by JICO's failure to make Contingent Payments for the use of the GLO Trademarks. These claims also could have been raised in the 2001 State Court Action.

As noted above the US Payment Period has expired. Canada is the only one of the Five Countries where Netherby is presently entitled to Contingent Payments. Further, since the US Payment Period terminated in 1997, before the 2000 launch of the GLO Trademarks, plaintiff could only seek Contingent Payments for Canada arising from the GLO Trademarks. Therefore, at least through December 31, 2004, when the Zellers license expired, Netherby's claim that it is entitled to Contingent Payments for the GLO Trademark implicates Zellers, which was the master licensee in Canada from 1998 through 2004.

Since the GLO by GLORIA VANDERBILT Trademark was included in the Zellers license, plaintiff must have been aware of this use at the time it commenced the 2001 State Court Action. (Frieman Aff., Exhibit T.) Moreover, it knew or should have known of the GLO Trademarks since their introduction in 2000. (See , Gross Decl., ¶ 8.)

Both of these groups of claims, then, could and should have been included in the 2001 State Court Action. They were clearly "available" to Netherby. See, Balderman, 870 F. 2d at 62. Netherby should now be barred, at least through the date of judgment in that action, March 17, 2003, from asserting these claims.

24

C.     Plaintiff has no basis to assert any claims against JAG

Plaintiff has been provided with evidence that the owner of the GLORIA VANDERBILT

Trademarks, and therefore, the party which is presently obligated under the 1988 Agreement is

JICO. (Frieman Aff., Exhibit A.) There is no basis for the assertion of any claims in this action

against JAG which is not a party to that agreement. The complaint insofar as it asserts claims

against JAG should be dismissed.

D.     Defendants are entitled to their attorneys' fees on this motion

The provision on which plaintiff relies in support of its request for its fees on this motion

is reciprocal. (Pltffs. Mem., p. 20.) Should defendants succeed, which we submit they should,

they will be entitled to an award of their fees on this motion and cross-motion.

Conclusion

For all the foregoing reasons, and the reasons set forth in the accompanying submissions,

it is respectfully submitted that plaintiff's motion for partial summary judgment should be denied

in its entirety and defendants' cross-motion for partial summary judgment should be granted in

its entirety.

Dated: New York, New York
       October 21, 2005

                                        DUANE MORRIS LLP

                                        By: _____
                                        KAREN S. FRIEMAN (KF-9204)
                                        380 Lexington Avenue
                                        New York, NY 10168
                                        (212) 692-1000
                                        Attorneys for Defendants

NY\291245 1