UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

NETHERBY LIMITED,                                               :          04 CV 07028(GEL)

                ·Plaintiff,                                    :

          - against -                                       :

JONES APPAREL GROUP, INC. and JONES      :
INVESTMENT CO., INC.                                         :

           Defendants.                                  :

-----------------------------------------------------------------------x


## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S EXPERTS


DUANE MORRIS LLP
380 Lexington Avenue
New York, NY 10168
(212) 692-1000
Attorneys for Defendants

## **TABLE OF CONTENTS**

**Page**

BACKGROUND............................................................................................1

ARGUMENT.............................................................................................2

   A. Mohan Murjani .................................................................................4

   B. Patti Disner.....................................................................................6

   C. Andrew Jassin .................................................................................8

      1. Mr. Jassin does not have the required "specialized knowledge"...................8
      2. The testimony is not relevant and therefore is not helpful
         to the trier of fact. .......................................................................9
      3. The proposed testimony is not reliable......................................................10
      4. Mr. Jassin should not be allowed to opine on whether
         there has been a breach. ..............................................................11

CONCLUSION............................................................................................12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
NETHERBY LIMITED,                              :        04 CV 07028(GEL)
                                               :
                Plaintiff,                     :
                                               :
       - against -                             :
                                               :
JONES APPAREL GROUP, INC. and JONES            :
INVESTMENT CO. INC.,                           :
                                               :
                Defendants.                    :
-------------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S EXPERTS

### BACKGROUND

Plaintiff has designated three experts to testify at the trial of this action in support of its

Fourth Cause of Action: Mohan Murjani (also the principal of plaintiff), Patti Disner and

Andrew Jassin.  None of these proposed experts satisfy the requirements of Rules 401 or 702 of

the Federal Rules of Evidence or the guidelines established by the United States Supreme Court

in Daubert v. Merrell Dow Pharms., 509 U.S. 579, 589 (1993), for applying those rules.

Therefore, it is respectfully submitted that their proffered expert testimony should be excluded.[1]

Plaintiff's Fourth Cause of Action alleges that defendants breached paragraph 8 of the

1995 Modification Agreement (which added § 15.11 to the 1988 Acquisition Agreement).  That

provision appears to call for the exercise by "Buyer" (i.e. the owner of the GLORIA

VANDERBILT trademarks) of its best efforts to provide available samples to Netherby of its

GLORIA VANDERBILT product.  Plaintiff claims that this provision required the production to

---

[1] Defendants have previously filed a motion in limine to exclude evidence proffered by plaintiff to support its demand for damages on its Fourth Cause of Action (the "Damages Motion").  Part of that motion is directed at the damages plaintiff seeks based on Ms. Disner's report.  This motion is not duplicative.  Rather, it is directed, in part, at Ms. Disner's proffered testimony regarding the meaning of the contract provision at issue.

it of something called a "Licensing Package", although that term appears nowhere in the 1988 Acquisition Agreement, as modified, although the 1988 Acquisition Agreement contains an integration clause (¶ 15.8), and although all plaintiff's witnesses agree that the term "Licensing Package" does not have any fixed meaning. The expert testimony plaintiff seeks to offer through the testimony of Mr. Murjani, Ms. Disner and Mr. Jassin as to the meaning of the term "Licensing Package" and as to their interpretations of § 15.11 is incompetent and should be excluded.

We first describe the well-settled law on the admissibility and appropriateness of expert testimony. We next address each of plaintiff's proffered experts in turn.

<u>ARGUMENT</u>

Rule 702 of the Federal Rules of Evidence sets forth the standard for the admissibility of expert testimony: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

The Supreme Court in <u>Daubert</u>, <u>supra</u>, 509 U.S. at 589, confirmed that under Fed. R. Evid. 702, it is the obligation of the trial judge to "ensure that any and all ...[expert] evidence admitted is not only relevant but reliable." The Rule thus places the court in the role of "gatekeeper" over the evidence to be admitted. <u>Zuchowicz v. United States</u>, 140 F.3d 381, 386 (2d Cir. 1998).[2]

---

[2] Subsequent to <u>Daubert</u>, the Supreme Court made clear that the <u>Daubert</u> analysis applies to all specialized knowledge, not only to "scientific" knowledge.. <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 147 (1999); <u>see also</u> <u>Roniger v. McCall</u>, 2000 WL 1191078, at *2 (S.D.N.Y., Aug. 22, 2000).

As an initial matter, Rule 702 allows only for the admission of expert testimony where "...specialized knowledge will assist the trier of fact." The "knowledge" which Rule 702 requires "connotes more than subjective belief or unsupported speculation." Daubert, supra, 509 U.S. at 590; Nimely v. City of New York, 414 F.3d 381, 395 n. 1 (2d Cir. 2005).

Next, the Court in admitting the evidence must be convinced that the testimony will assist the trier of fact to understand the evidence or determine a fact at issue. This requires the Court to determine if the proffered evidence is relevant. Daubert, supra, 509 U.S. at 591; Amorgianos v. Amtrak, 303 F.3d 256, 365 (2d Cir. 2002) (trial court should look to relevance standards of Fed. R. Evid 401).

Finally, the Court examines whether or not the procedures and methods used by the witness to formulate the testimony are reliable and based on "good grounds." See Daubert, 509 U.S. at 590-92.

Rule 702 also specifies how the procedures and methods used by the expert are to be evaluated for reliability, stating that the Court is to examine "if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; see also, Amorgianos, supra, 303 F.3d at 265.

"Expert testimony is reliable where it has 'a traceable, analytical basis in objective fact.'" Roniger, supra, 2000 WL 1191078, at * 2 (citation omitted); Amorgianos, 303 F.3d at 267 (analysis must be reliable at every step); Lang v. Kohl's Food Stores, Inc., 217 F.3d 919, 923-24 (7th Cir. 2000) ("unreasoned assertion" is insufficient to support the admission of expert testimony).

3

Moreover, "opinion evidence which is connected to existing data only by the ipse dixit of the expert" should not be admitted. GE v. Joiner, 522 U.S. 136, 146 (1997); Kumho, 526 U.S. at 157. "[A]lthough it is permissible for [the proposed expert] to base his opinion on his own experience...he must do more than aver conclusorily that his experience led to his opinion." Roniger v. McCall, 2000 WL 1191078, at *3-4 (S.D.N.Y. Aug. 22, 2000). See also, Clark v. Takata Corp., 192 F.3d 750, 756 (7th Cir. 1999) (expert report stricken where expert relied only on his "experience" to reach a conclusion).

Finally, an expert will not be permitted to testify where he undertakes not to assist the finder of fact but to tell the finder of fact what result to reach. Roniger, supra, 2000 WL 1191078, at * 4; Nimely, supra, 414 F.3d at 397.

Plaintiff's proffered expert testimony fails to satisfy the requirements of Rule 702 as elucidated by these authorities. Plaintiff has failed to satisfy its burden of establishing that its experts' opinions are admissible under Rule 702 and they should be excluded. Daubert, 509 U.S. at 592 n.10.

A.     Mohan Murjani

Plaintiff designated Mr. Murjani, the principal of plaintiff as a rebuttal expert witness in this action. His proffered testimony does not comport with the requirements of Fed. R. Evid. 702.

Mr. Murjani first opines that licensors can typically approve the products of their licensees and therefore "almost always" have samples of those products "available" (Affidavit of Karen S. Frieman, sworn to June 2, 2006, Exhibit A, Murjani Report, p. 6.) Next he opines that licensors use licensee product to attract new licensees. (Id.) Even assuming that these opinions are correct (and they are not), this testimony should be excluded.

Mr. Murjani testified that his "expertise" is based only on his personal experience. (Frieman Aff., Exhibit B, Murjani Ts., pp. 169-170.) However, his report does not give any

4

specific examples of the experiences that led him to this conclusion.  Indeed, the only specific examples he cites in his report purport to come from <u>JICO's</u> experiences.  (Frieman Aff., Exhibit A, Report, pp. 5-8.)[3]  Mr. Murjani's conclusory reference to his "experience" is not a sufficient foundation for his expert testimony.  <u>Roniger, supra,</u> 2000 WL 1191078, at *3-4; <u>Clark, supra,</u> 192 F.3d at 756.

Further, this proposed testimony is not relevant or helpful.  Mr. Murjani's report does not tie any alleged industry practice of approvals over, or use of, licensee product to the language or intent of § 15.11.

Mr. Murjani's next opinion is that § 15.11 requires that Netherby be provided with samples of all designs and products, including those of JICO's licensees, together with information about the licensees' marketing efforts and plans, performance and distribution.  (Frieman Aff., Exhibit A, Report, pp. 9-10.)  However, he offers no basis for this opinion either.  His proffered "expert" testimony adds nothing to the testimony he could presumably give as a fact witness as the individual who negotiated the provision on behalf of plaintiff.  His testimony should be limited to his own actions, not his opinions.

Finally, Mr. Murjani opines that there is an industry term called a "Licensing Package" the contents of which, he concedes, are established by the operative contract between licensor and licensee.  (Frieman Aff., Exhibit A, Report, p. 10.)  He concludes that § 15.11 requires something "akin to a Licensing Package."  (Id.)Again, Mr. Murjani does not point to any experience that supports this opinion.  Moreover, this opinion adds nothing to the understanding of what, if anything, § 15.11 means.  Indeed, while he claims it means a Licensing Package is

---

[3] Mr. Murjani purports to rely on, <u>inter alia</u>, JICO's expired license with its Canadian master licensee, Zellers.  However, he misquotes the Zellers' license which, contrary to his report, plainly does not require the submission of samples for approval by the licensor.

required, he admits that the term has no fixed meaning. He provides no basis for any expert opinion as to what that term might mean in <u>this</u> agreement between <u>these</u> parties.

This proffered testimony is irrelevant and without a reliable foundation. Additionally, the proposed testimony impermissibly directs the trier of fact to reach a particular conclusion. Mr. Murjani's proposed testimony as an expert is not helpful to the Court as fact finder and it should be excluded.

B.    <u>Patti Disner</u>

Ms. Disner's report states that she was retained to "opine on the meaning in the industry of a contractual provision in a December 8, 1995 Modification Agreement... and to calculate damages stemming from defendants' breach..." (Frieman Aff., Exhibit C, Disner Report, p. 1.)

The infirmities in her damage calculation are described in great detail in the Damages Motion. Suffice it to say here that because Ms. Disner's damages theory and methodology are fundamentally irrelevant and error riddled, they are not reliable and would not "assist the trier of fact to understand the evidence or to determine a fact in issue". Her testimony about damages should be excluded under Rule 702.

Ms. Disner's "expert opinion" about the meaning of § 15.11 should similarly be excluded. Ms. Disner opines that § 15.11 requires the provision of samples of all designs and products, including those of "Buyer's" licensees although licensee product is not mentioned in that provision. (Frieman Aff., Exhibit C, p. 6.) However, Ms. Disner has no expertise to allow her to knowledgeably opine on this subject and she provides absolutely no basis for this conclusion.

Ms. Disner's qualifications are limited to the field of design. (Frieman Aff., Exhibit C, pp. 1-4.) She points to no "skill, experience, training or education" which would qualify her to have expertise on the meaning of § 15.11. The sole basis for her opinion appears to be her

similarly unsupported statement that it is customary for licensors to approve their licensee's product. However, she does not identify any facts or data within her field of expertise on which this opinion may be based.[4]  Nor does she identify any principles or methods on which she relied in extrapolating from believing there is an approval process to opining as to the meaning of §15.11.  There simply is no "analytical basis" for Ms. Disner's opinion.  Roniger, supra, 2008 WL 1191078, at * 2.  It truly is nothing more than ipse dixit.  GE, supra, 522 U.S. at 146.  Ms. Disner's testimony is nothing " more than subjective belief or unsupported speculation".  Daubert, 509 U.S. at 590.  She simply does not have sufficient expertise or knowledge to qualify as an expert on this issue.[5]

Moreover, Ms. Disner's "methods", if any, are demonstrably unreliable.  She fails to mention or account for the language in § 15.11 which modifies Buyer's obligations as one of best efforts only.  She assumed in giving her opinion that JICO's license with Zellers, whose royalty reports provide the basis for her damages calculation, required it to provide samples to JICO for approval.  However, if Ms. Disner took the time to read the Zellers' license, she would have found out that it did not.  She also opines that "a brand such as Gloria Vanderbilt encompasses many different products."  (Frieman Aff., Exhibit C, p. 7.)  However, she conceded that she took no steps to see what products are actually sold at retail.  (Frieman Aff., Exhibit D, Disner Ts., p. 62 .)  Ms. Disner's testimony is completely unreliable.

---

[4] The only specific example she offers is from JICO's license with Zellers.  (Frieman Aff., Exhibit C, Report, p. 7.)  Curiously, she relies on, and misquotes, that license just as Mr. Murjani does in his report.

[5] Certainly, she has no basis for opining on any of the facts set forth in the "Background" section of her report.  For example, it is improper for her to include in her report the statement that Buyer "diverted and concealed" revenue streams from Netherby" (Frieman Aff., Exhibit C, Report, pp. 5-6.)  Her recitation is also replete with plain errors.  For example, it fails to state that the period for which United States Contingent Payments are due terminated nearly nine years ago.

Further, because her opinion is nothing more than a conclusion, it is not helpful to the trier of fact, but merely directs it to reach a particular conclusion. Ms. Disner should not be qualified as an expert in this action. Her testimony should be excluded.

C.    Andrew Jassin

The thrust of the opinion to be offered in this matter by Mr. Jassin is that, in his view, licensors should, in order to maximize the value of their brands, provide a "Licensing Package" to their licensees. (See, e.g., Frieman Aff., Exhibit E, Report, p. 7; Exhibit F, Jassin Ts., pp. 43-44; 62-63; 109-10.) Mr. Jassin also testified that a "Licensing Package" has no fixed content, and that not all licensors provide licensees with these materials. (Frieman Aff., Exhibit F, Jassin Ts. pp. 164-65.) In addition, it is irrefutable in this case that plaintiff and defendants do not stand in the relationship of licensor and licensee. Nonetheless, Mr. Jassin concludes that § 15.11 requires defendants to provide plaintiff with a "Licensing Package."

Mr. Jassin offers other ancillary opinions, such as his views that licensors typically engage in a process of approving the proposed products to be sold by their licensees; that licensors use their licensee's designs to attract other business; and, that licensors only select licensees with know-how. These subjects too, however, are either irrelevant to any issue in this action or are offered merely in support of Mr. Jassin's apparent hope that if he can demonstrate that JICO had the makings of a "Licensing Package" on hand, it might strengthen the idea that JICO was obligated to provide same to plaintiff. However, there is no such causal link.

Mr. Jassin's report and testimony should be excluded.

1.    Mr. Jassin does not have the required "specialized knowledge".

Mr. Jassin's report states that he is the Managing Director of the Jassin-O'Rourke Group, LLC, "a brand management and licensing consulting practice specializing in the fashion industries." (Frieman Aff., Exhibit E, p. 1.) His report speaks generally of his experiences in the

8

apparel industry and lists a number of publications he claims to be relying on. However, his report is completely silent as to any specific examples of experiences that led him to his conclusion in <u>this</u> case about <u>this</u> contract provision.

Perhaps more significantly, Mr. Jassin conceded that he had <u>no</u> experience with a situation such as this one where two different entities own the trademark rights in different portions of the world. (Frieman Aff., Exhibit F, Jassin Ts., p. 154.) Indeed, he testified he couldn't even imagine a situation such as that presented here. (<u>Id</u>., pp.106-07.)

In addition, the "specialized knowledge" he offers is little more than his subjective belief that it is good business practice for a licensor to provide a Licensing Package to its licensees. This is insufficient. <u>Daubert</u>, 509 U.S. at 590. Mr. Jassin simply does not have the required expertise to give the proposed testimony. <u>Trademark Research Corp. v. Maxwell Online, Inc.</u>, 995 F.2d 326, 338 (2d Cir. 1993).

2.    <u>The testimony is not relevant and therefore is not helpful to the trier of fact.</u>

As noted above, the thrust of Mr. Jassin's testimony is his view of what information licensors <u>should</u> provide to their licensees in order to maximize the value of the licensor's trademark. This is without application to the instant case where the parties are not in the relation of licensor and licensee. Rather, Netherby and JICO each own the GLORIA VANDERBILT trademark in separate territories.[6]

Further, Mr. Jassin's beliefs about what licensors <u>should do</u> are ultimately irrelevant to the issue of what JICO in this case is contractually <u>obligated to do</u>. Indeed, Mr. Jassin himself

---

[6]    This situation was created when Netherby's alleged predecessor, which owned the worldwide rights, decided to sell off its rights in the Five Countries in 1988. The only relationship between the owners in the two territories at that point was certain continuing obligations by the owner in the Five Countries to make additional payments on the purchase price called Contingent Payments.

conceded that not all licensors provide Licensing Packages, not all licensees ask for them and

that the content of these Licensing Packages vary widely. (Frieman Aff., Exhibit F, Jassin Ts.

pp. 164-65.)

In fact, Mr. Jassin could not definitively point to a list of items that defendants would

have to include in their Licensing Package to comply with § 15.11. Thus, his testimony offered

absolutely no help to the trier of fact trying to figure out what, if anything, is required to be

produced under § 15.11.

     3.    <u>The proposed testimony is not reliable.</u>

Mr. Jassin's opinion about what makes sense to him from a business perspective is not a

reliable ground on which to base his conclusion about the interpretation of § 15.11.

In <u>Nimely</u>, the defendants' expert, a Chief Medical Officer and forensic pathologist,

opined about the position plaintiff was in when he was shot by one of the defendants, a police

officer. Although the forensic evidence indicated plaintiff was shot in the back, the expert

concluded that defendant reasonably believed plaintiff was turning toward or facing him. The

expert based this opinion on his belief that it made no sense for policemen to unnecessarily

discharge their weapons and that they are unlikely to lie. The reasoning is similar to Mr. Jassin's

which concludes what § 15.11 means based on what he thinks good business practice is.

The Second Circuit held that the expert's testimony based on his personal view of

defendants' credibility should have been excluded. The Court stated in language equally

applicable here: "[s]uch a leap is the essence of unverifiable subjectivity, amounting to the sort

of <u>ipse dixit</u> connection between methodology and conclusion that the district court has the duty

to exclude under Rule 702." <u>Nimely, supra,</u> 414 F.3d at 399.

<u>Kumho</u> is also instructive. There the Court held that an expert's testimony was properly

excluded even though (unlike here) there was little question is to the expertise of the expert or, in

10

general (and again, unlike here), about the reasonableness of his methods. The Court nonetheless found that the expert could not reliably determine the cause of the automobile tire's failure in that case. 526 U.S. at 153-54.

So too here, even if defendants' were to concede Mr. Jassin's expertise in the field and that he used generally reliable methods, still, his experience and analysis do not assist the jury in determining the meaning of this contract provision.

      4.      <u>Mr. Jassin should not be allowed to opine on whether there has been a breach.</u>

As noted above, Mr. Jassin also purports to opine that "defendants have purposely avoided addressing Netherby's requests for the information it needs (and in entitled to)." (Frieman Aff., Exhibit E, p. 10.) However, Mr. Jassin has no special expertise which would enable him to conclude whether or not the provision had been breached, purposely or not. <u>Nimely v. City of New York</u>, 414 F.3d 381, (2d Cir. 2005). He offers <u>no</u> support for that conclusion. He points to no data on which he relied on forming this expert opinion and no methodology. It is inappropriate for Mr. Jassin to seek to supplant the role of the fact finder by opining that defendants' breached the contract.

              \*         \*         \*

In sum, Mr. Jassin has no experiences comparable to that at issue here and testified only as to his opinion of what licensors should do. From this weak foundation, he opines what he believes § 15.11 required (although he states it is unambiguous) <u>and</u> that defendant's breached those obligations. This testimony should not be allowed. "[T]here is simply too great an analytical gap between the data and the opinion proffered." <u>GE</u>, 522 U.S. at 146. The testimony should be excluded.

11

## CONCLUSION

For the above stated reasons, defendants respectfully request that the Court exclude the

expert reports and testimony of Mohan Murjani, Patti Disner and Andrew Jassin.

Dated: New York, New York
     June 2, 2006

                      DUANE MORRIS LLP

                      By:
                           KAREN S. FRIEMAN (KF-9204)
                           380 Lexington Avenue
                           New York, NY 10168
                           (212) 692-1000
                           Attorneys for Defendants

To:    Chadbourne & Parke
        30 Rockefeller Plaza
        New York, NY 10112

DM1\640402.1

12